UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VEROBLUE FARMS USA INC., | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-00764-L |
| | § | |
| LESLIE A. WULF, BRUCE A. HALL, JAMES | § | |
| REA, JOHN REA, and KEITH DRIVER | § | |
|     Defendants/Counterplaintiffs. | § | |

APPENDIX IN SUPPORT OF
PLAINTIFF VEROBLUE FARMS USA INC.'S MOTION TO COMPEL DISCOVERY

Plaintiff VeroBlue Farms USA Inc. ("**VBF**") submits the following exhibits in support of its Motion to Compel Discovery:

| *Item* | *Description* | *Appendix Page Ranges* |
|---|---|---|
| Exhibit A | Responding Founders' responses to the Document Requests | App. 002 – App. 023 |
| | Responding Founders' responses to the Requests to Admit: | |
| Exhibit B | 2019-04-03 B. Hall's Response to Plaintiff's First Request for Admission | App. 025 – App. 047 |
| Exhibit C | 2019-04-03 James Rea's Response to Plaintiff's First Request for Admission | App. 049 – App. 071 |
| Exhibit D | 2019-04-03 John E. Rea's Response to Plaintiff's First Request for Admission | App. 073 – App. 095 |
| Exhibit E | 2019-04-03 L. Wulf's Response to Plaintiff's First Request for Admission | App. 097 – App. 119 |

|  | Responding Founders' responses to the Interrogatories: |  |
|---|---|---|
| Exhibit F | 2019-04-09 B. Hall's Response to Plaintiff's First Interrogatories | App.121 – App. 132 |
| Exhibit G | 2019-04-09 James Rea's Response to Plaintiff's First Interrogatories | App. 134 – App. 144 |
| Exhibit H | 2019-04-09 John E. Rea's Response to Plaintiff's First Interrogatories | App. 146 – App. 157 |
| Exhibit I | 2019-04-09 L. Wulf's Response to Plaintiff's First Interrogatories | App. 159 – App. 170 |
| Exhibit J | July 2, 2019 correspondence | App. 172 – App. 181 |
| Exhibit K | July 22, 2019 correspondence | App. 183 – App. 188 |

Dated:  August 16, 2019

*/s/ Nicole Williams*
Nicole Williams
Texas Bar No. 24041784
nicole.williams@tklaw.com
William L. Banowsky
Texas Bar No. 01697125
bill.banowsky@tklaw.com
Jasmine S. Wynton
Texas Bar No. 24090481
jasmine.wynton@tklaw.com

**THOMPSON & KNIGHT LLP**
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, TX 75201
214-969-2102
214-999-9210 (facsimile)

*s/ Robert H. Lang*
Robert H. Lang
(appearing *pro hac vice*)
rhlang@thompsoncoburn.com
Patrick Morales-Doyle
(appearing *pro hac vice*)
pmoralesdoyle@thompsoncoburn.com
Caroline Pritikin
(appearing *pro hac vice*)
cpritikin@thompsoncoburn.com
Eileen E. Boyle Perich
(appearing *pro hac vice*)
eboyleperich@thompsoncoburn.com
Adam C. Decker
(appearing *pro hac vice*)
adecker@thompsoncoburn.com

**THOMPSON COBURN LLP**
55 East Monroe, 37th Floor
Chicago, IL 60603
312-346-7500

**ATTORNEYS FOR PLAINTIFF
VEROBLUE FARMS USA INC.**

**APPENDIX IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL DISCOVERY – Page 3**

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that a true and correct copy of the above and foregoing instrument was

served upon all counsel of record, as listed below, via email, on this 16th day August 2019.

Kimberly D. Annello
David Campbell
UNDERWOOD PERKINS P.C.
Two Lincoln Centre
5420 LBJ Freeway, Suite 1900
Dallas, Texas 75240
Telephone: (972) 661-5114
Facsimile: (972) 661-5691
kannello@uplawtx.com
dcampbell@uplawtx.com

R. Heath Cheek
Katie R. Beaird
Bell Nunnally & Martin LLP
2323 Ross Avenue, Suite 1900
Dallas, Texas 75201
Telephone: (214) 740-1400
Telecopy: (214) 740-1499
hcheek@bellnunnally.com
kbeaird@bellnunnally.com

*/s/ Nicole Williams*
Nicole Williams

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **VEROBLUE FARMS USA, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 3:19-CV-00764-L** |
| **v.** | ) | |
| | ) | |
| **LESLIE A. WULF, BRUCE A. HALL,** | ) | |
| **JAMES REA, JOHN E. REA, AND** | ) | |
| **KEITH DRIVER,** | ) | |
| | ) | |
| **Defendants.** | | |

## DEFENDANTS WULF, HALL, T.REA AND J. REA'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Defendants, Leslie A. Wulf ("Wulf"), Bruce A. Hall ("Hall"), James Rea ("J. Rea"), and John E. ("Ted") Rea ("T. Rea"), (collectively, "Defendants") in the above-entitled and numbered cause, and hereby submit these responses to Plaintiffs' First Requests for Production of Documents.

### DEFENDANTS RESPONSES TO FIRST REQUEST FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:** All Documents and communications identified, referenced, or relied upon to prepare Defendants' Answers to Interrogatories or Requests for Admission.

**RESPONSE: Defendants object to this Request to the extent it seeks communications subject to attorney-client privilege, work product protection, and/or common interest privilege. Subject to that objection, responsive documents will be produced.**

**REQUEST FOR PRODUCTION NO. 2:** All Documents and non-privileged communications supporting or refuting the allegations in the Complaint and/or any pleading Defendants have or intend to file.

**RESPONSE: Defendants object to this Request to the extent it seeks communications subject to attorney-client privilege, work product protection, and/or common interest privilege.  Defendants further object to this Request as premature, irrelevant and seeking documents subject to attorney work product protection to the extent it refers to pleadings that have not yet been filed. Subject to these objections, responsive documents will be produced.**

**REQUEST FOR PRODUCTION NO. 3:**  All Documents and communications relating in any way to VBF that Defendants sent or received regardless of what e-mail address or telephone number was used.

**RESPONSE: Defendants object to this Request to the extent it seeks communications subject to attorney-client privilege, work product protection, and/or common interest privilege.  Subject to that objection, responsive documents will be produced.**

**REQUEST FOR PRODUCTION NO. 4:**  All Documents and communications relating to all VBF Board of Directors' meetings including but not limited to Board minutes, all Documents and communications to Directors, all Management Reports, business plans, and all Bio-plans.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to.  Subject to this objection, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 5:**  All Documents relating to Defendants' Affiliated Entities.

**RESPONSE: Defendants object to this Request because it seeks documents that are not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.  Defendants also object to this Request as unduly burdensome because it improperly seeks personal and confidential financial information relating to them, their families, and are other business ventures, none of whom are parties to this case and some of whom have been released.**

**REQUEST FOR PRODUCTION NO. 6:**  All Documents relating to all bank accounts and accounts at other financial institutions to which you, Defendants' Affiliated Entities, or Defendants' Family have been named an account holder, had rights to withdraw funds, and/or did withdraw funds.

**RESPONSE:** Defendants object to this Request because it seeks documents that are not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.  Defendants also object to this Request as unduly burdensome because it improperly seeks personal and confidential financial information relating to them, their families, and other business entities, many of whom are not parties to this case and some of whom have been released.

**REQUEST FOR PRODUCTION NO. 7:**   All Documents relating to all amounts that Defendants received from VBF through compensation, stock, any kind of payment, reimbursements of expenses or otherwise.

**RESPONSE:** Defendants object to this Request as unduly burdensome because it improperly seeks personal and confidential financial information relating to them and their families, many of whom are not parties to this case and some of whom have been released. Defendants further object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that Defendants do not have possession of, control over, or access to.  Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.

**REQUEST FOR PRODUCTION NO. 8:**   All Documents relating to your federal and state income, including but not limited to, income tax returns.

**RESPONSE:** Defendants object to this Request because it seeks documents that are not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.  Defendants also object to this Request as unduly burdensome because it improperly seeks personal and confidential financial information relating to them and their families, many of whom are not parties to this case, and some of whom have been released.

**REQUEST FOR PRODUCTION NO. 9:**   All Documents relating to title to property or real estate you own or receive income from.

**RESPONSE:** Defendants object to this Request because it seeks documents that are not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.  Defendants also object to this Request as unduly burdensome because it improperly seeks personal and confidential financial information relating to them and their families, many of whom are not parties to this case, and some of whom have been released.

**REQUEST FOR PRODUCTION NO. 10:**   All Documents relating to automobiles driven or used by Defendants and/or Defendants' Family whether rented, leased, or owned, by make, model, year, identity of other parties to any relevant transaction (i.e. auto dealership, rental agency, leasing agency) paid in any part by VBF.

**RESPONSE: Defendants object to this Request because it seeks documents that are not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.  Defendants also object to this Request as unduly burdensome because it improperly seeks personal and confidential financial information relating to them and their families, many of whom are not parties to this case, and some of whom have been released subject to these objections, responsive documents within Defendant's custody, possession or control will be produced.**

**REQUEST FOR PRODUCTION NO. 11:** All communications that any one of the Defendants or Defendants' agents have had with any media relating to VBF, including but not limited to, posts made on social media without an intermediary such as a reporter, and Documents relating to same.

**RESPONSE:  Defendants object to this Request as unduly burdensome to the extent it seeks publicly available documents that are equally available to Plaintiff. Subject to that objection, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 12:**  All Documents relating to Wulf's representation in a media interview in March 2016 that VBF planned to expand its annual production from 1 million pounds to 7.2 million pounds starting in 2017, including but not limited to Documents supporting how such expansion was possible.

**RESPONSE: Defendants object to this Request as vague as it does not adequately identify what representations Plaintiff is referring to. Subject to that objection, Defendants have conducted a reasonable search and are not in possession, custody, or control of any responsive documents.**

**REQUEST FOR PRODUCTION NO. 13:**  All Documents relating to your tenure at VBF including all drafts of Defendants' termination agreements, if any.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to.  Defendants further object to this Request to the extent it seeks documents subject to attorney client privilege and/or work product protection. Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 14:**  All Documents relating to Christine O'Brien nee Gagne, including but not limited to, Documents supporting authorization for her to work in the United States, her current address, her spouse (whether current or former), payments from VBF to Christine Gagne (including but not limited to Documents in Nextep), and payments from VBF to anyone other than Christine Gagne for services or work that Christine Gagne carried out.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to.  Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 15:** All Documents relating to Opposing Flows Aquaculture, Inc. ("OFA"), including but not limited to, all Documents relating to Defendants', Defendants' Family, and Defendants' Affiliated Entities, or any other individual or entities' equity or other interests in OFA or any other Sheriff Entities.

**RESPONSE: Defendants object to this Request because it seeks documents that are not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.  Defendants also object to this Request as unduly burdensome because it improperly seeks personal and confidential financial information relating to them and their families, many of whom are not parties to this case and some of whom have been released. Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 16:** All Documents relating to payments received by any and all Defendants from any Sheriff Entities.

**RESPONSE: Defendants object to this Request because it seeks documents that are not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.  Subject to this objection, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 17:** All Documents relating to Rick Sheriff, including but not limited to, actual work that Rick Sheriff performed for VBF.

**RESPONSE: Defendants object to this Request because it seeks documents that are not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter. Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to.  Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 18:** All Documents relating to Chipmeds, Inc. including but not limited to, all employee, equity or other interests owned by you in Chipmeds, Inc and payments received by you from Chipmeds.

**RESPONSE: Defendants object to this Request because it seeks documents that are not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.  Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

<u>**REQUEST FOR PRODUCTION NO. 19:**</u> All Documents relating to any and all travel by plane (or otherwise) by Defendants' and Defendants' Family to the extent VBF funded any portion of such travel.

**RESPONSE: Defendants object to this Request because it seeks documents that are not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter. Defendants also object to this Request as unduly burdensome because it improperly seeks personal and confidential financial information relating to them and their families, many of whom are not parties to this case and some of whom have been released. Defendants further object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to.  Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

<u>**REQUEST FOR PRODUCTION NO. 20:**</u>  All Documents relating to living expenses, including but not limited to, rent, mortgage, other housing, utilities, and/or food, paid in any part by VBF.

**RESPONSE: Defendants object to this Request because it seeks documents that are not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter. Defendants also object to this Request as improperly seeking personal and confidential financial information relating to them and their families, many of whom are not parties to this case. Defendants further object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to. Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

<u>**REQUEST FOR PRODUCTION NO. 21:**</u>  All Documents relating to contractors and professionals (including, but not limited to, architects) who performed any work or other services regarding Wulf's Lake House.

**RESPONSE: Defendants object to this Request because it seeks documents that are not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.  Subject to this objection, responsive documents within Mr. Wulf's custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 22:**   All Documents relating to any insurance proceeds paid in relation to the Wulf Lake House by dates, amount of payment, reason for payment, relevant policy and policy number, and identity of payor(s) and payee(s).

**RESPONSE: Defendants object to this Request because it seeks documents that are not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.   Subject to this objection, responsive documents within Mr. Wulf's custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 23:**   All Documents relating to the person or people who authorized Tracy Arbanas to perform services in relation to the Wulf Lake House, documents related to Arbanas' work at the Wulf Lake House, and documents related to payments made to Arbanas relating to that work.

**RESPONSE: Defendants object to this Request because it seeks documents that are not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.   Subject to this objection, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 24:**   All Documents relating to BAJJER LLC or BAJJER II, LLC, including but not limited to, the ownership and control of BAJJER LLC or BAJJER II, LLC and any transfer of VBF shares to or from BAJJER LLC and/or BAJJER II, LLC.

**RESPONSE: Defendants object to this Request because it seeks documents that are not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter. Defendants also object to this Request as unduly burdensome because it improperly seeks personal and confidential financial information relating to them and their families, many of whom are not parties to this case and some of whom have been released. Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to.   Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 25:**   All Documents relating to VBF's tractor-trailers.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to.   Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced**

**REQUEST FOR PRODUCTION NO. 26:**   All Documents relating to Defendants' aquaculture experience, other than at VBF.

**RESPONSE:  Defendants have conducted a reasonable search and are not in possession, custody, or control of any responsive documents.**

**REQUEST FOR PRODUCTION NO. 27:**  All Documents relating to any and all software used by VBF and why VBF never implemented software and/or hardware tools that allowed for integration of its operations.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to.  Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 28:**  For each of the following, (a) feed fish conversion ("FCR") ratio; (b) mortality rates; and (c) fish stocking density, produce all Documents relating to the following:

     i.     All VBF documents, records and software where information on the topic was maintained;

     ii.    The person(s) who inputed all information on the topic;

     iii.   The supporting documentation for all information;

     iv.   The industry standard and/or industry average for each (a), (b), and (c) on or about January 1, 2015; June 30, 2015; January 1, 2016; June 30, 2016; January 1, 2017; June 30, 2017, and January 1, 2018; and

     v.    VBF's metric for each (a), (b), and (c) on or about January 1, 2015; June 30, 2015; January 1, 2016; June 30, 2016; January 1, 2017; June 30, 2017, and January 1, 2018.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to.  Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 29:**  All Documents relating to the tank stocking density of VBF fish tanks, including but not limited to, the actual tank stocking density that VBF's tanks could safely hold, Defendants' representations relating to same, tests performed by the Defendants on the VBF tanks relating to the VBF tank densities, steps taken to increase the tank stocking density, and VBF's stocking density goals at all times and whether those goals were met and to whom those goals were communicated.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to.  Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 30:**  All Documents relating to the actual stocking of each six tank pod for each month of 2015, 2016, and 2017.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to.  Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 31:**  All Documents relating to any attempts by VBF to approach a standing density goal of 1.0 pounds of fish per gallon of water and Documents relating to whether VBF was successful.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to.  Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 32:**  All Documents relating to VBF's FCR and Defendants' representations relating to same.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to.  Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 33:**  All Documents relating to the actual amount of barramundi that a six-tank pod produced annually and Defendants' representations relating to same.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to.  Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 34:**  All Documents relating to the loss of fish in (1) May 2017; (2) June 2017; (3) July 2017; and (4) August 2017 at (a) Blairsburg; (b) Saint Louis; (c) Urban Farm; and (d) Buckeye and explain the cause of such loss(es).

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to.   Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 35:**  All Documents relating to action the Defendants took relating to any loss of fish and/or steps Defendants took to minimize fish loss at VBF.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to.   Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 36:**  All Documents relating to any other incidents of mass fish loss and their causes.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to.   Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 37:**  All Documents relating to VBF's mortality rate, including but not limited to, how the mortality rate was calculated, and Defendants' representations relating to same.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to.   Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 38:**  All Documents relating to if and when VBF implemented a Fry Quarantine facility.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to.   Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 39:**  All Documents relating to any and all steps that VBF took relating to quality control.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to.  Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 40:**  All Documents relating to why the Defendants requested that smaller fry be delivered to VBF.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to.  Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 41:**  All Documents relating to domain names, patents, trademarks, and/or copyrights (including, but not limited to common law copyrights), including successful and unsuccessful applications, held by VBF, or for which VBF applied and any copyrights.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to.  Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 42:**  All Documents relating to all transactions through which any VBF funds were utilized to purchase any intellectual property rights.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to.  Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 43:**  All Documents relating to all investors in VBF, the amount of each investment, the date of each investment, and the specific use or uses of the investment by VBF.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have**

possession of, control over, or access to.  Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.

**REQUEST FOR PRODUCTION NO. 44:**  All Documents relating to all institutional and non-institutional lenders in VBF and the amount of each loan, the date of each loan, and the use or uses of the loan by VBF.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to.  Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 45:**  All Documents relating to all amounts that Defendants invested in VBF in debt or equity.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to.  Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 46:**  All Documents relating to the identity of any of VBF Chief Technology Officers and their dates of employment.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to.  Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 47:**  All Documents relating to all individuals that have or had an ownership interest in Opposing Flows Aquaculture, Inc..

**RESPONSE: Defendants object to this Request because it seeks documents that are not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter. Subject to this objection, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 48:**  All Documents relating to the July 2, 2015 due diligence assessment consultation report titled "Technical Assessment of Barramundi Production at VeroBlue Farms with Focus on Iowa's First," including but not limited to, all

documents that VBF provided to Fisheries Technology Associates, Inc. and all communications with Fisheries Technology Associates, Inc.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to. Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 49:** All Documents relating to VBF equipment, including but not limited to, any system performance issues, water quality issues, and/or the cleanliness of VBF's filtration systems.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to. Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 50:** All Documents relating to any attempts made by Defendants to work on a processing machine that would filter dead fish and fish waste, grind it, and compost it.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to. Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 51:** All Documents relating to VBF's annual production during your tenure at VBF by weight and by number of fish harvested and Defendants' representations relating to same.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to. Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 52:** All Documents relating to VBF's actual value during Defendants' tenure at VBF and Defendants' representations relating to same.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to. Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 53:**  All Documents supporting information provided in the "Executive Summary" and "Marketing Deck, attached as **Exhibit 1.**

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to.   Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 54:**   All Documents relating to Generation Investment Management's involvement in VBF, including but not limited to, any "stress testing" performed.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to.   Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 55:**  All Documents relating to the price at which VBF was able to purchase fingerlings and Defendants' representations relating to same.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to.   Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 56:**  All Documents relating to the weight of the fish at harvest from VBF and Defendants' representations relating to same.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to.   Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 57:**  All Documents relating to the growth rates of the fish at VBF and Defendants' representations relating to same.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to.   Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 58:** All Documents relating to the November 1, 2014 PowerPoint attached as **Exhibit 2**.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to. Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 59:** All Documents relating to any and all aquaculture industry experts, fish biologists, and independent aquaculture specialists and/or consultants who performed any services for VBF.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to. Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 60:** All Documents relating to how VBF was vertically integrated.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to. Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 61:** All Documents relating to VBF's purging practice before Norman McCowan started at VBF.

**RESPONSE: Defendants object to this Request to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession or control over or access to. Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced**

**REQUEST FOR PRODUCTION NO. 62:** All Documents relating to the growth cycle for VBF's market ready fish and Defendants' representations relating to same.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have**

possession of, control over, or access to. Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.

**REQUEST FOR PRODUCTION NO. 63:** All Documents relating to any attempts made by VBF to produce its own fish feed.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to. Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 64:** All Documents relating to VBF's partnership with Iowa State University.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to. Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 65:** All Documents relating to a November 2014-April 2015 Opposing Flows Tank System Performance Data PowerPoint, attached as **Exhibit 3.**

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to. Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 66:** All Documents relating to all management experience of each Defendant, including but not limited to each Defendant's prior experience overseeing another aquaculture business.

**RESPONSE: Defendants object to this Request because it seeks documents that are not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter. Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 67:** All Documents relating to each Defendants' experience selling Barramundi before doing so at VBF.

**RESPONSE: Defendants have conducted a search and are not in possession, custody or control of any responsive documents.**

**REQUEST FOR PRODUCTION NO. 68:**   All Documents relating to each Defendant's connections and contacts in aquaculture.

**RESPONSE: Defendants have conducted a search and are not in possession, custody or control of any responsive documents.**

**REQUEST FOR PRODUCTION NO. 69:**   All Documents relating to when VBF employed or contracted with Haroon Chaudhri.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to.   Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 70:**   All Documents relating to the actual fish shortage and market for Barramundi in North America as of October 1, 2015.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to.   Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 71:**   All Documents relating to all operating costs of VBF for each month of 2015, 2016, and 2017, including but not limited to labor costs and utility expenses.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to.   Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 72:**   All Documents relating to any volume feed discount.

**RESPONSE: Defendants object to this Request as vague and overbroad because it does not identify who is giving or receiving a "volume feed discount" and it is not limited in time in any way.   Defendants further object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to.   Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 73:** All Documents relating to all tank sales.

**RESPONSE: Defendants object to this Request as vague and overbroad because it does not identify who is selling or buying tanks and it is not limited in time in any way. Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to. Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 74** All Documents relating to all actual sales of Barramundi by customer, amount of Barramundi sold, and the date of each sale.

**RESPONSE: Defendants object to this Request as vague and overbroad because it does not identify who is selling or buying Barramundi and it is not limited in time in any way. Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of control over, or access to. Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 75:** All Documents relating to VBF's processing cost per pound of processed fish for each month of 2015, 2016, and 2017.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to. Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 76:** All Documents relating to VBF's contemplated Grower Model, including but not limited to, business plans and projections relating to the Grower Model.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to. Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 77:** All Documents relating to any other VBF business plans and projections.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have**

possession of, control over, or access to. Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.

**REQUEST FOR PRODUCTION NO. 78:**   All Documents relating to all professionals, including, but not limited to, attorneys, accountants, insurance brokers, website developers, website hosts, media consultants, stock brokers, financial planners, and/or consultants, who have performed any services for VBF.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to. Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 79:**   All Documents relating to Jackson Walker LLP's representation of VBF, including but not limited to, all correspondence with Jackson Walker LLP.

**RESPONSE: Defendants object to this Request as unduly burdensome to the extent it seeks documents in Plaintiff's exclusive possession that they do not have possession of, control over, or access to. Subject to these objections, responsive documents within Defendants' custody, possession, or control will be produced.**

**REQUEST FOR PRODUCTION NO. 80:**   All Documents relating to one or more of the Defendants' retention of Jackson Walker LLP to represent any Defendant individually or any other Defendants' Affiliated Entities.

**RESPONSE: Defendants object to this Request to the extent it seeks communications subject to attorney-client privilege, work product protection, and/or common interest privilege. Defendants also object to this Request because it seeks documents that are not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.**

**REQUEST FOR PRODUCTION NO. 81:**   All Documents relating to the Nelson Family (Grace Nelson, Mark Nelson, Jeff Nelson, Korrine Nelson, and/or Jerita Nelson) or Randy Chalfant, on the one hand, and Defendants and/or Defendants' counsel on the other hand.

**RESPONSE: Defendants object to this Request to the extent it seeks communications subject to attorney-client privilege, work product protection, and/or common interest privilege. Defendants also object to this Request because it seeks documents that are not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.**

**REQUEST FOR PRODUCTION NO. 82:**   All Documents relating to Defendants or Defendants' counsel on the one hand, and Kenneth Lockard, Beecher, Field, Walker, Morris, Hoffman & Johnson, P.C., FishDish LLC or its counsel, Goldstein & McClintock LLP, or Horwood Marcus & Berk Chartered, on the other hand.

**RESPONSE: Defendants object to this Request to the extent it seeks communications subject to attorney-client privilege, work product protection, and/or common interest privilege.  Defendants also object to this Request because it seeks documents that are not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.**

**REQUEST FOR PRODUCTION NO. 83:**   All Documents relating to all Defendants' private investigations, surveillance, or other formal or informal observations of VBF including but not limited to recordings, photographs, or any other information since the Defendants' terminations through present.

**RESPONSE: Defendants object to this Request to the extent it seeks communications subject to attorney-client privilege, work product protection and/or common interest privilege.  Subject to this objection, responsive documents within Defendants' custody, possession or control will be produced.**

**REQUEST FOR PRODUCTION NO. 84:**   All Documents relating to any businesses unrelated to VBF that you worked on while you were an employee and/or consultant to VBF, including information stored on any calendar and/or planner, whether electronic or otherwise.

**RESPONSE: Defendants object to this Request to the extent it seeks communications subject to attorney-client privilege, work product protection, and/or common interest privilege.  Defendants also object to this Request because it seeks documents that are not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.  Subject to these objections, responsive documents within Defendants' custody, possession or control will be produced.**

**REQUEST FOR PRODUCTION NO. 85:**   Any photographs that any Defendant has relating to any Defendants' calendars and/or planner.

**RESPONSE: Defendants also object to this Request because it seeks documents that are not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.  Subject to this objection, Defendants have conducted a search and are not in possession, custody or control of any responsive documents.**

**REQUEST FOR PRODUCTION NO. 86:**   Any and all communications relating to any sexual harassment allegations.

**RESPONSE: Defendants object to this Request to the extent it seeks communications subject to attorney-client privilege, work product protection, and/or common interest privilege.  Subject to this objection, responsive documents within Defendants' possession, custody or control will be produced.**

**REQUEST FOR PRODUCTION NO. 87:**   All Documents relating to any companies that Defendants owned and/or controlled hat shut down or ended because of financial problems, including but not limited to, running out of money.

**RESPONSE: Defendants also object to this Request because it seeks documents that are not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.  Defendants further object to this Request as vague and overbroad because the terms "shut down or ended because of financial problems" is undefined and subject to multiple interpretations.  Subject to these objections and limiting this request to companies that have filed for or been the subject of bankruptcy protection, Defendants have conducted a search and are not in possession, custody, or control of any responsive documents.**

Respectfully submitted,

Underwood Perkins, P.C.

By: */s/Kimberly D. Annello*
Kimberly D. Annello
State Bar No. 24093704
Two Lincoln Centre
5420 LBJ Freeway, Suite 1900
Dallas, Texas 75240
Telephone:      (972) 661-5114
Facsimile:      (972) 661-5691
Email: kannello@uplawtx.com

Attorney for Defendants

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the above and foregoing instrument was served upon all counsel of record, as listed below, via e-serve and/or email, on this 3rd day of April 2019.

Robert H. Lang
Renato Mariotti
Caroline Pritikin
Eileen Boyle Perich
Thompson Coburn LLP
55 East Monroe, 37th Floor
Chicago, IL 60603
rlang@thompsoncoburn.com
rmariotti@thompsoncoburn.com
cpritikin@thompsoncoburn.com
eboyleperich@thompsoncoburn.com


Matthew E. Laughlin AT0004515
Holly M. Logan AT0004710
Katelynn T. McCollough  AT0013443
DAVIS, BROWN, KOEHN, SHORS &
ROBERTS, P.C.
215 10th Street, Suite 1300
Des Moines, Iowa  50309
mattlaughlin@davisbrownlaw.com
hollylogan@davisbrownlaw.com
katelynnmccollough@davisbrown.com


<div style="text-align:right">

*/s/ Kimberly D. Annello*_____
Kimberly D. Annello

</div>

EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **VEROBLUE FARMS USA, INC.,** ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 3:19-CV-00764-L** |
| ) | |
| **LESLIE A. WULF, BRUCE A. HALL,** ) | |
| **JAMES REA, JOHN E. REA, AND** ) | |
| **KEITH DRIVER,** ) | |
| **Defendants.** ) | |

**DEFENDANT BRUCE A. HALL'S RESPONSES TO PLAINTIFF'S**
**FIRST REQUEST FOR ADMISSION OF FACT**

Defendant, BRUCE A. HALL ("Defendant" or "Hall"), hereby responds to Plaintiff's

First Request for Admission of Fact as follows:

**RESPONSES TO REQUEST FOR ADMISSION**

**REQUEST NO. 1**:  Admit that one or more Defendants have an ownership interest and/or control of BAJJER LLC.

**ANSWER:    Admit.**

**REQUEST NO. 2**:  Admit that one or more Defendants caused VBF to transfer 1,250,000 shares of VeroBlue Farms, Inc. to BAJJER LLC for $1.25.

**ANSWER:    Denied.   Answering further, Defendant states Bajjer, LLC holds 1,250,000 shares of VBF in trust for Kelson Capital Inc. pursuant to a written agreement between them, and that this fact was discussed in an independent due diligence report done by Pricewaterhouse Coopers for Jens Haarkoetter of Alder Aqua on or about June 20, 2016.**

**REQUEST NO. 3**: Admit that one or more Defendants have an ownership interest and/or assert control in BAJJER II, LLC.

**ANSWER:  Admit.**

Defendant's Responses to Request for Admission- Bruce A. Hall                                                                      Page 1
1414685v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Bruce A. Hall

App. 025

<u>**REQUEST NO. 4**</u>: Admit that American Growth Funding, LLC ("AGF") loaned approximately $78,000 to BAJJER II, LLC which grew to $101,000 with interest.

 <u>**ANSWER:**</u> **Admit.**

<u>**REQUEST NO. 5:**</u> Admit that AGF loaned BAJJER approximately $200,000.

 <u>**ANSWER**</u>: **Defendant admits that AGF loaned Bajjer $200,000 in or about June 30, 2015, but states that the purpose of this loan was to pass through funds for operational costs of VBF. Defendant denies the remaining allegations of this request**.

<u>**REQUEST NO. 6:**</u> Admit that BAJJER transferred AGF's loan of approximately $200,000 to VBF.

 <u>**ANSWER:**</u> **Defendant admits the $200,000 that AGF loaned Bajjer was transferred to VBF on July 1, 2015 because VBF needed the funds for operations, but AGF would only loan the funds to Bajjer and not directly to VBF.  Defendant denies the remaining allegations of this Request.**

<u>**REQUEST NO. 7:**</u> Admit that on or about July 8, 2016, VBF paid AGF approximately $375,000.

 <u>**ANSWER:**</u> **Defendant admits that VBF paid AGF approximately $375,000 in July 2016, pursuant to an agreement among Alder Aqua and Alder Aqua's counsel, Davis Graham & Stubbs ("DGS"), and AGF to repay the loan from AGF to Bajjer directly from VBF to AGF.  This repayment and the payment of 26 other bridge loans was disclosed and approved by Alder Aqua and DGS in a sources and uses of funds statement provided to them on July 8, 2016. Defendant denies the remaining allegations of this Request.**

<u>**REQUEST NO. 8:**</u> Admit that between December 1, 2015 and June 30, 2016, Gregg Sedun and/or Alcaron Capital Corporation loaned VBF approximately $250,000.

 <u>**ANSWER:**</u> **Defendant admits that Alcaron Capital Corporation loaned VFB approximately $250,000. Defendant denies remaining allegations of this request.**

<u>**REQUEST NO. 9:**</u> Admit that on or about July 12, 2016, one or more Defendants cause VBF to pay Alcaron Capital Corporation approximately $326,056 in repayment for the loans described in Request No. 8.

 <u>**ANSWER:**</u> **Defendant admits that VBF paid Alcaron $326,056 in accordance with the sources and uses of funds statement provided to Alder Aqua and DGS on or about July 8, 2016.  Defendant denies the remaining allegations of this Request.**

Defendant's Responses to Request for Admission- Bruce A. Hall        Page 2
1414685v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Bruce A. Hall

App. 026

**REQUEST NO. 10:** Admit that on or about July 14, 2016, Gregg Sedun loaned Wulf $225,000.

**ANSWER:   Admit.**

**REQUEST NO. 11:**   Admit that one or more Defendants received twice their monthly compensation from VBF in July 2016.

**ANSWER:   Denied.   Defendant was compensated by VBF pursuant to a management consulting agreement until Alder Aqua's investment in July 2016. The consulting agreement paid Defendant in arrears. Upon Alder Aqua's investment, Defendant became an employee of VBF. Thus, upon closing of Alder Aqua's investment, Defendant was paid for his final month of consulting services (June 2016). This was disclosed to and approved by Alder Aqua and DGS.  Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 12:** Admit that one or more Defendants directed or caused VBF to employ Christine Gagne during your tenure to VBF.

**ANSWER:  Denied.  Answering further, Defendant states Christine Gagne was an independent contractor, not an employee of VBF.**

**REQUEST NO. 13:**   Admit that one or more Defendants directed or caused VBF to pay Christine Gagne under the name "Ronnie O'Brien" during your tenure at VBF.

**ANSWER:   Admitted that Christine Gagne was paid as an independent contractor, under the name "Ronnie O'Brien."  Defendant denies remaining allegations of this Request.**

**REQUEST NO. 14:** Admit that, during at least some of the time she was on VBF's payroll, Christine Gagne was a Canadian national who was not authorized to work in the United States.

**ANSWER:    Denied.  Christine Gagne was an independent contractor, and not on VBF's payroll.**

**REQUEST NO. 15:** Admit that one or more Defendants caused VBF to buy six tractor-trailers.

**ANSWER:  Denied.  The purchase of six tractor trailers was presented to, approved by, and directed by VBF's Board of Directors in two separate board resolutions.**

**REQUEST NO. 16:** Admit that VBF's selling of live fish did not require the transportation of fish in all of the tractor-trailers.

Defendant's Responses to Request for Admission- Bruce A. Hall                                                    Page 3
1414685v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Bruce A. Hall

App. 027

**ANSWER:**   Defendant objects to this Request as vague, nonsensical and not calling for the admission of a fact, but a statement of opinion or judgment.  Subject to that objection, denied.

**REQUEST NO. 17:** Admit that VBF could not sell fish as quickly as one or more Defendants represented to Cardinal Farms that VBF could sell fish.

**ANSWER:**   Defendants object to this Request as vague and incomprehensible because it does not identify what representation was made, by whom, to whom, and when and thus, Defendants cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, denied.

**REQUEST NO. 18:** Admit that one or more of the Defendants knew by July 2016 that the Grower Model would not be implemented and/or would not be successful if implemented.

**ANSWER:**   Denied. Defendants planned to pursue a Grower Model until Alder Aqua representatives directed otherwise.

**REQUEST NO. 19:** Admit that at least one of the Defendants requested or directed that one or more employees of VBF remove the mortality tally sheets from one or more tanks during your tenure at VBF.

**ANSWER:**   Denied.

**REQUEST NO. 20:** Admit that at least one of the Defendants misrepresented information relating to VBF's FCR to potential VBF investors and/or lenders.

**ANSWER:**   Denied.

**REQUEST NO. 21:** Admit that at least one of the Defendants sought to keep visitors from seeing VBF's grow tanks on at least one occasion.

**ANSWER:**   Defendant objects to this Request as vague and incomprehensible because it does not identify any time period and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection, Defendant states that Jens Haarkoetter, a VBF Director and representative of both Amstar Funds and Alder Aqua, and Dr. Otto Happel, beneficial owner of both Amstar and Alder Aqua, instructed all VBF personnel, including Defendant, to limit visitation to the farms and to prohibit photographs in order to prevent competitors from seeing and knowing VBF's patented tank system, growing practices and other features. Additionally, Defendant admits that when fish are being stocked into tanks for the first time, it is common industry practice to limit visitation for bio-security purposes. Defendant denies the remainder of this Request.

Defendant's Responses to Request for Admission- Bruce A. Hall                                   Page 4
1414685v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Bruce A. Hall

App. 028

**REQUEST NO. 22:** Admit that at least one of the Defendant's represented an FCR of 1:1 during a grow-out phase for a lot or batch during your tenure at VBF.

**ANSWER:** **Defendant objects to this Request as vague and incomprehensible because it does not identify what representation was made, by whom, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, denied.**

**REQUEST NO. 23:** Admit that VBF's FCR was never 1:1 during a grow-out phase for any lot or batch of fish during your tenure at VBF.

**ANSWER:** **Denied.**

**REQUEST NO. 24:** Admit that at least one of the Defendants represented an FCR at or near 1.038:1 during a grow-out phase for a lot or batch during your tenure at VBF.

**ANSWER:** **Defendant objects to this Request as vague and incomprehensible because it does not identify what representation was made, by whom, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, denied.**

**REQUEST NO. 25:** Admit that VBF's FCR was never at or near 1.038:1 during a grow-out phase for any lot or batch of fish during your tenure at VBF.

**ANSWER:** **Denied.**

**REQUEST NO. 26:** Admit that at least one of the Defendants represented an FCR of at or near 1.04 during a grow-out phase for a lot or batch during your tenure at VBF.

**ANSWER:** **Defendant objects to this Request as vague and incomprehensible because it does not identify what representation was made, by whom, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, denied.**

**REQUEST NO. 27:** Admit that VBF's FCR was never at or near 1.04 during a grow-out phase for any lot or batch during your tenure at VBF.

**ANSWER:** **Denied.**

Defendant's Responses to Request for Admission- Bruce A. Hall                                              Page 5
1414685v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Bruce A. Hall

App. 029

**REQUEST NO. 28:** Admit that at least one of the Defendants concealed information from non-Defendant VBF directors relating to the mortality rates on at least one occasion during your tenure at VBF.

      **ANSWER:   Denied.   Answering further, Defendant did not provide data on mortality rates to VBF directors; Katie Olson, VBF employee, prepared a report that was circulated to the Board of Directors and to Amstar, and Defendant understood that Amstar prepared its own version of the report to Alder Aqua on a monthly basis.**

**REQUEST NO. 29:** Admit that VBF's actual mortality rate was higher than at least one of the Defendants represented during your tenure at VBF.

      **ANSWER:   Defendant objects to this Request as vague and incomprehensible because it does not identify what representation was made, by whom, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, denied.**

**REQUEST NO. 30:** Admit that Ted Rea knew of that thousands of fish had recently died at the Saint Louis farm at the time of VBF's Board of Directors meeting in September 2017.

      **ANSWER:   Defendant admits Ted Rea knew that certain fish had died at VBF's Saint Louis farm before September 2017 and admits that Mr. Rea discussed this fact with the directors during or within a few days of the September 2017 Board of Directors meeting. Defendant denies the remaining allegations of this request.**

**REQUEST NO. 31:** Admit that the Defendants failed to implement a Fry Quarantine facility even after an extreme death loss event.

      **ANSWER:  Denied.  At the time of Defendant's termination from VBF, a portion of VBF's Blairsburg farm was being repurposed for a Fry Quarantine system.**

**REQUEST NO. 32:** Admit that Defendants did not report the extent of all mortality events to the VBF Board of Directors during your tenure at VBF.

      **ANSWER:  Denied.  Monthly reports were provided to the VBF Board of Directors during Defendant's tenure as an officer.**

**REQUEST NO. 33:**  Admit that at least one of the Defendants, on at least one occasion, misrepresented death loss bio masses in the Monthly Management Reports issued to the Board of Directors.

      **ANSWER:  Denied.**

Defendant's Responses to Request for Admission- Bruce A. Hall                                         Page 6
1414685v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Bruce A. Hall

App. 030

**REQUEST NO. 34:** Admit that in the fish industry mortality rates are reported cumulatively by adding together the number of fish per batch that die per month.

**ANSWER:  Denied. The industry uses a bio-mass metric for reporting mortality rates.**

**REQUEST NO. 35:** Admit that at least one of the Defendants reported mortality rates non-cumulatively to the VBF Board of Directors during your tenure at VBF.

**ANSWER:  Denied.**

**REQUEST NO. 36:** Admit that at least one of the Defendants concealed information relating to the fish stocking density during your tenure VBF.

**ANSWER:  Denied.**

**REQUEST NO. 37:** Admit that at least one of the Defendants misrepresented information relating to the fish stocking density to non-Defendant VBF Directors on at least one occasion during your tenure at VBF.

**ANSWER:  Denied.**

**REQUEST NO. 38:** Admit that at least one of the Defendants represented that the VBF tanks could safely hold .75 pounds/gallon during your tenure at VBF.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not identify who made this representation, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to these objections and without further clarification, Defendant admits in 2016 and 2017, Defendants presented to VBF's Board their belief that upon improved water quality and dissolved $O_2$ levels, they expected VBF tanks could hold .75 pounds of fish per gallon of water.  Defendants were conducting trials of this hypothesis at the Buckeye facility and provided updates as to their progress in testing this hypothesis at subsequent Board of Director meetings.  Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 39:** Admit that at least one of the Defendants represented a VBF fish-stocking plan at 15,000 fingerlings per tank on at least one occasion to third parties during your tenure at VBF.

**ANSWER:  Defendant objects to this Request as vague and incomprehensible because it does not identify who made this representation, to whom, and when and thus,**

Defendant's Responses to Request for Admission- Bruce A. Hall                                                     Page 7
1414685v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Bruce A. Hall

App. 031

**Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, Defendant admits in 2016 and 2017, Defendants presented to the VBF Board and Dr. Happel of Alder Aqua their belief that upon improved water quality and dissolved $O_2$ levels, they expected VBF tanks could hold 15,000 fingerlings per tank.  Defendants provided updates as to their progress in testing this hypothesis at subsequent Board of Director meetings. Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 40:** Admit that at least one of the Defendants represented to third parties on at least one occasion that VBF stocked 16,000 fish per six tank pod during your tenure at VBF.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not identify who made this representation, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, Defendant admits in 2016 and 2017, Defendants presented to the VBF Board and Dr. Happel of Alder Aqua their belief that upon improved water quality and dissolved $O_2$ levels and stocking tanks with larger fry, they expected VBF tanks could hold 16,000 fish per six tank pods.  Defendants provided updates as to their progress in testing this hypothesis at subsequent Board of Director meetings. Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 41:** Admit that at least one of the Defendants provided to Alder a document noting a stocking rate of 16,000 fingerlings per pod every two months with a 1:1 pound of fish per gallon of water stocking density during your tenure at VBF.

**ANSWER:   Defendant objects to this Request as vague and incomprehensible because it does not identify who made this representation and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, Defendant admits in 2016 and 2017, Defendants presented to the VBF Board and Dr. Happel of Alder Aqua their belief that upon improved water quality and dissolved $O_2$ levels and stocking tanks with larger fry, they expected VBF tanks could hold 16,000 fingerlings per pod.  Defendants provided updates as to their progress in testing this hypothesis at subsequent Board of Director meetings. Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 42:** Admit that Driver informed a potential investor in early 2016 that VBF could stock 16,000 fingerlings per tank.

**ANSWER:   Defendant objects to this Request as vague and incomprehensible because it does not identify when this representation was made or to whom, and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, denied.**

Defendant's Responses to Request for Admission- Bruce A. Hall                                               Page 8
1414685v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Bruce A. Hall

App. 032

**REQUEST NO. 43:** Admit that at least one of the Defendants represented that VBF successfully stocked 16,000 fish/tank for an additional $11 million in EBITDA during your tenure at VBF.

**ANSWER:   Defendant objects to this Request as vague and incomprehensible because it does not identify who made this representation, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, denied.**

**REQUEST NO. 44:** Admit that, at most, during your tenure at VBF, no more than four of 17 six-tank pods were stocked with 16,000 or more fish.

**ANSWER:   Defendant states that he has conducted a reasonable inquiry and despite such inquiry, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 45:** Admit that VBF never met its stocking density goals during your tenure at VBF.

**ANSWER: Denied.**

**REQUEST NO. 46:** Admit that the mortality rate on the four batches of six tank pods that were stocked with 16,000 or more fish was in reality 19% or higher during your tenure at VBF.

**ANSWER: Defendant states that he has conducted a reasonable inquiry and despite such inquiry, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 47:** Admit that at least one of the Defendants during your tenure at VBF represented that VBF's tanks could safely hold more barramundi than such tanks could hold in reality.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not identify who made this representation, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, denied.**

**REQUEST NO. 48:** Admit that Sheriff represented to at least one of the Defendants that his opposing flow system could safely handle 7,500 pounds per tank.

Defendant's Responses to Request for Admission- Bruce A. Hall                                                                 Page 9
1414685v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Bruce A. Hall

App. 033

**ANSWER:**   **Admit. Answering further, Defendant states that Mr. Sheriff represented to VBF in 2015 and 2016 that his opposing flow system could handle 10,000 pounds of fish per tank.**

**REQUEST NO. 49:** Admit that during your tenure at VBF, at least one of the Defendants represented that each six-tank pod will produce approximately 120,000 pounds annually.

**ANSWER:**   **Defendant objects to this Request as vague and incomprehensible because it does not identify who made this representation, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, Defendant admits in 2016 and 2017, Defendants presented to the VBF Board and Dr. Happel their belief that upon improved water quality and dissolved $O_2$ levels and with stocking larger fry, they hoped each six-pod tank could produce 120,000 pounds of fish annually.  Defendants provided updates as to their progress in testing this hypothesis at subsequent Board of Director meetings. Defendant denies the remaining allegations of this Request**

**REQUEST NO. 50:** Admit that VBF's projected EBITDA was based on its represented tank density and/or fish-stocking plan during your tenure at VBF.

**ANSWER:** **Defendant objects to this Request as vague and incomprehensible because it does not identify any time period for "projected EBITDA", thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, Defendant admits VBF's projections at the time of Alder Aqua's investment were based on Defendants' belief that upon improved water quality and dissolved $O_2$ levels would increase tank density, stocking density and overall fish production.  Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 51:** Admit that at least one of the Defendants represented that VBF had successfully stocked 1:1 pound of fish per gallon during your tenure at VBF.

**ANSWER:**   **Defendant objects to this Request as vague and incomprehensible because it does not identify who made this representation, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, Defendant admits that VBF represented that it had a test tank that had successfully stocked 1:1 pound of fish per gallon.  Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 52:** Admit that the VBF tanks did not actually have a stocking rate of 1:1 pound of fish per gallon during your tenure at VBF.

Defendant's Responses to Request for Admission- Bruce A. Hall                                      Page 10
1414685v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Bruce A. Hall

App. 034

**ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not identify any time period for "stocking rate", thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, denied.**

**REQUEST NO. 53:** Admit that Defendants represented to investors or potential investors that opposing flows technology was previously successful and/or that it would very likely be successful when implemented at VBF.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not identify who made this representation, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, Defendant admits, based on information provided to him and other Defendants by Rick Sheriff and Mark Nelson, he believed the opposing flows technology had been and would be successful when implemented, although there were risks associated with implementing that technology in a larger tank system. Defendant denies the remaining allegation of this Request.**

**REQUEST NO. 54:** Admit that opposing flows technology was not successful at VBF during your tenure at VBF.

**ANSWER: Defendant objects to this Request as vague to the extent that the term "successful" is undefined and does not constitute a statement of fact, but a statement of opinion or judgment. Subject to that objection, denied.**

**REQUEST NO. 55:** Admit that VBF lost millions of dollars in value during your tenure at VBF.

**ANSWER: Defendants object to this Request as vague to the extent that the term "value" is undefined and does not constitute a statement of fact, but a statement of opinion or judgment. Subject to that objection, denied.**

**REQUEST NO. 56:** Admit that you were paid over a $1,000,000 by VBF during your tenure at VBF.

**ANSWER: Defendant objects this Request as vague to the extent that payments are not sufficiently identified. Subject to that objection, with respect to Defendant's tenure as a VBF employee pursuant to his Employment Agreement, denied.**

**REQUEST NO. 57:** Admit that VBF was losing money before Alder invested in VBF.

**ANSWER: Admit.**

Defendant's Responses to Request for Admission- Bruce A. Hall                                                    Page 11
1414685v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Bruce A. Hall

App. 035

**REQUEST NO. 58:** Admit that VBF spent $2 million per month in 2017.

**ANSWER: Defendant objects to this Request as vague to the extent that the term "spent" is undefined and is subject to multiple interpretations. Subject to that objection, Defendant states that he has conducted a reasonable inquiry and despite such inquiry without access to VBF's books and records, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 59:** Admit that VBF spent approximately $1.5 million per month in 2017.

**ANSWER: Defendant objects to this Request as vague to the extent that the term "spent" is undefined and is subject to multiple interpretations. Subject to that objection, Defendant states that he has conducted a reasonable inquiry and despite such inquiry without access to VBF's books and records, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 60:** Admit that VBF spent approximately $1 million per month in 2017.

**ANSWER: Defendant objects to this Request as vague to the extent that the term "spent" is undefined and is subject to multiple interpretations. Subject to that objection, Defendant states that he has conducted a reasonable inquiry and despite such inquiry without access to VBF's books and records, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 61:** Admit that VBF spent approximately $2 million per month in 2016.

**ANSWER: Defendant objects to this Request as vague to the extent that the term "spent" is undefined and is subject to multiple interpretations. Subject to that objection, Defendant states that he has conducted a reasonable inquiry and despite such inquiry without access to VBF's books and records, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 62:** Admit that VBF spent approximately $1.5 million per month in 2016.

**ANSWER:  Defendant objects to this Request as vague to the extent that the term "spent" is undefined and is subject to multiple interpretations. Subject to that objection, Defendant states that he has conducted a reasonable inquiry and despite such inquiry without access to VBF's books and records, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 63:** Admit that VBF spent approximately $1 million per month in 2016.

Defendant's Responses to Request for Admission- Bruce A. Hall                                                                 Page 12
1414685v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Bruce A. Hall

App. 036

**ANSWER: Defendant objects to this Request as vague to the extent that the term "spent" is undefined and is subject to multiple interpretations. Subject to that objection, Defendant states that he has conducted a reasonable inquiry and despite such inquiry without access to VBF's books and records, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 64:** Admit that VBF spent approximately $2 million per month in 2015.

**ANSWER: Defendant objects to this Request as vague to the extent that the term "spent" is undefined and is subject to multiple interpretations. Subject to that objection, Defendant states that he has conducted a reasonable inquiry and despite such inquiry without access to VBF's books and records, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 65:** Admit that VBF spent approximately $1.5 million per month in 2015.

**ANSWER: Defendant objects to this Request as vague to the extent that the term "spent" is undefined and is subject to multiple interpretations. Subject to that objection, Defendant states that he has conducted a reasonable inquiry and despite such inquiry without access to VBF's books and records, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 66:** Admit that VBF spent approximately $1 million per month in 2015.

**ANSWER: Defendant objects to this Request as vague to the extent that the term "spent" is undefined and is subject to multiple interpretations. Subject to that objection, Defendant states that he has conducted a reasonable inquiry and despite such inquiry without access to VBF's books and records, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 67:** Admit that at least one of the Defendants represented that Rick Sheriff was VBF's Chief Technology Officer during your tenure at VBF.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not identify who made this representation, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, Defendant admits that Rick Sherriff signed a contract with VBF in July 2016, to act as its Chief Technology Officer, which contract was approved by the Board of Directors and specifically by Alder Aqua.**

**REQUEST NO. 68:** Admit that no copyrights were issued to VBF during your tenure at VBF.

Defendant's Responses to Request for Admission- Bruce A. Hall                                    Page 13
1414685v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Bruce A. Hall

App. 037

**ANSWER:   Defendant states that he has conducted a reasonable inquiry and despite such inquiry, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 69:** Admit that at least one of the Defendants had some ownership interest in Opposing Flows Aquaculture.

**ANSWER: Defendant objects to this Request to the extent it does not define any time period.  Subject to that objection and without further clarification, Defendant admits that Ted Rea, as registered agent, registered Opposing Flows Aquaculture, Inc. in late 2014, which would license the OFA technology to other growers but Defendant denies that any shares in OFA or other ownership interest was granted to anyone. Once Alder Aqua invested in VBF, it purchased the patents for the opposing flow technology and there was no use for the OFA entity and it was closed.  Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 70:** Admit that there were complaints about the smell of VBF's fish before Norman McCowan started at VBF.

**ANSWER:  Defendant objects to this Request as vague and incomprehensible because it does not identify who raised this complaint, to whom, where, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, denied.**

**REQUEST NO. 71:** Admit that VBF never implemented software and hardware tools that allowed for integration of its operations.

**ANSWER:   Defendant objects this Request as vague to the extent that the terms "software and hardware tools" and "integration of operations" are not sufficiently defined.  Subject to that objection and without further clarification, denied.  Answering further, Defendant states VBF was utilizing Aqua Manager and NetSuite to manage and integrate operations.**

**REQUEST NO. 72:** Admit that VBF never had an operational research & development center.

**ANSWER: Admit.**

**REQUEST NO. 73:** Admit that VBF never produced its own fish feed during your tenure at VBF.

**ANSWER: Admit.**

Defendant's Responses to Request for Admission- Bruce A. Hall                                                     Page 14
1414685v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Bruce A. Hall

App. 038

**REQUEST NO. 74:** Admit that VBF never partnered with Iowa State University during your tenure at VBF.

**ANSWER: Defendant objects this Request as vague to the extent that the term "partnered with" is not sufficiently defined. Subject to that objection and without further clarification, admitted. Answering further, Defendant states that VBF had engaged a group of advisors, including staff from Iowa State University to assess collaborative research opportunities but after Alder Aqua's investment, Dr. Happel specifically instructed Defendants not to share information or otherwise collaborate with any universities.**

**REQUEST NO. 75:** Admit that at least one of the Defendants projected VBF's annual production from the Urban Farm to be at least 8,000,000 pounds/year.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not identify who made this projection, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, Defendant admits in 2017, based on Defendants' belief that using larger fry and improving water quality and dissolved $O_2$ levels and with the addition of barns 6 and 7, VBF's annual production from the Urban Farm was projected to be 8,000,000 pounds per year. Defendants provided updates as to this projection at subsequent Board of Director meetings. Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 76:** Admit that VBF's total production from January through October 2015 was less than 200,000 pounds.

**ANSWER: Defendant states that he has conducted a reasonable inquiry and despite such inquiry, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 77:** Admit that there was never a market demand for 15 million pounds of Barramundi in the United States.

**ANSWER: Defendant states that he has conducted a reasonable inquiry and despite such inquiry, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

Defendant's Responses to Request for Admission- Bruce A. Hall                                                                Page 15
1414685v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Bruce A. Hall

App. 039

**REQUEST NO. 78:** Admit that VBF never produced 4.8 million pounds of fish in any given year during your tenure at VBF.

**ANSWER:** Defendant states that he has conducted a reasonable inquiry and despite such inquiry, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.

**REQUEST NO. 79:** Admit that Defendants represented in October 2015 that VBF was valued at $32.5 million.

**ANSWER:** Defendant objects to this Request as vague to the extent that the term "value" is undefined and does not constitute a statement of fact, but a statement of opinion or judgment. Defendant further objects to this Request as vague and incomprehensible because it does not identify who made this representation, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to these objections and without further clarification, Defendant admits in investment marketing materials provided to prospective investors, Defendants projected VBF's value at $32.5 million.

**REQUEST NO. 80:** Admit that at least one of the Defendants provided data for the following documents exhibited to VBF's First Set of Interrogatories to Defendant Keith Driver (answer each sub-part separately):

    a. "Executive Summary" and "Marketing Deck" attached as **Exhibit 1.**
    b. November 1, 2014 PowerPoint attached as **Exhibit 2**.
    c. the November 2014-April 2015 Opposing Flows Tank System Performance Data PowerPoint, attached as **Exhibit 3**.

**ANSWER:  Admitted as to parts a, b and c.**

**REQUEST NO. 81:** Admit that there were no designated growers for the alleged VBF Grower Model as of December 31, 2016.

**ANSWER:  Denied.**

**REQUEST NO. 82:** Admit that VBF purchased U.S. Patent 6,065,430 and U.S. Patent Application 14/289,623 for $2.75 million.

**ANSWER:   Defendant objects to this Request as it does not identify any time period. Subject to this objection, Defendant admits and after completing its due diligence on VBF, Alder Aqua decided to purchase the patents as part of its investment. as part of**

Defendant's Responses to Request for Admission- Bruce A. Hall                                      Page 16
1414685v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Bruce A. Hall

App. 040

Alder Aqua's investment. Amstar Funds thus provided a bridge loan for VBF to purchase US Patent 6,065,430 and U.S. Patent Application 14/289,623 from Rick Sheriff for $2.75 million.  Defendant denies the remaining allegations of this Request.

**REQUEST NO. 83:** Admit that U.S. Patent 6,065,430 expired on October 10, 2017.

**ANSWER: Defendant states that he has conducted a reasonable inquiry and despite such inquiry, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 84:** Admit that one or more Defendants provided information to one or more people from Fisheries Technology Associates to complete that organization's "Technical Assessment of Barramundi Production at VeroBlue Farms with a Focus on Iowa's First: A Due Diligence Assessment Consultation Report" dated July 2, 2015.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not identify who made this representation, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to these objections and without further clarification, Keith Driver provided information to Bill Manci at Fisheries Technology Associates to complete the identified Assessment in 2015 as part of the due diligence conducted by Generation Investment Management in preparation for its debt commitment to VBF.**

**REQUEST NO. 85:** Admit that you have communicated with counsel ("Bankruptcy Counsel") in VBF's pending bankruptcy case, Case No. 18-01297 *In re: VeroBlue Farms USA, Inc., et al.* pending in the Northern District of Iowa ("Bankruptcy").

**ANSWER: Defendant objects to this Request as vague and incomprehensible as there are over 5 sets of counsel who have appeared in the Bankruptcy.  Without further clarification and identification of which "Bankruptcy Counsel" is targeted in this Request, Defendant cannot admit to the truth or falsity of this Request, and this request may seek disclosure of communications that are subject to attorney-client privilege and/or common interest privilege.  Subject to these objections, Defendant can neither admit nor deny this Request.**

**REQUEST NO. 86:** Admit that you or one of your representatives has discussed dismissal of this lawsuit with Bankruptcy Counsel.

**ANSWER: Defendant objects to this Request as vague and incomprehensible as there are over 5 sets of counsel who have appeared in the Bankruptcy.  Without further clarification and identification of which "Bankruptcy Counsel" is targeted in this Request, Defendant cannot admit to the truth or falsity of this Request and this request may seek disclosure of communications that are subject to attorney-client privilege and/or common**

Defendant's Responses to Request for Admission- Bruce A. Hall                                                                Page 17
1414685v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Bruce A. Hall

App. 041

interest privilege.  Subject to these objections, Defendant can neither admit nor deny this Request.

**REQUEST NO. 87:** Admit that one or more Defendants directly or through counsel requested that the unsecured creditors committee demand that VBF dismiss this lawsuit against the Defendants.

     **ANSWER:   Defendant objects to this Request on the grounds that it seeks communications subject to attorney-client and/or common interest privilege. Subject to this objection, Defendant can neither admit nor deny this Request.**

**REQUEST NO. 88:** Admit that you have provided information about Alder to Bankruptcy Counsel.

     **ANSWER: Defendant objects to this Request as vague and incomprehensible as there are over 5 sets of counsel who have appeared in the Bankruptcy.  Without further clarification and identification of which "Bankruptcy Counsel" is targeted in these Request, Defendant cannot admit to the truth or falsity of this Request, and this request may seek communications that are subject to attorney-client privilege and/or common interest privilege.  Subject to these objections, Defendant can neither admit nor deny this Request.**

**REQUEST NO. 89:** Admit that one or more Defendants, directly or through counsel, have communicated with (a) Phillip Sheets; (b) Thomas Fawkes and/or Goldstein & McClintock LLP; (c) Aaron Hammer and/or Horwood Marcus & Berk; or (d) any member of the Ad Hoc Committee relating to the Bankruptcy.

     **ANSWER:   Defendant objects to this Request on the grounds that it seeks communications subject to attorney-client and/or common interest privilege. Subject to this objection, Defendant can neither admit nor deny this Request.**

**REQUEST NO. 90:** Admit that one or more Defendants directly or through counsel reviewed and/or contributed to the December 19, 2018 letter signed by Thomas Fawkes relating to the Bankruptcy, attached as **Exhibit 4**.

     **ANSWER:   Defendant objects to this Request on the grounds that it seeks communications subject to attorney-client and/or common interest privilege. Subject to this objection, Defendant can neither admit nor deny this Request.**

**REQUEST NO. 91:** Admit that Wulf signed a Warrant to Purchase Series A Preferred Shares of VeroBlue Farms USA, Inc. dated July 7, 2016 between VeroBlue Farms USA, Inc. and Alder.

Defendant's Responses to Request for Admission- Bruce A. Hall                                                                  Page 18
1414685v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Bruce A. Hall

App. 042

**ANSWER: Admit.**

**REQUEST NO. 92:** Admit that James Rea signed a Secretary's Certificate dated July 7, 2016 between VeroBlue Farms, Inc. and Alder.

**ANSWER: Defendant states that he has conducted a reasonable inquiry and despite such inquiry without access to VBF's books and records, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 93:** Admit that the proposal to restructure VBF's Canadian affiliate was not executed.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not identify what proposal it is referring to, who made the proposal, to whom, and when it was proposed and thus, Defendant cannot know what facts are being admitted or denied. Subject to these objections and without further clarification, Defendant lacks sufficient knowledge or information to form a belief as to the truth or falsity of this request and it is therefore, denied.**

**REQUEST NO. 94:** Admit that one or more Defendants approved Amstar Group, LLC ("Amstar") and Alder's debt and equity infusions instead of a capital infusion from Generation Investment Management.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not specify any time period for the described debt and equity infusions and thus, Defendant cannot know what facts are being admitted or denied. Subject to these objections and without further clarification, denied. Answering further, Defendant states that when Alder Aqua offered its equity infusion into VBF in July 2016, Alder Aqua mandated that Amstar's debt financing be part of this infusion and Alder Aqua refused to allow Generation Investment Management to issue debt or invest equity VBF.**

**REQUEST NO. 95:** Admit that Alder was not involved in VBF until July 2016.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because the term "involved in VBF" is undefined and thus, Defendant cannot know what facts are being admitted or denied. Subject to these objections and without further clarification, denied. Alder Aqua was engaged in due diligence surrounding its investment in VBF prior to July 2016.**

**REQUEST NO. 96:** Admit that between July 2016 and August 2017, only two of seven directors were appointed by Alder.

**ANSWER:** Defendant objects to this Request as vague and incomprehensible because it does not identify which entity's directors were appointed by Alder. Subject to this objection, Defendant states between July 2016 and August 2017, two of VBF's directors were appointed by Alder, but that Alder also controlled the board of Amstar, VBF's sole lender.  Defendant denies the remaining allegations of this Request.

**REQUEST NO. 97:** Admit that between August 2017 and October 24, 2017, only two of seven directors were appointed by Alder.

**ANSWER:** Defendant objects to this Request as vague and incomprehensible because it does not identify which entity's directors were appointed by Alder. Subject to this objection, Defendant states that between August 2017 and October 24, 2017, two of VBF's directors were appointed by Alder, but that Alder also controlled the board of Amstar, VBF's sole lender. Defendant denies the remaining allegations of this Request.

**REQUEST NO. 98:** Admit that Terry Lyons resigned from the Board of Directors in or before March 2018 and was never replaced.

**ANSWER:**  Defendant states that he has conducted a reasonable inquiry and despite such inquiry, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.

**REQUEST NO. 99:** Admit that Alder invested at least $50 million in VBF during your tenure at VBF.

**ANSWER:** Defendant states that he has conducted a reasonable inquiry and despite such inquiry, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.

**REQUEST NO. 100:** Admit that no VBF investor has lost more money than Alder during your tenure at VBF.

**ANSWER:** Defendant objects to this Request as vague and incomprehensible because the term "lost more money" is undefined and thus, Defendant cannot know what facts are being admitted or denied. Subject to these objections and without further clarification, denied.   Defendant has no knowledge or information as to what Alder Aqua's actual gains or losses on its investment in VBF may be.

Defendant's Responses to Request for Admission- Bruce A. Hall                                    Page 20
1414685v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Bruce A. Hall

App. 044

**REQUEST NO. 101:** Admit that by July 7, 2016, one or more Defendants knew that VBF would pursue the corporate farm model over the Grower Model.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because the term "corporate farm model" is undefined and thus, Defendant cannot know what facts are being admitted or denied. Subject to these objections and without further clarification, denied.**

**REQUEST NO. 102:** Admit that VBF was in default of its credit facility with Amstar in 2016.

**ANSWER: Defendant objects to this Request as the time period of the entire calendar year of 2016 is vague and the term "default" is undefined and thus, Defendant cannot know what facts are being admitted or denied.  Subject to these objections, Defendant denies that Amstar declared VBF to be default in 2016. Answering further, Defendant states that based on negative EBITDA covenants in the Amstar credit facilities, VBF would have been in default the first day, but that Amstar directed, controlled and approved all payments from the facility, including debt payment.**

**REQUEST NO. 103:** Admit that Amstar did not declare VBF's default until 2017.

**ANSWER: Defendant admits that Amstar sent VBF a notice of default in late 2017. Defendant denies the remaining allegations of this request.**

**REQUEST NO. 104:** Admit that Alder introduced ING Capital LLC ("ING") to VBF.

**ANSWER:  Defendant admits Alder introduced ING Europe to VBF and that ING Europe was affiliated with ING Capital LLC.  Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 105:** Admit that VBF would not have been able to satisfy the covenants under an ING revolving credit facility discussed with VBF.

**ANSWER: Defendant objects to this Request to the extent it requests admission of a hypothetical situation and not a fact. Defendant further objects to this Request to the extent it does not identify any time period and thus, Defendant cannot know what facts are being admitted or denied. Subject to these objections and without further clarification, denied.**

**REQUEST NO. 106:** Admit that one or more Defendants provided information to PriceWaterhouse for a financial audit of VBF.

Defendant's Responses to Request for Admission- Bruce A. Hall                                                                 Page 21
1414685v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Bruce A. Hall

App. 045

**ANSWER:   Defendant objects to this Request as vague and incomprehensible because it does not specify any time period for the described audit and thus, Defendant cannot know what facts are being admitted or denied. Subject to these objections and without further clarification, Defendant admits that they provided information about VBF to Pricewaterhouse Coopers for audits of VBF in 2016 and 2017.**

**REQUEST NO. 107:** Admit that Jackson Walker LLP was VBF's corporate counsel from some time in 2014 to sometime in 2017.

**ANSWER:   Defendant admits that from 2014 until his termination from VBF in November 2017, Jackson Walker LLP was VBF's corporate counsel.   Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in this Request and therefore, denies them.**

**REQUEST NO. 108:** Admit that Jackson Walker LLP currently continues to represent at least one of the Defendants or at least one of the Defendants' Affiliated Entities.

**ANSWER: Denied.**

**REQUEST NO. 109:** Admit that FishDish LLC did not appoint a member to VBF's Board of Directors after Ken Lockard's departure as a director in 2018.

**ANSWER: Defendant states that he has conducted a reasonable inquiry and despite such inquiry, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

Defendant's Responses to Request for Admission- Bruce A. Hall                                   Page 22
1414685v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Bruce A. Hall

App. 046

Respectfully submitted,

Underwood Perkins, P.C.

By:     /s/ Kimberly D. Annello
        Kimberly D. Annello
        State Bar No. 24093704
        Two Lincoln Centre
        5420 LBJ Freeway, Suite 1900
        Dallas, Texas 75240
        Telephone:    (972) 661-5114
        Facsimile:    (972) 661-5691
        Email: kannello@uplawtx.com

        Attorney for Defendants

        **Certificate of Service**

        I hereby certify that a true and correct copy of the above and foregoing instrument has
been served upon all counsel of record, as listed below, on this 3rd day of April 2019 via ECF
and/or E-Mail:

        Robert H. Lang
        Renato Mariotti
        Caroline Pritikin
        Eileen Boyle Perich
        Thompson Coburn LLP
        55 East Monroe, 37th Floor
        Chicago, IL 60603
        rlang@thompsoncoburn.com
        rmariotti@thompsoncoburn.com
        cpritikin@thompsoncoburn.com
        eboyleperich@thompsoncoburn.com

        Matthew E. Laughlin AT0004515
        Holly M. Logan AT0004710
        Katelynn T. McCollough  AT0013443
        DAVIS, BROWN, KOEHN, SHORS &
        ROBERTS, P.C.
        215 10th Street, Suite 1300
        Des Moines, Iowa  50309
        mattlaughlin@davisbrownlaw.com
        hollylogan@davisbrownlaw.com
        katelynnmccollough@davisbrown.com

                                        /s/ Kimberly D. Annello
                                        Kimberly D. Annello

Defendant's Responses to Request for Admission- Bruce A. Hall                                    Page 23
1414685v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Bruce A. Hall

App. 047

EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **VEROBLUE FARMS USA, INC.,** ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 3:19-CV-00764-L** |
| ) | |
| **LESLIE A. WULF, BRUCE A. HALL,** ) | |
| **JAMES REA, JOHN E. REA, AND** ) | |
| **KEITH DRIVER,** ) | |
| **Defendants.** ) | |

**DEFENDANT JAMES REA'S RESPONSES TO PLAINTIFF'S**
**FIRST REQUEST FOR ADMISSION OF FACT**

Defendant, JAMES REA ("Defendant" or "J. Rea"), hereby responds to Plaintiff's First

Request for Admission of Fact as follows:

**RESPONSES TO REQUEST FOR ADMISSION**

**REQUEST NO. 1**:  Admit that one or more Defendants have an ownership interest and/or control of BAJJER LLC.

   **ANSWER:    Admit.**


**REQUEST NO. 2**:  Admit that one or more Defendants caused VBF to transfer 1,250,000 shares of VeroBlue Farms, Inc. to BAJJER LLC for $1.25.

   **ANSWER:    Denied.   Answering further, Defendant states Bajjer, LLC holds 1,250,000 shares of VBF in trust for Kelson Capital Inc. pursuant to a written agreement between them, and that this fact was discussed in an independent due diligence report done by Pricewaterhouse Coopers for Jens Haarkoetter of Alder Aqua on or about June 20, 2016.**

**REQUEST NO. 3**: Admit that one or more Defendants have an ownership interest and/or assert control in BAJJER II, LLC.

   **ANSWER:  Admit.**

Defendant's Responses to Request for Admission- James Rea                                                    Page 1
1414686v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- James Rea

App. 049

**REQUEST NO. 4**: Admit that American Growth Funding, LLC ("AGF") loaned approximately $78,000 to BAJJER II, LLC which grew to $101,000 with interest.

    **ANSWER:    Admit.**

**REQUEST NO. 5:**  Admit that AGF loaned BAJJER approximately $200,000.

    **ANSWER**:  **Defendant admits that AGF loaned Bajjer $200,000 in or about June 30, 2015, but states that the purpose of this loan was to pass through funds for operational costs of VBF. Defendant denies the remaining allegations of this request**.

**REQUEST NO. 6:**  Admit that BAJJER transferred AGF's loan of approximately $200,000 to VBF.

    **ANSWER:  Defendant admits the $200,000 that AGF loaned Bajjer was transferred to VBF on July 1, 2015 because VBF needed the funds for operations, but AGF would only loan the funds to Bajjer and not directly to VBF.  Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 7:**    Admit that on or about July 8, 2016, VBF paid AGF approximately $375,000.

    **ANSWER:    Defendant admits that VBF paid AGF approximately $375,000 in July 2016, pursuant to an agreement among Alder Aqua and Alder Aqua's counsel, Davis Graham & Stubbs ("DGS"), and AGF to repay the loan from AGF to Bajjer directly from VBF to AGF.  This repayment and the payment of 26 other bridge loans was disclosed and approved by Alder Aqua and DGS in a sources and uses of funds statement provided to them on July 8, 2016. Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 8:**  Admit that between December 1, 2015 and June 30, 2016, Gregg Sedun and/or Alcaron Capital Corporation loaned VBF approximately $250,000.

    **ANSWER: Defendant admits that Alcaron Capital Corporation loaned VFB approximately $250,000. Defendant denies remaining allegations of this request.**

**REQUEST NO. 9:** Admit that on or about July 12, 2016, one or more Defendants cause VBF to pay Alcaron Capital Corporation approximately $326,056 in repayment for the loans described in Request No. 8.

    **ANSWER:  Defendant admits that VBF paid Alcaron $326,056 in accordance with the sources and uses of funds statement provided to Alder Aqua and DGS on or about July 8, 2016.  Defendant denies the remaining allegations of this Request.**

Defendant's Responses to Request for Admission- James Rea                                          Page 2
1414686v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- James Rea

App. 050

**REQUEST NO. 10:** Admit that on or about July 14, 2016, Gregg Sedun loaned Wulf $225,000.

      **ANSWER:**   **Admit.**

**REQUEST NO. 11:**   Admit that one or more Defendants received twice their monthly compensation from VBF in July 2016.

      **ANSWER:**   **Denied.**   **Defendant was compensated by VBF pursuant to a management consulting agreement until Alder Aqua's investment in July 2016. The consulting agreement paid Defendant in arrears. Upon Alder Aqua's investment, Defendant became an employee of VBF. Thus, upon closing of Alder Aqua's investment, Defendant was paid for his final month of consulting services (June 2016). This was disclosed to and approved by Alder Aqua and DGS.  Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 12:** Admit that one or more Defendants directed or caused VBF to employ Christine Gagne during your tenure to VBF.

      **ANSWER:**  **Denied.  Answering further, Defendant states Christine Gagne was an independent contractor, not an employee of VBF.**

**REQUEST NO. 13:**   Admit that one or more Defendants directed or caused VBF to pay Christine Gagne under the name "Ronnie O'Brien" during your tenure at VBF.

      **ANSWER:**   **Admitted that Christine Gagne was paid as an independent contractor, under the name "Ronnie O'Brien."  Defendant denies remaining allegations of this Request.**

**REQUEST NO. 14:** Admit that, during at least some of the time she was on VBF's payroll, Christine Gagne was a Canadian national who was not authorized to work in the United States.

      **ANSWER:**   **Denied.  Christine Gagne was an independent contractor, and not on VBF's payroll.**

**REQUEST NO. 15:** Admit that one or more Defendants caused VBF to buy six tractor-trailers.

      **ANSWER:**  **Denied.  The purchase of six tractor trailers was presented to, approved by, and directed by VBF's Board of Directors in two separate board resolutions.**

**REQUEST NO. 16:** Admit that VBF's selling of live fish did not require the transportation of fish in all of the tractor-trailers.

Defendant's Responses to Request for Admission- James Rea               Page 3
1414686v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- James Rea

App. 051

**ANSWER:    Defendant objects to this Request as vague, nonsensical and not calling for the admission of a fact, but a statement of opinion or judgment. Subject to that objection, denied.**

**REQUEST NO. 17:** Admit that VBF could not sell fish as quickly as one or more Defendants represented to Cardinal Farms that VBF could sell fish.

**ANSWER:    Defendants object to this Request as vague and incomprehensible because it does not identify what representation was made, by whom, to whom, and when and thus, Defendants cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, denied**.

**REQUEST NO. 18:** Admit that one or more of the Defendants knew by July 2016 that the Grower Model would not be implemented and/or would not be successful if implemented.

**ANSWER:    Denied. Defendants planned to pursue a Grower Model until Alder Aqua representatives directed otherwise**.

**REQUEST NO. 19:** Admit that at least one of the Defendants requested or directed that one or more employees of VBF remove the mortality tally sheets from one or more tanks during your tenure at VBF.

**ANSWER:    Denied**.

**REQUEST NO. 20:** Admit that at least one of the Defendants misrepresented information relating to VBF's FCR to potential VBF investors and/or lenders.

**ANSWER:    Denied.**

**REQUEST NO. 21:** Admit that at least one of the Defendants sought to keep visitors from seeing VBF's grow tanks on at least one occasion.

**ANSWER:    Defendant objects to this Request as vague and incomprehensible because it does not identify any time period and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection, Defendant states that Jens Haarkoetter, a VBF Director and representative of both Amstar Funds and Alder Aqua, and Dr. Otto Happel, beneficial owner of both Amstar and Alder Aqua, instructed all VBF personnel, including Defendant, to limit visitation to the farms and to prohibit photographs in order to prevent competitors from seeing and knowing VBF's patented tank system, growing practices and other features. Additionally, Defendant admits that when fish are being stocked into tanks for the first time, it is common industry practice to limit visitation for bio-security purposes. Defendant denies the remainder of this Request.**

Defendant's Responses to Request for Admission- James Rea                                              Page 4
1414686v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- James Rea

App. 052

**REQUEST NO. 22:** Admit that at least one of the Defendant's represented an FCR of 1:1 during a grow-out phase for a lot or batch during your tenure at VBF.

**ANSWER:** **Defendant objects to this Request as vague and incomprehensible because it does not identify what representation was made, by whom, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, denied.**

**REQUEST NO. 23:** Admit that VBF's FCR was never 1:1 during a grow-out phase for any lot or batch of fish during your tenure at VBF.

**ANSWER:** **Denied.**

**REQUEST NO. 24:** Admit that at least one of the Defendants represented an FCR at or near 1.038:1 during a grow-out phase for a lot or batch during your tenure at VBF.

**ANSWER:** **Defendant objects to this Request as vague and incomprehensible because it does not identify what representation was made, by whom, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, denied.**

**REQUEST NO. 25:** Admit that VBF's FCR was never at or near 1.038:1 during a grow-out phase for any lot or batch of fish during your tenure at VBF.

**ANSWER:** **Denied.**

**REQUEST NO. 26:** Admit that at least one of the Defendants represented an FCR of at or near 1.04 during a grow-out phase for a lot or batch during your tenure at VBF.

**ANSWER:** **Defendant objects to this Request as vague and incomprehensible because it does not identify what representation was made, by whom, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, denied.**

**REQUEST NO. 27:** Admit that VBF's FCR was never at or near 1.04 during a grow-out phase for any lot or batch during your tenure at VBF.

**ANSWER:** **Denied.**

Defendant's Responses to Request for Admission- James Rea                                     Page 5
1414686v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- James Rea

App. 053

**REQUEST NO. 28:** Admit that at least one of the Defendants concealed information from non-Defendant VBF directors relating to the mortality rates on at least one occasion during your tenure at VBF.

**ANSWER:    Denied.    Answering further, Defendant did not provide data on mortality rates to VBF directors; Katie Olson, VBF employee, prepared a report that was circulated to the Board of Directors and to Amstar, and Defendant understood that Amstar prepared its own version of the report to Alder Aqua on a monthly basis.**

**REQUEST NO. 29:** Admit that VBF's actual mortality rate was higher than at least one of the Defendants represented during your tenure at VBF.

**ANSWER:    Defendant objects to this Request as vague and incomprehensible because it does not identify what representation was made, by whom, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, denied.**

**REQUEST NO. 30:** Admit that Ted Rea knew of that thousands of fish had recently died at the Saint Louis farm at the time of VBF's Board of Directors meeting in September 2017.

**ANSWER:    Defendant admits Ted Rea knew that certain fish had died at VBF's Saint Louis farm before September 2017 and admits that Mr. Rea discussed this fact with the directors during or within a few days of the September 2017 Board of Directors meeting. Defendant denies the remaining allegations of this request.**

**REQUEST NO. 31:** Admit that the Defendants failed to implement a Fry Quarantine facility even after an extreme death loss event.

**ANSWER:    Denied.    At the time of Defendant's termination from VBF, a portion of VBF's Blairsburg farm was being repurposed for a Fry Quarantine system.**

**REQUEST NO. 32:** Admit that Defendants did not report the extent of all mortality events to the VBF Board of Directors during your tenure at VBF.

**ANSWER:    Denied.    Monthly reports were provided to the VBF Board of Directors during Defendant's tenure as an officer.**

**REQUEST NO. 33:    Admit** that at least one of the Defendants, on at least one occasion, misrepresented death loss bio masses in the Monthly Management Reports issued to the Board of Directors.

**ANSWER:    Denied.**

Defendant's Responses to Request for Admission- James Rea                                        Page 6
1414686v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- James Rea

App. 054

**REQUEST NO. 34:**  Admit that in the fish industry mortality rates are reported cumulatively by adding together the number of fish per batch that die per month.

**ANSWER:  Denied. The industry uses a bio-mass metric for reporting mortality rates.**

**REQUEST NO. 35:**  Admit that at least one of the Defendants reported mortality rates non-cumulatively to the VBF Board of Directors during your tenure at VBF.

**ANSWER:  Denied.**

**REQUEST NO. 36:**  Admit that at least one of the Defendants concealed information relating to the fish stocking density during your tenure VBF.

**ANSWER:  Denied.**

**REQUEST NO. 37:**  Admit that at least one of the Defendants misrepresented information relating to the fish stocking density to non-Defendant VBF Directors on at least one occasion during your tenure at VBF.

**ANSWER:  Denied.**

**REQUEST NO. 38:**  Admit that at least one of the Defendants represented that the VBF tanks could safely hold .75 pounds/gallon during your tenure at VBF.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not identify who made this representation, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to these objections and without further clarification, Defendant admits in 2016 and 2017, Defendants presented to VBF's Board their belief that upon improved water quality and dissolved $O_2$ levels, they expected VBF tanks could hold .75 pounds of fish per gallon of water.  Defendants were conducting trials of this hypothesis at the Buckeye facility and provided updates as to their progress in testing this hypothesis at subsequent Board of Director meetings.  Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 39:**  Admit that at least one of the Defendants represented a VBF fish-stocking plan at 15,000 fingerlings per tank on at least one occasion to third parties during your tenure at VBF.

**ANSWER:  Defendant objects to this Request as vague and incomprehensible because it does not identify who made this representation, to whom, and when and thus,**

Defendant's Responses to Request for Admission- James Rea                                                                Page 7
1414686v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- James Rea

App. 055

**Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, Defendant admits in 2016 and 2017, Defendants presented to the VBF Board and Dr. Happel of Alder Aqua their belief that upon improved water quality and dissolved $O_2$ levels, they expected VBF tanks could hold 15,000 fingerlings per tank. Defendants provided updates as to their progress in testing this hypothesis at subsequent Board of Director meetings. Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 40:** Admit that at least one of the Defendants represented to third parties on at least one occasion that VBF stocked 16,000 fish per six tank pod during your tenure at VBF.

 **ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not identify who made this representation, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, Defendant admits in 2016 and 2017, Defendants presented to the VBF Board and Dr. Happel of Alder Aqua their belief that upon improved water quality and dissolved $O_2$ levels and stocking tanks with larger fry, they expected VBF tanks could hold 16,000 fish per six tank pods. Defendants provided updates as to their progress in testing this hypothesis at subsequent Board of Director meetings. Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 41:** Admit that at least one of the Defendants provided to Alder a document noting a stocking rate of 16,000 fingerlings per pod every two months with a 1:1 pound of fish per gallon of water stocking density during your tenure at VBF.

 **ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not identify who made this representation and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, Defendant admits in 2016 and 2017, Defendants presented to the VBF Board and Dr. Happel of Alder Aqua their belief that upon improved water quality and dissolved $O_2$ levels and stocking tanks with larger fry, they expected VBF tanks could hold 16,000 fingerlings per pod. Defendants provided updates as to their progress in testing this hypothesis at subsequent Board of Director meetings. Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 42:** Admit that Driver informed a potential investor in early 2016 that VBF could stock 16,000 fingerlings per tank.

 **ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not identify when this representation was made or to whom, and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, denied.**

Defendant's Responses to Request for Admission- James Rea          Page 8
1414686v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- James Rea

App. 056

**REQUEST NO. 43:** Admit that at least one of the Defendants represented that VBF successfully stocked 16,000 fish/tank for an additional $11 million in EBITDA during your tenure at VBF.

**ANSWER:** Defendant objects to this Request as vague and incomprehensible because it does not identify who made this representation, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, denied.

**REQUEST NO. 44:** Admit that, at most, during your tenure at VBF, no more than four of 17 six-tank pods were stocked with 16,000 or more fish.

**ANSWER:** Defendant states that he has conducted a reasonable inquiry and despite such inquiry, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.

**REQUEST NO. 45:** Admit that VBF never met its stocking density goals during your tenure at VBF.

**ANSWER:** Denied.

**REQUEST NO. 46:** Admit that the mortality rate on the four batches of six tank pods that were stocked with 16,000 or more fish was in reality 19% or higher during your tenure at VBF.

**ANSWER:** Defendant states that he has conducted a reasonable inquiry and despite such inquiry, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.

**REQUEST NO. 47:** Admit that at least one of the Defendants during your tenure at VBF represented that VBF's tanks could safely hold more barramundi than such tanks could hold in reality.

**ANSWER:** Defendant objects to this Request as vague and incomprehensible because it does not identify who made this representation, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, denied.

**REQUEST NO. 48:** Admit that Sheriff represented to at least one of the Defendants that his opposing flow system could safely handle 7,500 pounds per tank.

Defendant's Responses to Request for Admission- James Rea                                                          Page 9
1414686v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- James Rea

App. 057

**ANSWER:   Admit. Answering further, Defendant states that Mr. Sheriff represented to VBF in 2015 and 2016 that his opposing flow system could handle 10,000 pounds of fish per tank.**

**REQUEST NO. 49:** Admit that during your tenure at VBF, at least one of the Defendants represented that each six-tank pod will produce approximately 120,000 pounds annually.

**ANSWER:   Defendant objects to this Request as vague and incomprehensible because it does not identify who made this representation, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, Defendant admits in 2016 and 2017, Defendants presented to the VBF Board and Dr. Happel their belief that upon improved water quality and dissolved $O_2$ levels and with stocking larger fry, they hoped each six-pod tank could produce 120,000 pounds of fish annually.  Defendants provided updates as to their progress in testing this hypothesis at subsequent Board of Director meetings. Defendant denies the remaining allegations of this Request**

**REQUEST NO. 50:** Admit that VBF's projected EBITDA was based on its represented tank density and/or fish-stocking plan during your tenure at VBF.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not identify any time period for "projected EBITDA", thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, Defendant admits VBF's projections at the time of Alder Aqua's investment were based on Defendants' belief that upon improved water quality and dissolved $O_2$ levels would increase tank density, stocking density and overall fish production.  Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 51:** Admit that at least one of the Defendants represented that VBF had successfully stocked 1:1 pound of fish per gallon during your tenure at VBF.

**ANSWER:   Defendant objects to this Request as vague and incomprehensible because it does not identify who made this representation, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, Defendant admits that VBF represented that it had a test tank that had successfully stocked 1:1 pound of fish per gallon.  Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 52:** Admit that the VBF tanks did not actually have a stocking rate of 1:1 pound of fish per gallon during your tenure at VBF.

Defendant's Responses to Request for Admission- James Rea                                    Page 10
1414686v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- James Rea

App. 058

**ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not identify any time period for "stocking rate", thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, denied.**

**REQUEST NO. 53:** Admit that Defendants represented to investors or potential investors that opposing flows technology was previously successful and/or that it would very likely be successful when implemented at VBF.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not identify who made this representation, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, Defendant admits, based on information provided to him and other Defendants by Rick Sheriff and Mark Nelson, he believed the opposing flows technology had been and would be successful when implemented, although there were risks associated with implementing that technology in a larger tank system. Defendant denies the remaining allegation of this Request.**

**REQUEST NO. 54:** Admit that opposing flows technology was not successful at VBF during your tenure at VBF.

**ANSWER: Defendant objects to this Request as vague to the extent that the term "successful" is undefined and does not constitute a statement of fact, but a statement of opinion or judgment. Subject to that objection, denied.**

**REQUEST NO. 55:** Admit that VBF lost millions of dollars in value during your tenure at VBF.

**ANSWER: Defendants object to this Request as vague to the extent that the term "value" is undefined and does not constitute a statement of fact, but a statement of opinion or judgment. Subject to that objection, denied.**

**REQUEST NO. 56:** Admit that you were paid over a $1,000,000 by VBF during your tenure at VBF.

**ANSWER: Defendant objects this Request as vague to the extent that payments are not sufficiently identified. Subject to that objection, with respect to Defendant's tenure as a VBF employee pursuant to his Employment Agreement, denied.**

**REQUEST NO. 57:** Admit that VBF was losing money before Alder invested in VBF.

**ANSWER: Admit.**

Defendant's Responses to Request for Admission- James Rea                                                   Page 11
1414686v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- James Rea

App. 059

**REQUEST NO. 58:** Admit that VBF spent $2 million per month in 2017.

   **ANSWER: Defendant objects to this Request as vague to the extent that the term "spent" is undefined and is subject to multiple interpretations. Subject to that objection, Defendant states that he has conducted a reasonable inquiry and despite such inquiry without access to VBF's books and records, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 59:** Admit that VBF spent approximately $1.5 million per month in 2017.

   **ANSWER: Defendant objects to this Request as vague to the extent that the term "spent" is undefined and is subject to multiple interpretations. Subject to that objection, Defendant states that he has conducted a reasonable inquiry and despite such inquiry without access to VBF's books and records, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 60:** Admit that VBF spent approximately $1 million per month in 2017.

   **ANSWER: Defendant objects to this Request as vague to the extent that the term "spent" is undefined and is subject to multiple interpretations. Subject to that objection, Defendant states that he has conducted a reasonable inquiry and despite such inquiry without access to VBF's books and records, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 61:** Admit that VBF spent approximately $2 million per month in 2016.

   **ANSWER: Defendant objects to this Request as vague to the extent that the term "spent" is undefined and is subject to multiple interpretations. Subject to that objection, Defendant states that he has conducted a reasonable inquiry and despite such inquiry without access to VBF's books and records, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 62:** Admit that VBF spent approximately $1.5 million per month in 2016.

   **ANSWER:  Defendant objects to this Request as vague to the extent that the term "spent" is undefined and is subject to multiple interpretations. Subject to that objection, Defendant states that he has conducted a reasonable inquiry and despite such inquiry without access to VBF's books and records, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 63:** Admit that VBF spent approximately $1 million per month in 2016.

Defendant's Responses to Request for Admission- James Rea                                                Page 12
1414686v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- James Rea

App. 060

**ANSWER: Defendant objects to this Request as vague to the extent that the term "spent" is undefined and is subject to multiple interpretations. Subject to that objection, Defendant states that he has conducted a reasonable inquiry and despite such inquiry without access to VBF's books and records, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 64:** Admit that VBF spent approximately $2 million per month in 2015.

**ANSWER: Defendant objects to this Request as vague to the extent that the term "spent" is undefined and is subject to multiple interpretations. Subject to that objection, Defendant states that he has conducted a reasonable inquiry and despite such inquiry without access to VBF's books and records, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 65:** Admit that VBF spent approximately $1.5 million per month in 2015.

**ANSWER: Defendant objects to this Request as vague to the extent that the term "spent" is undefined and is subject to multiple interpretations. Subject to that objection, Defendant states that he has conducted a reasonable inquiry and despite such inquiry without access to VBF's books and records, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 66:** Admit that VBF spent approximately $1 million per month in 2015.

**ANSWER: Defendant objects to this Request as vague to the extent that the term "spent" is undefined and is subject to multiple interpretations. Subject to that objection, Defendant states that he has conducted a reasonable inquiry and despite such inquiry without access to VBF's books and records, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 67:** Admit that at least one of the Defendants represented that Rick Sheriff was VBF's Chief Technology Officer during your tenure at VBF.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not identify who made this representation, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, Defendant admits that Rick Sherriff signed a contract with VBF in July 2016, to act as its Chief Technology Officer, which contract was approved by the Board of Directors and specifically by Alder Aqua.**

**REQUEST NO. 68:** Admit that no copyrights were issued to VBF during your tenure at VBF.

Defendant's Responses to Request for Admission- James Rea                                      Page 13
1414686v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- James Rea

App. 061

**ANSWER:    Defendant states that he has conducted a reasonable inquiry and despite such inquiry, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 69:** Admit that at least one of the Defendants had some ownership interest in Opposing Flows Aquaculture.

**ANSWER: Defendant objects to this Request to the extent it does not define any time period.  Subject to that objection and without further clarification, Defendant admits that Ted Rea, as registered agent, registered Opposing Flows Aquaculture, Inc. in late 2014, which would license the OFA technology to other growers but Defendant denies that any shares in OFA or other ownership interest was granted to anyone. Once Alder Aqua invested in VBF, it purchased the patents for the opposing flow technology and there was no use for the OFA entity and it was closed.  Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 70:** Admit that there were complaints about the smell of VBF's fish before Norman McCowan started at VBF.

**ANSWER:  Defendant objects to this Request as vague and incomprehensible because it does not identify who raised this complaint, to whom, where, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, denied.**

**REQUEST NO. 71:** Admit that VBF never implemented software and hardware tools that allowed for integration of its operations.

**ANSWER:   Defendant objects this Request as vague to the extent that the terms "software and hardware tools" and "integration of operations" are not sufficiently defined. Subject to that objection and without further clarification, denied.  Answering further, Defendant states VBF was utilizing Aqua Manager and NetSuite to manage and integrate operations.**

**REQUEST NO. 72:** Admit that VBF never had an operational research & development center.

**ANSWER: Admit.**

**REQUEST NO. 73:** Admit that VBF never produced its own fish feed during your tenure at VBF.

**ANSWER: Admit.**

Defendant's Responses to Request for Admission- James Rea
1414686v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- James Rea

Page 14

App. 062

**REQUEST NO. 74:** Admit that VBF never partnered with Iowa State University during your tenure at VBF.

**ANSWER:** Defendant objects this Request as vague to the extent that the term "partnered with" is not sufficiently defined. Subject to that objection and without further clarification, admitted. Answering further, Defendant states that VBF had engaged a group of advisors, including staff from Iowa State University to assess collaborative research opportunities but after Alder Aqua's investment, Dr. Happel specifically instructed Defendants not to share information or otherwise collaborate with any universities.

**REQUEST NO. 75:** Admit that at least one of the Defendants projected VBF's annual production from the Urban Farm to be at least 8,000,000 pounds/year.

**ANSWER:** Defendant objects to this Request as vague and incomprehensible because it does not identify who made this projection, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, Defendant admits in 2017, based on Defendants' belief that using larger fry and improving water quality and dissolved $O_2$ levels and with the addition of barns 6 and 7, VBF's annual production from the Urban Farm was projected to be 8,000,000 pounds per year. Defendants provided updates as to this projection at subsequent Board of Director meetings. Defendant denies the remaining allegations of this Request

**REQUEST NO. 76:** Admit that VBF's total production from January through October 2015 was less than 200,000 pounds.

**ANSWER:** Defendant states that he has conducted a reasonable inquiry and despite such inquiry, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.

**REQUEST NO. 77:** Admit that there was never a market demand for 15 million pounds of Barramundi in the United States.

**ANSWER:** Defendant states that he has conducted a reasonable inquiry and despite such inquiry, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.

Defendant's Responses to Request for Admission- James Rea                                                                Page 15
1414686v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- James Rea

App. 063

**REQUEST NO. 78:** Admit that VBF never produced 4.8 million pounds of fish in any given year during your tenure at VBF.

**ANSWER:** Defendant states that he has conducted a reasonable inquiry and despite such inquiry, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.

**REQUEST NO. 79:** Admit that Defendants represented in October 2015 that VBF was valued at $32.5 million.

**ANSWER:** Defendant objects to this Request as vague to the extent that the term "value" is undefined and does not constitute a statement of fact, but a statement of opinion or judgment. Defendant further objects to this Request as vague and incomprehensible because it does not identify who made this representation, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to these objections and without further clarification, Defendant admits in investment marketing materials provided to prospective investors, Defendants projected VBF's value at $32.5 million.

**REQUEST NO. 80:** Admit that at least one of the Defendants provided data for the following documents exhibited to VBF's First Set of Interrogatories to Defendant Keith Driver (answer each sub-part separately):

   a. "Executive Summary" and "Marketing Deck" attached as **Exhibit 1.**
   b. November 1, 2014 PowerPoint attached as **Exhibit 2**.
   c. the November 2014-April 2015 Opposing Flows Tank System Performance Data PowerPoint, attached as **Exhibit 3**.

**ANSWER:  Admitted as to parts a, b and c.**

**REQUEST NO. 81:** Admit that there were no designated growers for the alleged VBF Grower Model as of December 31, 2016.

**ANSWER:  Denied.**

**REQUEST NO. 82:** Admit that VBF purchased U.S. Patent 6,065,430 and U.S. Patent Application 14/289,623 for $2.75 million.

**ANSWER:   Defendant objects to this Request as it does not identify any time period. Subject to this objection, Defendant admits and after completing its due diligence on VBF, Alder Aqua decided to purchase the patents as part of its investment. as part of**

Defendant's Responses to Request for Admission- James Rea                                              Page 16
1414686v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- James Rea

App. 064

Alder Aqua's investment. Amstar Funds thus provided a bridge loan for VBF to purchase US Patent 6,065,430 and U.S. Patent Application 14/289,623 from Rick Sheriff for $2.75 million.  Defendant denies the remaining allegations of this Request.

**REQUEST NO. 83:** Admit that U.S. Patent 6,065,430 expired on October 10, 2017.

**ANSWER: Defendant states that he has conducted a reasonable inquiry and despite such inquiry, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 84:** Admit that one or more Defendants provided information to one or more people from Fisheries Technology Associates to complete that organization's "Technical Assessment of Barramundi Production at VeroBlue Farms with a Focus on Iowa's First: A Due Diligence Assessment Consultation Report" dated July 2, 2015.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not identify who made this representation, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to these objections and without further clarification, Keith Driver provided information to Bill Manci at Fisheries Technology Associates to complete the identified Assessment in 2015 as part of the due diligence conducted by Generation Investment Management in preparation for its debt commitment to VBF.**

**REQUEST NO. 85:** Admit that you have communicated with counsel ("Bankruptcy Counsel") in VBF's pending bankruptcy case, Case No. 18-01297 *In re: VeroBlue Farms USA, Inc., et al.* pending in the Northern District of Iowa ("Bankruptcy").

**ANSWER: Defendant objects to this Request as vague and incomprehensible as there are over 5 sets of counsel who have appeared in the Bankruptcy.  Without further clarification and identification of which "Bankruptcy Counsel" is targeted in this Request, Defendant cannot admit to the truth or falsity of this Request, and this request may seek disclosure of communications that are subject to attorney-client privilege and/or common interest privilege.  Subject to these objections, Defendant can neither admit nor deny this Request.**

**REQUEST NO. 86:** Admit that you or one of your representatives has discussed dismissal of this lawsuit with Bankruptcy Counsel.

**ANSWER: Defendant objects to this Request as vague and incomprehensible as there are over 5 sets of counsel who have appeared in the Bankruptcy.  Without further clarification and identification of which "Bankruptcy Counsel" is targeted in this Request, Defendant cannot admit to the truth or falsity of this Request and this request may seek disclosure of communications that are subject to attorney-client privilege and/or common**

Defendant's Responses to Request for Admission- James Rea                                    Page 17
1414686v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- James Rea

App. 065

interest privilege.  Subject to these objections, Defendant can neither admit nor deny this Request.

**REQUEST NO. 87:** Admit that one or more Defendants directly or through counsel requested that the unsecured creditors committee demand that VBF dismiss this lawsuit against the Defendants.

**ANSWER:**  Defendant objects to this Request on the grounds that it seeks communications subject to attorney-client and/or common interest privilege. Subject to this objection, Defendant can neither admit nor deny this Request.

**REQUEST NO. 88:** Admit that you have provided information about Alder to Bankruptcy Counsel.

**ANSWER:** Defendant objects to this Request as vague and incomprehensible as there are over 5 sets of counsel who have appeared in the Bankruptcy.  Without further clarification and identification of which "Bankruptcy Counsel" is targeted in these Request, Defendant cannot admit to the truth or falsity of this Request, and this request may seek communications that are subject to attorney-client privilege and/or common interest privilege.  Subject to these objections, Defendant can neither admit nor deny this Request.

**REQUEST NO. 89:** Admit that one or more Defendants, directly or through counsel, have communicated with (a) Phillip Sheets; (b) Thomas Fawkes and/or Goldstein & McClintock LLP; (c) Aaron Hammer and/or Horwood Marcus & Berk; or (d) any member of the Ad Hoc Committee relating to the Bankruptcy.

**ANSWER:**  Defendant objects to this Request on the grounds that it seeks communications subject to attorney-client and/or common interest privilege. Subject to this objection, Defendant can neither admit nor deny this Request.

**REQUEST NO. 90:** Admit that one or more Defendants directly or through counsel reviewed and/or contributed to the December 19, 2018 letter signed by Thomas Fawkes relating to the Bankruptcy, attached as **Exhibit 4**.

**ANSWER:**  Defendant objects to this Request on the grounds that it seeks communications subject to attorney-client and/or common interest privilege. Subject to this objection, Defendant can neither admit nor deny this Request.

**REQUEST NO. 91:** Admit that Wulf signed a Warrant to Purchase Series A Preferred Shares of VeroBlue Farms USA, Inc. dated July 7, 2016 between VeroBlue Farms USA, Inc. and Alder.

Defendant's Responses to Request for Admission- James Rea                                                      Page 18
1414686v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- James Rea

App. 066

**ANSWER: Admit.**

**REQUEST NO. 92:** Admit that James Rea signed a Secretary's Certificate dated July 7, 2016 between VeroBlue Farms, Inc. and Alder.

**ANSWER: Defendant states that he has conducted a reasonable inquiry and despite such inquiry without access to VBF's books and records, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 93:** Admit that the proposal to restructure VBF's Canadian affiliate was not executed.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not identify what proposal it is referring to, who made the proposal, to whom, and when it was proposed and thus, Defendant cannot know what facts are being admitted or denied. Subject to these objections and without further clarification, Defendant lacks sufficient knowledge or information to form a belief as to the truth or falsity of this request and it is therefore, denied.**

**REQUEST NO. 94:** Admit that one or more Defendants approved Amstar Group, LLC ("Amstar") and Alder's debt and equity infusions instead of a capital infusion from Generation Investment Management.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not specify any time period for the described debt and equity infusions and thus, Defendant cannot know what facts are being admitted or denied. Subject to these objections and without further clarification, denied. Answering further, Defendant states that when Alder Aqua offered its equity infusion into VBF in July 2016, Alder Aqua mandated that Amstar's debt financing be part of this infusion and Alder Aqua refused to allow Generation Investment Management to issue debt or invest equity VBF.**

**REQUEST NO. 95:** Admit that Alder was not involved in VBF until July 2016.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because the term "involved in VBF" is undefined and thus, Defendant cannot know what facts are being admitted or denied. Subject to these objections and without further clarification, denied. Alder Aqua was engaged in due diligence surrounding its investment in VBF prior to July 2016.**

Defendant's Responses to Request for Admission- James Rea                                    Page 19
1414686v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- James Rea

App. 067

**REQUEST NO. 96:** Admit that between July 2016 and August 2017, only two of seven directors were appointed by Alder.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not identify which entity's directors were appointed by Alder. Subject to this objection, Defendant states between July 2016 and August 2017, two of VBF's directors were appointed by Alder, but that Alder also controlled the board of Amstar, VBF's sole lender.  Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 97:** Admit that between August 2017 and October 24, 2017, only two of seven directors were appointed by Alder.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not identify which entity's directors were appointed by Alder. Subject to this objection, Defendant states that between August 2017 and October 24, 2017, two of VBF's directors were appointed by Alder, but that Alder also controlled the board of Amstar, VBF's sole lender. Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 98:** Admit that Terry Lyons resigned from the Board of Directors in or before March 2018 and was never replaced.

**ANSWER:  Defendant states that he has conducted a reasonable inquiry and despite such inquiry, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 99:** Admit that Alder invested at least $50 million in VBF during your tenure at VBF.

**ANSWER: Defendant states that he has conducted a reasonable inquiry and despite such inquiry, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 100:** Admit that no VBF investor has lost more money than Alder during your tenure at VBF.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because the term "lost more money" is undefined and thus, Defendant cannot know what facts are being admitted or denied. Subject to these objections and without further**

Defendant's Responses to Request for Admission- James Rea                                          Page 20
1414686v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- James Rea

App. 068

clarification, denied.   Defendant has no knowledge or information as to what Alder Aqua's actual gains or losses on its investment in VBF may be.

**REQUEST NO. 101:** Admit that by July 7, 2016, one or more Defendants knew that VBF would pursue the corporate farm model over the Grower Model.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because the term "corporate farm model" is undefined and thus, Defendant cannot know what facts are being admitted or denied. Subject to these objections and without further clarification, denied.**

**REQUEST NO. 102:** Admit that VBF was in default of its credit facility with Amstar in 2016.

**ANSWER: Defendant objects to this Request as the time period of the entire calendar year of 2016 is vague and the term "default" is undefined and thus, Defendant cannot know what facts are being admitted or denied.   Subject to these objections, Defendant denies that Amstar declared VBF to be default in 2016. Answering further, Defendant states that based on negative EBITDA covenants in the Amstar credit facilities, VBF would have been in default the first day, but that Amstar directed, controlled and approved all payments from the facility, including debt payment.**

**REQUEST NO. 103:** Admit that Amstar did not declare VBF's default until 2017.

**ANSWER: Defendant admits that Amstar sent VBF a notice of default in late 2017. Defendant denies the remaining allegations of this request.**

**REQUEST NO. 104:** Admit that Alder introduced ING Capital LLC ("ING") to VBF.

**ANSWER:  Defendant admits Alder introduced ING Europe to VBF and that ING Europe was affiliated with ING Capital LLC.  Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 105:** Admit that VBF would not have been able to satisfy the covenants under an ING revolving credit facility discussed with VBF.

**ANSWER: Defendant objects to this Request to the extent it requests admission of a hypothetical situation and not a fact. Defendant further objects to this Request to the extent it does not identify any time period and thus, Defendant cannot know what facts are being admitted or denied. Subject to these objections and without further clarification, denied.**

Defendant's Responses to Request for Admission- James Rea                                                                Page 21
1414686v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- James Rea

App. 069

**REQUEST NO. 106:** Admit that one or more Defendants provided information to PriceWaterhouse for a financial audit of VBF.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not specify any time period for the described audit and thus, Defendant cannot know what facts are being admitted or denied. Subject to these objections and without further clarification, Defendant admits that they provided information about VBF to Pricewaterhouse Coopers for audits of VBF in 2016 and 2017.**

**REQUEST NO. 107:** Admit that Jackson Walker LLP was VBF's corporate counsel from some time in 2014 to sometime in 2017.

**ANSWER: Defendant admits that from 2014 until his termination from VBF in November 2017, Jackson Walker LLP was VBF's corporate counsel. Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in this Request and therefore, denies them.**

**REQUEST NO. 108:** Admit that Jackson Walker LLP currently continues to represent at least one of the Defendants or at least one of the Defendants' Affiliated Entities.

**ANSWER: Denied.**

**REQUEST NO. 109:** Admit that FishDish LLC did not appoint a member to VBF's Board of Directors after Ken Lockard's departure as a director in 2018.

**ANSWER: Defendant states that he has conducted a reasonable inquiry and despite such inquiry, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

Defendant's Responses to Request for Admission- James Rea                                    Page 22
1414686v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- James Rea

App. 070

Respectfully submitted,

Underwood Perkins, P.C.

By:      /s/ Kimberly D. Annello
         Kimberly D. Annello
         State Bar No. 24093704
         Two Lincoln Centre
         5420 LBJ Freeway, Suite 1900
         Dallas, Texas 75240
         Telephone:    (972) 661-5114
         Facsimile:    (972) 661-5691
         Email: kannello@uplawtx.com

         Attorney for Defendants

## Certificate of Service

I hereby certify that a true and correct copy of the above and foregoing instrument has been served upon all counsel of record, as listed below, on this 3rd day of April 2019 via ECF and/or E-Mail:

Robert H. Lang
Renato Mariotti
Caroline Pritikin
Eileen Boyle Perich
Thompson Coburn LLP
55 East Monroe, 37th Floor
Chicago, IL 60603
rlang@thompsoncoburn.com
rmariotti@thompsoncoburn.com
cpritikin@thompsoncoburn.com
eboyleperich@thompsoncoburn.com

Matthew E. Laughlin AT0004515
Holly M. Logan AT0004710
Katelynn T. McCollough  AT0013443
DAVIS, BROWN, KOEHN, SHORS &
ROBERTS, P.C.
215 10th Street, Suite 1300
Des Moines, Iowa  50309
mattlaughlin@davisbrownlaw.com
hollylogan@davisbrownlaw.com
katelynnmccollough@davisbrown.com

                              /s/ Kimberly D. Annello
                              Kimberly D. Annello

Defendant's Responses to Request for Admission- James Rea
1414686v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- James Rea                                   Page 23

App. 071

EXHIBIT D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| VEROBLUE FARMS USA, INC., | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     Case No. 3:19-CV-00764-L |
| | ) |
| LESLIE A. WULF, BRUCE A. HALL, | ) |
| JAMES REA, JOHN E. REA, AND | ) |
| KEITH DRIVER, | ) |
| Defendants. | ) |

### DEFENDANT TED REA'S RESPONSES TO PLAINTIFF FIRST REQUEST FOR ADMISSION OF FACT

Defendant, JOHN E. (TED) REA ("Defendant" or "T. Rea"), hereby responds to

Plaintiff's First Request for Admission of Fact as follows:

### RESPONSES TO REQUEST FOR ADMISSION

**REQUEST NO. 1**:  Admit that one or more Defendants have an ownership interest and/or control of BAJJER LLC.

    **ANSWER:**   **Admit.**

**REQUEST NO. 2**:  Admit that one or more Defendants caused VBF to transfer 1,250,000 shares of VeroBlue Farms, Inc. to BAJJER LLC for $1.25.

    **ANSWER:**   **Denied.   Answering further, Defendant states Bajjer, LLC holds 1,250,000 shares of VBF in trust for Kelson Capital Inc. pursuant to a written agreement between them, and that this fact was discussed in an independent due diligence report done by Pricewaterhouse Coopers for Jens Haarkoetter of Alder Aqua on or about June 20, 2016.**

**REQUEST NO. 3**: Admit that one or more Defendants have an ownership interest and/or assert control in BAJJER II, LLC.

    **ANSWER:  Admit.**

Defendant's Responses to Request for Admission- John E. Rea          Page 1
1414682v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- John E. Rea

App. 073

**REQUEST NO. 4**: Admit that American Growth Funding, LLC ("AGF") loaned approximately $78,000 to BAJJER II, LLC which grew to $101,000 with interest.

**ANSWER:    Admit.**

**REQUEST NO. 5:**  Admit that AGF loaned BAJJER approximately $200,000.

**ANSWER**:  **Defendant admits that AGF loaned Bajjer $200,000 in or about June 30, 2015, but states that the purpose of this loan was to pass through funds for operational costs of VBF. Defendant denies the remaining allegations of this request**.

**REQUEST NO. 6:**  Admit that BAJJER transferred AGF's loan of approximately $200,000 to VBF.

**ANSWER:  Defendant admits the $200,000 that AGF loaned Bajjer was transferred to VBF on July 1, 2015 because VBF needed the funds for operations, but AGF would only loan the funds to Bajjer and not directly to VBF.  Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 7:**   Admit that on or about July 8, 2016, VBF paid AGF approximately $375,000.

**ANSWER:    Defendant admits that VBF paid AGF approximately $375,000 in July 2016, pursuant to an agreement among Alder Aqua and Alder Aqua's counsel, Davis Graham & Stubbs ("DGS"), and AGF to repay the loan from AGF to Bajjer directly from VBF to AGF.  This repayment and the payment of 26 other bridge loans was disclosed and approved by Alder Aqua and DGS in a sources and uses of funds statement provided to them on July 8, 2016. Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 8:**  Admit that between December 1, 2015 and June 30, 2016, Gregg Sedun and/or Alcaron Capital Corporation loaned VBF approximately $250,000.

**ANSWER:  Defendant admits that Alcaron Capital Corporation loaned VFB approximately $250,000. Defendant denies remaining allegations of this request.**

**REQUEST NO. 9:** Admit that on or about July 12, 2016, one or more Defendants cause VBF to pay Alcaron Capital Corporation approximately $326,056 in repayment for the loans described in Request No. 8.

**ANSWER:  Defendant admits that VBF paid Alcaron $326,056 in accordance with the sources and uses of funds statement provided to Alder Aqua and DGS on or about July 8, 2016.  Defendant denies the remaining allegations of this Request.**

Defendant's Responses to Request for Admission- John E. Rea                                      Page 2
1414682v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- John E. Rea

App. 074

**REQUEST NO. 10:** Admit that on or about July 14, 2016, Gregg Sedun loaned Wulf $225,000.

    **ANSWER:**   **Admit.**

**REQUEST NO. 11:**   Admit that one or more Defendants received twice their monthly compensation from VBF in July 2016.

    **ANSWER:**   **Denied.**  **Defendant was compensated by VBF pursuant to a management consulting agreement until Alder Aqua's investment in July 2016. The consulting agreement paid Defendant in arrears. Upon Alder Aqua's investment, Defendant became an employee of VBF. Thus, upon closing of Alder Aqua's investment, Defendant was paid for his final month of consulting services (June 2016). This was disclosed to and approved by Alder Aqua and DGS.  Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 12:** Admit that one or more Defendants directed or caused VBF to employ Christine Gagne during your tenure to VBF.

    **ANSWER:**  **Denied.  Answering further, Defendant states Christine Gagne was an independent contractor, not an employee of VBF.**

**REQUEST NO. 13:**   Admit that one or more Defendants directed or caused VBF to pay Christine Gagne under the name "Ronnie O'Brien" during your tenure at VBF.

    **ANSWER:**   **Admitted that Christine Gagne was paid as an independent contractor, under the name "Ronnie O'Brien."  Defendant denies remaining allegations of this Request.**

**REQUEST NO. 14:** Admit that, during at least some of the time she was on VBF's payroll, Christine Gagne was a Canadian national who was not authorized to work in the United States.

    **ANSWER:**   **Denied.  Christine Gagne was an independent contractor, and not on VBF's payroll.**

**REQUEST NO. 15:** Admit that one or more Defendants caused VBF to buy six tractor-trailers.

    **ANSWER:**  **Denied.  The purchase of six tractor trailers was presented to, approved by, and directed by VBF's Board of Directors in two separate board resolutions.**

**REQUEST NO. 16:** Admit that VBF's selling of live fish did not require the transportation of fish in all of the tractor-trailers.

Defendant's Responses to Request for Admission- John E. Rea         Page 3
1414682v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- John E. Rea

App. 075

**ANSWER:    Defendant objects to this Request as vague, nonsensical and not calling for the admission of a fact, but a statement of opinion or judgment.  Subject to that objection, denied.**

**REQUEST NO. 17:** Admit that VBF could not sell fish as quickly as one or more Defendants represented to Cardinal Farms that VBF could sell fish.

**ANSWER:    Defendants object to this Request as vague and incomprehensible because it does not identify what representation was made, by whom, to whom, and when and thus, Defendants cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, denied**.

**REQUEST NO. 18:** Admit that one or more of the Defendants knew by July 2016 that the Grower Model would not be implemented and/or would not be successful if implemented.

**ANSWER:    Denied. Defendants planned to pursue a Grower Model until Alder Aqua representatives directed otherwise**.

**REQUEST NO. 19:** Admit that at least one of the Defendants requested or directed that one or more employees of VBF remove the mortality tally sheets from one or more tanks during your tenure at VBF.

**ANSWER:    Denied**.

**REQUEST NO. 20:** Admit that at least one of the Defendants misrepresented information relating to VBF's FCR to potential VBF investors and/or lenders.

**ANSWER:    Denied.**

**REQUEST NO. 21:** Admit that at least one of the Defendants sought to keep visitors from seeing VBF's grow tanks on at least one occasion.

**ANSWER:    Defendant objects to this Request as vague and incomprehensible because it does not identify any time period and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection, Defendant states that Jens Haarkoetter, a VBF Director and representative of both Amstar Funds and Alder Aqua, and Dr. Otto Happel, beneficial owner of both Amstar and Alder Aqua, instructed all VBF personnel, including Defendant, to limit visitation to the farms and to prohibit photographs in order to prevent competitors from seeing and knowing VBF's patented tank system, growing practices and other features. Additionally, Defendant admits that when fish are being stocked into tanks for the first time, it is common industry practice to limit visitation for bio-security purposes. Defendant denies the remainder of this Request.**

Defendant's Responses to Request for Admission- John E. Rea                                          Page 4
1414682v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- John E. Rea

App. 076

**REQUEST NO. 22:** Admit that at least one of the Defendant's represented an FCR of 1:1 during a grow-out phase for a lot or batch during your tenure at VBF.

 **ANSWER:**  **Defendant objects to this Request as vague and incomprehensible because it does not identify what representation was made, by whom, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, denied.**

**REQUEST NO. 23:** Admit that VBF's FCR was never 1:1 during a grow-out phase for any lot or batch of fish during your tenure at VBF.

 **ANSWER:**  **Denied.**

**REQUEST NO. 24:** Admit that at least one of the Defendants represented an FCR at or near 1.038:1 during a grow-out phase for a lot or batch during your tenure at VBF.

 **ANSWER:**  **Defendant objects to this Request as vague and incomprehensible because it does not identify what representation was made, by whom, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, denied.**

**REQUEST NO. 25:** Admit that VBF's FCR was never at or near 1.038:1 during a grow-out phase for any lot or batch of fish during your tenure at VBF.

 **ANSWER:**  **Denied.**

**REQUEST NO. 26:** Admit that at least one of the Defendants represented an FCR of at or near 1.04 during a grow-out phase for a lot or batch during your tenure at VBF.

 **ANSWER:**  **Defendant objects to this Request as vague and incomprehensible because it does not identify what representation was made, by whom, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, denied.**

**REQUEST NO. 27:** Admit that VBF's FCR was never at or near 1.04 during a grow-out phase for any lot or batch during your tenure at VBF.

 **ANSWER:**  **Denied.**

Defendant's Responses to Request for Admission- John E. Rea     Page 5
1414682v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- John E. Rea

App. 077

**REQUEST NO. 28:** Admit that at least one of the Defendants concealed information from non-Defendant VBF directors relating to the mortality rates on at least one occasion during your tenure at VBF.

**ANSWER:   Denied.   Answering further, Defendant did not provide data on mortality rates to VBF directors; Katie Olson, VBF employee, prepared a report that was circulated to the Board of Directors and to Amstar, and Defendant understood that Amstar prepared its own version of the report to Alder Aqua on a monthly basis.**

**REQUEST NO. 29:** Admit that VBF's actual mortality rate was higher than at least one of the Defendants represented during your tenure at VBF.

**ANSWER:   Defendant objects to this Request as vague and incomprehensible because it does not identify what representation was made, by whom, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, denied.**

**REQUEST NO. 30:** Admit that Ted Rea knew of that thousands of fish had recently died at the Saint Louis farm at the time of VBF's Board of Directors meeting in September 2017.

**ANSWER:   Defendant admits Ted Rea knew that certain fish had died at VBF's Saint Louis farm before September 2017 and admits that Mr. Rea discussed this fact with the directors during or within a few days of the September 2017 Board of Directors meeting. Defendant denies the remaining allegations of this request.**

**REQUEST NO. 31:** Admit that the Defendants failed to implement a Fry Quarantine facility even after an extreme death loss event.

**ANSWER:  Denied.  At the time of Defendant's termination from VBF, a portion of VBF's Blairsburg farm was being repurposed for a Fry Quarantine system.**

**REQUEST NO. 32:** Admit that Defendants did not report the extent of all mortality events to the VBF Board of Directors during your tenure at VBF.

**ANSWER:  Denied.  Monthly reports were provided to the VBF Board of Directors during Defendant's tenure as an officer.**

**REQUEST NO. 33:**  Admit that at least one of the Defendants, on at least one occasion, misrepresented death loss bio masses in the Monthly Management Reports issued to the Board of Directors.

**ANSWER:  Denied.**

Defendant's Responses to Request for Admission- John E. Rea                                             Page 6
1414682v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- John E. Rea

App. 078

**REQUEST NO. 34:** Admit that in the fish industry mortality rates are reported cumulatively by adding together the number of fish per batch that die per month.

**ANSWER:  Denied. The industry uses a bio-mass metric for reporting mortality rates.**

**REQUEST NO. 35:** Admit that at least one of the Defendants reported mortality rates non-cumulatively to the VBF Board of Directors during your tenure at VBF.

**ANSWER:  Denied.**

**REQUEST NO. 36:** Admit that at least one of the Defendants concealed information relating to the fish stocking density during your tenure VBF.

**ANSWER:  Denied.**

**REQUEST NO. 37:** Admit that at least one of the Defendants misrepresented information relating to the fish stocking density to non-Defendant VBF Directors on at least one occasion during your tenure at VBF.

**ANSWER:  Denied.**

**REQUEST NO. 38:** Admit that at least one of the Defendants represented that the VBF tanks could safely hold .75 pounds/gallon during your tenure at VBF.

**ANSWER:  Defendant objects to this Request as vague and incomprehensible because it does not identify who made this representation, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to these objections and without further clarification, Defendant admits in 2016 and 2017, Defendants presented to VBF's Board their belief that upon improved water quality and dissolved $O_2$ levels, they expected VBF tanks could hold .75 pounds of fish per gallon of water.  Defendants were conducting trials of this hypothesis at the Buckeye facility and provided updates as to their progress in testing this hypothesis at subsequent Board of Director meetings.  Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 39:** Admit that at least one of the Defendants represented a VBF fish-stocking plan at 15,000 fingerlings per tank on at least one occasion to third parties during your tenure at VBF.

**ANSWER:  Defendant objects to this Request as vague and incomprehensible because it does not identify who made this representation, to whom, and when and thus,**

Defendant's Responses to Request for Admission- John E. Rea                                                    Page 7
1414682v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- John E. Rea

App. 079

**Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, Defendant admits in 2016 and 2017, Defendants presented to the VBF Board and Dr. Happel of Alder Aqua their belief that upon improved water quality and dissolved O₂ levels, they expected VBF tanks could hold 15,000 fingerlings per tank.  Defendants provided updates as to their progress in testing this hypothesis at subsequent Board of Director meetings. Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 40:** Admit that at least one of the Defendants represented to third parties on at least one occasion that VBF stocked 16,000 fish per six tank pod during your tenure at VBF.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not identify who made this representation, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, Defendant admits in 2016 and 2017, Defendants presented to the VBF Board and Dr. Happel of Alder Aqua their belief that upon improved water quality and dissolved O₂ levels and stocking tanks with larger fry, they expected VBF tanks could hold 16,000 fish per six tank pods.  Defendants provided updates as to their progress in testing this hypothesis at subsequent Board of Director meetings. Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 41:** Admit that at least one of the Defendants provided to Alder a document noting a stocking rate of 16,000 fingerlings per pod every two months with a 1:1 pound of fish per gallon of water stocking density during your tenure at VBF.

**ANSWER:  Defendant objects to this Request as vague and incomprehensible because it does not identify who made this representation and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, Defendant admits in 2016 and 2017, Defendants presented to the VBF Board and Dr. Happel of Alder Aqua their belief that upon improved water quality and dissolved O₂ levels and stocking tanks with larger fry, they expected VBF tanks could hold 16,000 fingerlings per pod.  Defendants provided updates as to their progress in testing this hypothesis at subsequent Board of Director meetings. Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 42:** Admit that Driver informed a potential investor in early 2016 that VBF could stock 16,000 fingerlings per tank.

**ANSWER:   Defendant objects to this Request as vague and incomprehensible because it does not identify when this representation was made or to whom, and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, denied.**

Defendant's Responses to Request for Admission- John E. Rea                                                                Page 8
1414682v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- John E. Rea

App. 080

**REQUEST NO. 43:** Admit that at least one of the Defendants represented that VBF successfully stocked 16,000 fish/tank for an additional $11 million in EBITDA during your tenure at VBF.

**ANSWER:** **Defendant objects to this Request as vague and incomprehensible because it does not identify who made this representation, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, denied.**

**REQUEST NO. 44:** Admit that, at most, during your tenure at VBF, no more than four of 17 six-tank pods were stocked with 16,000 or more fish.

**ANSWER:** **Defendant states that he has conducted a reasonable inquiry and despite such inquiry, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 45:** Admit that VBF never met its stocking density goals during your tenure at VBF.

**ANSWER: Denied.**

**REQUEST NO. 46:** Admit that the mortality rate on the four batches of six tank pods that were stocked with 16,000 or more fish was in reality 19% or higher during your tenure at VBF.

**ANSWER: Defendant states that he has conducted a reasonable inquiry and despite such inquiry, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 47:** Admit that at least one of the Defendants during your tenure at VBF represented that VBF's tanks could safely hold more barramundi than such tanks could hold in reality.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not identify who made this representation, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, denied.**

**REQUEST NO. 48:** Admit that Sheriff represented to at least one of the Defendants that his opposing flow system could safely handle 7,500 pounds per tank.

Defendant's Responses to Request for Admission- John E. Rea                                          Page 9
1414682v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- John E. Rea

App. 081

**ANSWER:   Admit. Answering further, Defendant states that Mr. Sheriff represented to VBF in 2015 and 2016 that his opposing flow system could handle 10,000 pounds of fish per tank.**

**REQUEST NO. 49:** Admit that during your tenure at VBF, at least one of the Defendants represented that each six-tank pod will produce approximately 120,000 pounds annually.

**ANSWER:   Defendant objects to this Request as vague and incomprehensible because it does not identify who made this representation, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, Defendant admits in 2016 and 2017, Defendants presented to the VBF Board and Dr. Happel their belief that upon improved water quality and dissolved $O_2$ levels and with stocking larger fry, they hoped each six-pod tank could produce 120,000 pounds of fish annually.  Defendants provided updates as to their progress in testing this hypothesis at subsequent Board of Director meetings. Defendant denies the remaining allegations of this Request**

**REQUEST NO. 50:** Admit that VBF's projected EBITDA was based on its represented tank density and/or fish-stocking plan during your tenure at VBF.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not identify any time period for "projected EBITDA", thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, Defendant admits VBF's projections at the time of Alder Aqua's investment were based on Defendants' belief that upon improved water quality and dissolved $O_2$ levels would increase tank density, stocking density and overall fish production.  Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 51:** Admit that at least one of the Defendants represented that VBF had successfully stocked 1:1 pound of fish per gallon during your tenure at VBF.

**ANSWER:   Defendant objects to this Request as vague and incomprehensible because it does not identify who made this representation, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, Defendant admits that VBF represented that it had a test tank that had successfully stocked 1:1 pound of fish per gallon.  Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 52:** Admit that the VBF tanks did not actually have a stocking rate of 1:1 pound of fish per gallon during your tenure at VBF.

Defendant's Responses to Request for Admission- John E. Rea                                    Page 10
1414682v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- John E. Rea

App. 082

**ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not identify any time period for "stocking rate", thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, denied.**

**REQUEST NO. 53:** Admit that Defendants represented to investors or potential investors that opposing flows technology was previously successful and/or that it would very likely be successful when implemented at VBF.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not identify who made this representation, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, Defendant admits, based on information provided to him and other Defendants by Rick Sheriff and Mark Nelson, he believed the opposing flows technology had been and would be successful when implemented, although there were risks associated with implementing that technology in a larger tank system. Defendant denies the remaining allegation of this Request.**

**REQUEST NO. 54:** Admit that opposing flows technology was not successful at VBF during your tenure at VBF.

**ANSWER: Defendant objects to this Request as vague to the extent that the term "successful" is undefined and does not constitute a statement of fact, but a statement of opinion or judgment. Subject to that objection, denied.**

**REQUEST NO. 55:** Admit that VBF lost millions of dollars in value during your tenure at VBF.

**ANSWER: Defendants object to this Request as vague to the extent that the term "value" is undefined and does not constitute a statement of fact, but a statement of opinion or judgment. Subject to that objection, denied.**

**REQUEST NO. 56:** Admit that you were paid over a $1,000,000 by VBF during your tenure at VBF.

**ANSWER: Defendant objects this Request as vague to the extent that payments are not sufficiently identified. Subject to that objection, with respect to Defendant's tenure as a VBF employee pursuant to his Employment Agreement, denied.**

**REQUEST NO. 57:** Admit that VBF was losing money before Alder invested in VBF.

**ANSWER: Admit.**

Defendant's Responses to Request for Admission- John E. Rea                                   Page 11
1414682v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- John E. Rea

App. 083

**REQUEST NO. 58:** Admit that VBF spent $2 million per month in 2017.

    **ANSWER: Defendant objects to this Request as vague to the extent that the term "spent" is undefined and is subject to multiple interpretations. Subject to that objection, Defendant states that he has conducted a reasonable inquiry and despite such inquiry without access to VBF's books and records, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 59:** Admit that VBF spent approximately $1.5 million per month in 2017.

    **ANSWER: Defendant objects to this Request as vague to the extent that the term "spent" is undefined and is subject to multiple interpretations. Subject to that objection, Defendant states that he has conducted a reasonable inquiry and despite such inquiry without access to VBF's books and records, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 60:** Admit that VBF spent approximately $1 million per month in 2017.

    **ANSWER: Defendant objects to this Request as vague to the extent that the term "spent" is undefined and is subject to multiple interpretations. Subject to that objection, Defendant states that he has conducted a reasonable inquiry and despite such inquiry without access to VBF's books and records, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 61:** Admit that VBF spent approximately $2 million per month in 2016.

    **ANSWER: Defendant objects to this Request as vague to the extent that the term "spent" is undefined and is subject to multiple interpretations. Subject to that objection, Defendant states that he has conducted a reasonable inquiry and despite such inquiry without access to VBF's books and records, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 62:** Admit that VBF spent approximately $1.5 million per month in 2016.

    **ANSWER:  Defendant objects to this Request as vague to the extent that the term "spent" is undefined and is subject to multiple interpretations. Subject to that objection, Defendant states that he has conducted a reasonable inquiry and despite such inquiry without access to VBF's books and records, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 63:** Admit that VBF spent approximately $1 million per month in 2016.

Defendant's Responses to Request for Admission- John E. Rea                                                            Page 12
1414682v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- John E. Rea

App. 084

**ANSWER:** Defendant objects to this Request as vague to the extent that the term "spent" is undefined and is subject to multiple interpretations. Subject to that objection, Defendant states that he has conducted a reasonable inquiry and despite such inquiry without access to VBF's books and records, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.

**REQUEST NO. 64:** Admit that VBF spent approximately $2 million per month in 2015.

**ANSWER:** Defendant objects to this Request as vague to the extent that the term "spent" is undefined and is subject to multiple interpretations. Subject to that objection, Defendant states that he has conducted a reasonable inquiry and despite such inquiry without access to VBF's books and records, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.

**REQUEST NO. 65:** Admit that VBF spent approximately $1.5 million per month in 2015.

**ANSWER:** Defendant objects to this Request as vague to the extent that the term "spent" is undefined and is subject to multiple interpretations. Subject to that objection, Defendant states that he has conducted a reasonable inquiry and despite such inquiry without access to VBF's books and records, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.

**REQUEST NO. 66:** Admit that VBF spent approximately $1 million per month in 2015.

**ANSWER:** Defendant objects to this Request as vague to the extent that the term "spent" is undefined and is subject to multiple interpretations. Subject to that objection, Defendant states that he has conducted a reasonable inquiry and despite such inquiry without access to VBF's books and records, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.

**REQUEST NO. 67:** Admit that at least one of the Defendants represented that Rick Sheriff was VBF's Chief Technology Officer during your tenure at VBF.

**ANSWER:** Defendant objects to this Request as vague and incomprehensible because it does not identify who made this representation, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, Defendant admits that Rick Sherriff signed a contract with VBF in July 2016, to act as its Chief Technology Officer, which contract was approved by the Board of Directors and specifically by Alder Aqua.

**REQUEST NO. 68:** Admit that no copyrights were issued to VBF during your tenure at VBF.

Defendant's Responses to Request for Admission- John E. Rea
1414682v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- John E. Rea

Page 13

App. 085

**ANSWER:   Defendant states that he has conducted a reasonable inquiry and despite such inquiry, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 69:** Admit that at least one of the Defendants had some ownership interest in Opposing Flows Aquaculture.

**ANSWER: Defendant objects to this Request to the extent it does not define any time period.  Subject to that objection and without further clarification, Defendant admits that Ted Rea, as registered agent, registered Opposing Flows Aquaculture, Inc. in late 2014, which would license the OFA technology to other growers but Defendant denies that any shares in OFA or other ownership interest was granted to anyone. Once Alder Aqua invested in VBF, it purchased the patents for the opposing flow technology and there was no use for the OFA entity and it was closed.  Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 70:** Admit that there were complaints about the smell of VBF's fish before Norman McCowan started at VBF.

**ANSWER:  Defendant objects to this Request as vague and incomprehensible because it does not identify who raised this complaint, to whom, where, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, denied.**

**REQUEST NO. 71:** Admit that VBF never implemented software and hardware tools that allowed for integration of its operations.

**ANSWER:  Defendant objects this Request as vague to the extent that the terms "software and hardware tools" and "integration of operations" are not sufficiently defined. Subject to that objection and without further clarification, denied.  Answering further, Defendant states VBF was utilizing Aqua Manager and NetSuite to manage and integrate operations.**

**REQUEST NO. 72:** Admit that VBF never had an operational research & development center.

**ANSWER: Admit.**

**REQUEST NO. 73:** Admit that VBF never produced its own fish feed during your tenure at VBF.

**ANSWER: Admit.**

Defendant's Responses to Request for Admission- John E. Rea                                                   Page 14
1414682v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- John E. Rea

App. 086

**REQUEST NO. 74:** Admit that VBF never partnered with Iowa State University during your tenure at VBF.

**ANSWER: Defendant objects this Request as vague to the extent that the term "partnered with" is not sufficiently defined. Subject to that objection and without further clarification, admitted. Answering further, Defendant states that VBF had engaged a group of advisors, including staff from Iowa State University to assess collaborative research opportunities but after Alder Aqua's investment, Dr. Happel specifically instructed Defendants not to share information or otherwise collaborate with any universities.**

**REQUEST NO. 75:** Admit that at least one of the Defendants projected VBF's annual production from the Urban Farm to be at least 8,000,000 pounds/year.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not identify who made this projection, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, Defendant admits in 2017, based on Defendants' belief that using larger fry and improving water quality and dissolved $O_2$ levels and with the addition of barns 6 and 7, VBF's annual production from the Urban Farm was projected to be 8,000,000 pounds per year. Defendants provided updates as to this projection at subsequent Board of Director meetings. Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 76:** Admit that VBF's total production from January through October 2015 was less than 200,000 pounds.

**ANSWER: Defendant states that he has conducted a reasonable inquiry and despite such inquiry, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 77:** Admit that there was never a market demand for 15 million pounds of Barramundi in the United States.

**ANSWER: Defendant states that he has conducted a reasonable inquiry and despite such inquiry, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

Defendant's Responses to Request for Admission- John E. Rea                                      Page 15
1414682v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- John E. Rea

App. 087

**REQUEST NO. 78:** Admit that VBF never produced 4.8 million pounds of fish in any given year during your tenure at VBF.

**ANSWER: Defendant states that he has conducted a reasonable inquiry and despite such inquiry, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 79:** Admit that Defendants represented in October 2015 that VBF was valued at $32.5 million.

**ANSWER: Defendant objects to this Request as vague to the extent that the term "value" is undefined and does not constitute a statement of fact, but a statement of opinion or judgment. Defendant further objects to this Request as vague and incomprehensible because it does not identify who made this representation, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to these objections and without further clarification, Defendant admits in investment marketing materials provided to prospective investors, Defendants projected VBF's value at $32.5 million.**

**REQUEST NO. 80:** Admit that at least one of the Defendants provided data for the following documents exhibited to VBF's First Set of Interrogatories to Defendant Keith Driver (answer each sub-part separately):

    a**.** "Executive Summary" and "Marketing Deck" attached as **Exhibit 1.**
    b**.** November 1, 2014 PowerPoint attached as **Exhibit 2**.
    c**.** the November 2014-April 2015 Opposing Flows Tank System Performance Data PowerPoint, attached as **Exhibit 3**.

**ANSWER:  Admitted as to parts a, b and c.**

**REQUEST NO. 81:** Admit that there were no designated growers for the alleged VBF Grower Model as of December 31, 2016.

**ANSWER:  Denied.**

**REQUEST NO. 82:** Admit that VBF purchased U.S. Patent 6,065,430 and U.S. Patent Application 14/289,623 for $2.75 million.

**ANSWER:  Defendant objects to this Request as it does not identify any time period. Subject to this objection, Defendant admits and after completing its due diligence on VBF, Alder Aqua decided to purchase the patents as part of its investment. as part of**

Defendant's Responses to Request for Admission- John E. Rea                         Page 16
1414682v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- John E. Rea

App. 088

Alder Aqua's investment. Amstar Funds thus provided a bridge loan for VBF to purchase US Patent 6,065,430 and U.S. Patent Application 14/289,623 from Rick Sheriff for $2.75 million.  Defendant denies the remaining allegations of this Request.

**REQUEST NO. 83:** Admit that U.S. Patent 6,065,430 expired on October 10, 2017.

 **ANSWER: Defendant states that he has conducted a reasonable inquiry and despite such inquiry, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 84:** Admit that one or more Defendants provided information to one or more people from Fisheries Technology Associates to complete that organization's "Technical Assessment of Barramundi Production at VeroBlue Farms with a Focus on Iowa's First: A Due Diligence Assessment Consultation Report" dated July 2, 2015.

 **ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not identify who made this representation, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to these objections and without further clarification, Keith Driver provided information to Bill Manci at Fisheries Technology Associates to complete the identified Assessment in 2015 as part of the due diligence conducted by Generation Investment Management in preparation for its debt commitment to VBF.**

**REQUEST NO. 85:** Admit that you have communicated with counsel ("Bankruptcy Counsel") in VBF's pending bankruptcy case, Case No. 18-01297 *In re: VeroBlue Farms USA, Inc., et al.* pending in the Northern District of Iowa ("Bankruptcy").

 **ANSWER: Defendant objects to this Request as vague and incomprehensible as there are over 5 sets of counsel who have appeared in the Bankruptcy.  Without further clarification and identification of which "Bankruptcy Counsel" is targeted in this Request, Defendant cannot admit to the truth or falsity of this Request, and this request may seek disclosure of communications that are subject to attorney-client privilege and/or common interest privilege.  Subject to these objections, Defendant can neither admit nor deny this Request.**

**REQUEST NO. 86:** Admit that you or one of your representatives has discussed dismissal of this lawsuit with Bankruptcy Counsel.

 **ANSWER: Defendant objects to this Request as vague and incomprehensible as there are over 5 sets of counsel who have appeared in the Bankruptcy.  Without further clarification and identification of which "Bankruptcy Counsel" is targeted in this Request, Defendant cannot admit to the truth or falsity of this Request and this request may seek disclosure of communications that are subject to attorney-client privilege and/or common**

Defendant's Responses to Request for Admission- John E. Rea          Page 17
1414682v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- John E. Rea

App. 089

interest privilege.  Subject to these objections, Defendant can neither admit nor deny this Request.

**REQUEST NO. 87:** Admit that one or more Defendants directly or through counsel requested that the unsecured creditors committee demand that VBF dismiss this lawsuit against the Defendants.

**ANSWER:  Defendant objects to this Request on the grounds that it seeks communications subject to attorney-client and/or common interest privilege. Subject to this objection, Defendant can neither admit nor deny this Request.**

**REQUEST NO. 88:** Admit that you have provided information about Alder to Bankruptcy Counsel.

**ANSWER: Defendant objects to this Request as vague and incomprehensible as there are over 5 sets of counsel who have appeared in the Bankruptcy.  Without further clarification and identification of which "Bankruptcy Counsel" is targeted in these Request, Defendant cannot admit to the truth or falsity of this Request, and this request may seek communications that are subject to attorney-client privilege and/or common interest privilege.  Subject to these objections, Defendant can neither admit nor deny this Request.**

**REQUEST NO. 89:** Admit that one or more Defendants, directly or through counsel, have communicated with (a) Phillip Sheets; (b) Thomas Fawkes and/or Goldstein & McClintock LLP; (c) Aaron Hammer and/or Horwood Marcus & Berk; or (d) any member of the Ad Hoc Committee relating to the Bankruptcy.

**ANSWER:  Defendant objects to this Request on the grounds that it seeks communications subject to attorney-client and/or common interest privilege. Subject to this objection, Defendant can neither admit nor deny this Request.**

**REQUEST NO. 90:** Admit that one or more Defendants directly or through counsel reviewed and/or contributed to the December 19, 2018 letter signed by Thomas Fawkes relating to the Bankruptcy, attached as **Exhibit 4**.

**ANSWER:  Defendant objects to this Request on the grounds that it seeks communications subject to attorney-client and/or common interest privilege. Subject to this objection, Defendant can neither admit nor deny this Request.**

**REQUEST NO. 91:** Admit that Wulf signed a Warrant to Purchase Series A Preferred Shares of VeroBlue Farms USA, Inc. dated July 7, 2016 between VeroBlue Farms USA, Inc. and Alder.

Defendant's Responses to Request for Admission- John E. Rea                                                        Page 18
1414682v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- John E. Rea

App. 090

**ANSWER: Admit.**

**REQUEST NO. 92:** Admit that James Rea signed a Secretary's Certificate dated July 7, 2016 between VeroBlue Farms, Inc. and Alder.

**ANSWER: Defendant states that he has conducted a reasonable inquiry and despite such inquiry without access to VBF's books and records, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 93:** Admit that the proposal to restructure VBF's Canadian affiliate was not executed.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not identify what proposal it is referring to, who made the proposal, to whom, and when it was proposed and thus, Defendant cannot know what facts are being admitted or denied. Subject to these objections and without further clarification, Defendant lacks sufficient knowledge or information to form a belief as to the truth or falsity of this request and it is therefore, denied.**

**REQUEST NO. 94:** Admit that one or more Defendants approved Amstar Group, LLC ("Amstar") and Alder's debt and equity infusions instead of a capital infusion from Generation Investment Management.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not specify any time period for the described debt and equity infusions and thus, Defendant cannot know what facts are being admitted or denied. Subject to these objections and without further clarification, denied. Answering further, Defendant states that when Alder Aqua offered its equity infusion into VBF in July 2016, Alder Aqua mandated that Amstar's debt financing be part of this infusion and Alder Aqua refused to allow Generation Investment Management to issue debt or invest equity VBF.**

**REQUEST NO. 95:** Admit that Alder was not involved in VBF until July 2016.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because the term "involved in VBF" is undefined and thus, Defendant cannot know what facts are being admitted or denied. Subject to these objections and without further clarification, denied. Alder Aqua was engaged in due diligence surrounding its investment in VBF prior to July 2016.**

Defendant's Responses to Request for Admission- John E. Rea                                    Page 19
1414682v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- John E. Rea

App. 091

**REQUEST NO. 96:** Admit that between July 2016 and August 2017, only two of seven directors were appointed by Alder.

**ANSWER:** Defendant objects to this Request as vague and incomprehensible because it does not identify which entity's directors were appointed by Alder. Subject to this objection, Defendant states between July 2016 and August 2017, two of VBF's directors were appointed by Alder, but that Alder also controlled the board of Amstar, VBF's sole lender.  Defendant denies the remaining allegations of this Request.

**REQUEST NO. 97:** Admit that between August 2017 and October 24, 2017, only two of seven directors were appointed by Alder.

**ANSWER:** Defendant objects to this Request as vague and incomprehensible because it does not identify which entity's directors were appointed by Alder. Subject to this objection, Defendant states that between August 2017 and October 24, 2017, two of VBF's directors were appointed by Alder, but that Alder also controlled the board of Amstar, VBF's sole lender. Defendant denies the remaining allegations of this Request.

**REQUEST NO. 98:** Admit that Terry Lyons resigned from the Board of Directors in or before March 2018 and was never replaced.

**ANSWER:**  Defendant states that he has conducted a reasonable inquiry and despite such inquiry, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.

**REQUEST NO. 99:** Admit that Alder invested at least $50 million in VBF during your tenure at VBF.

**ANSWER:** Defendant states that he has conducted a reasonable inquiry and despite such inquiry, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.

**REQUEST NO. 100:** Admit that no VBF investor has lost more money than Alder during your tenure at VBF.

**ANSWER:** Defendant objects to this Request as vague and incomprehensible because the term "lost more money" is undefined and thus, Defendant cannot know what facts are being admitted or denied. Subject to these objections and without further

Defendant's Responses to Request for Admission- John E. Rea                                    Page 20
1414682v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- John E. Rea

App. 092

clarification, denied.   Defendant has no knowledge or information as to what Alder Aqua's actual gains or losses on its investment in VBF may be.

**REQUEST NO. 101:** Admit that by July 7, 2016, one or more Defendants knew that VBF would pursue the corporate farm model over the Grower Model.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because the term "corporate farm model" is undefined and thus, Defendant cannot know what facts are being admitted or denied. Subject to these objections and without further clarification, denied.**

**REQUEST NO. 102:** Admit that VBF was in default of its credit facility with Amstar in 2016.

**ANSWER: Defendant objects to this Request as the time period of the entire calendar year of 2016 is vague and the term "default" is undefined and thus, Defendant cannot know what facts are being admitted or denied.  Subject to these objections, Defendant denies that Amstar declared VBF to be default in 2016. Answering further, Defendant states that based on negative EBITDA covenants in the Amstar credit facilities, VBF would have been in default the first day, but that Amstar directed, controlled and approved all payments from the facility, including debt payment.**

**REQUEST NO. 103:** Admit that Amstar did not declare VBF's default until 2017.

**ANSWER: Defendant admits that Amstar sent VBF a notice of default in late 2017. Defendant denies the remaining allegations of this request.**

**REQUEST NO. 104:** Admit that Alder introduced ING Capital LLC ("ING") to VBF.

**ANSWER:  Defendant admits Alder introduced ING Europe to VBF and that ING Europe was affiliated with ING Capital LLC.  Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 105:** Admit that VBF would not have been able to satisfy the covenants under an ING revolving credit facility discussed with VBF.

**ANSWER: Defendant objects to this Request to the extent it requests admission of a hypothetical situation and not a fact. Defendant further objects to this Request to the extent it does not identify any time period and thus, Defendant cannot know what facts are being admitted or denied. Subject to these objections and without further clarification, denied.**

Defendant's Responses to Request for Admission- John E. Rea                                                                 Page 21
1414682v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- John E. Rea

App. 093

**REQUEST NO. 106:** Admit that one or more Defendants provided information to PriceWaterhouse for a financial audit of VBF.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not specify any time period for the described audit and thus, Defendant cannot know what facts are being admitted or denied. Subject to these objections and without further clarification, Defendant admits that they provided information about VBF to Pricewaterhouse Coopers for audits of VBF in 2016 and 2017.**

**REQUEST NO. 107:** Admit that Jackson Walker LLP was VBF's corporate counsel from some time in 2014 to sometime in 2017.

**ANSWER: Defendant admits that from 2014 until his termination from VBF in November 2017, Jackson Walker LLP was VBF's corporate counsel. Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in this Request and therefore, denies them.**

**REQUEST NO. 108:** Admit that Jackson Walker LLP currently continues to represent at least one of the Defendants or at least one of the Defendants' Affiliated Entities.

**ANSWER: Denied.**

**REQUEST NO. 109:** Admit that FishDish LLC did not appoint a member to VBF's Board of Directors after Ken Lockard's departure as a director in 2018.

**ANSWER: Defendant states that he has conducted a reasonable inquiry and despite such inquiry, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

Defendant's Responses to Request for Admission- John E. Rea                                                                Page 22
1414682v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- John E. Rea

App. 094

Respectfully submitted,

Underwood Perkins, P.C.

By:     */s/ Kimberly D. Annello*
        Kimberly D. Annello
        State Bar No. 24093704
        Two Lincoln Centre
        5420 LBJ Freeway, Suite 1900
        Dallas, Texas 75240
        Telephone:   (972) 661-5114
        Facsimile:   (972) 661-5691
        Email: kannello@uplawtx.com

        Attorney for Defendants

## Certificate of Service

I hereby certify that a true and correct copy of the above and foregoing instrument has been served upon all counsel of record, as listed below, on this 3rd day of April 2019 via ECF and/or E-Mail:

Robert H. Lang
Renato Mariotti
Caroline Pritikin
Eileen Boyle Perich
Thompson Coburn LLP
55 East Monroe, 37th Floor
Chicago, IL 60603
rlang@thompsoncoburn.com
rmariotti@thompsoncoburn.com
cpritikin@thompsoncoburn.com
eboyleperich@thompsoncoburn.com

Matthew E. Laughlin AT0004515
Holly M. Logan AT0004710
Katelynn T. McCollough  AT0013443
DAVIS, BROWN, KOEHN, SHORS &
ROBERTS, P.C.
215 10th Street, Suite 1300
Des Moines, Iowa  50309
mattlaughlin@davisbrownlaw.com
hollylogan@davisbrownlaw.com
katelynnmccollough@davisbrown.com

        */s/ Kimberly D. Annello*
        Kimberly D. Annello

Defendant's Responses to Request for Admission- John E. Rea         Page 23
1414682v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- John E. Rea

App. 095

# EXHIBIT E

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| VEROBLUE FARMS USA, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 3:19-CV-00764-L** |
| | ) | |
| LESLIE A. WULF, BRUCE A. HALL, | ) | |
| JAMES REA, JOHN E. REA, AND | ) | |
| KEITH DRIVER, | ) | |
| Defendants. | ) | |

### DEFENDANT LESLIE WULF'S RESPONSES TO PLAINTIFF'S
### FIRST REQUEST FOR ADMISSION OF FACT

Defendant, LESLIE A. WULF ("Defendant" or "Wulf"), hereby responds to Plaintiff's

First Request for Admission or Fact as follows:

### RESPONSES TO REQUEST FOR ADMISSION

**REQUEST NO. 1**:  Admit that one or more Defendants have an ownership interest and/or control of BAJJER LLC.

**ANSWER:    Admit.**

**REQUEST NO. 2**:  Admit that one or more Defendants caused VBF to transfer 1,250,000 shares of VeroBlue Farms, Inc. to BAJJER LLC for $1.25.

**ANSWER:    Denied.    Answering further, Defendant states Bajjer, LLC holds 1,250,000 shares of VBF in trust for Kelson Capital Inc. pursuant to a written agreement between them, and that this fact was discussed in an independent due diligence report done by Pricewaterhouse Coopers for Jens Haarkoetter of Alder Aqua on or about June 20, 2016.**

**REQUEST NO. 3**: Admit that one or more Defendants have an ownership interest and/or assert control in BAJJER II, LLC.

**ANSWER:  Admit.**

Defendant's Responses to Request for Admission- Leslie A. Wulf                                                    Page 1
1414684v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Leslie A. Wulf edits 4-2-19

App. 097

**REQUEST NO. 4**: Admit that American Growth Funding, LLC ("AGF") loaned approximately $78,000 to BAJJER II, LLC which grew to $101,000 with interest.

**ANSWER:   Admit.**

**REQUEST NO. 5:**  Admit that AGF loaned BAJJER approximately $200,000.

**ANSWER**:  **Defendant admits that AGF loaned Bajjer $200,000 in or about June 30, 2015, but states that the purpose of this loan was to pass through funds for operational costs of VBF. Defendant denies the remaining allegations of this request**.

**REQUEST NO. 6:**  Admit that BAJJER transferred AGF's loan of approximately $200,000 to VBF.

**ANSWER:  Defendant admits the $200,000 that AGF loaned Bajjer was transferred to VBF on July 1, 2015 because VBF needed the funds for operations, but AGF would only loan the funds to Bajjer and not directly to VBF.  Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 7:**   Admit that on or about July 8, 2016, VBF paid AGF approximately $375,000.

**ANSWER:    Defendant admits that VBF paid AGF approximately $375,000 in July 2016, pursuant to an agreement among Alder Aqua and Alder Aqua's counsel, Davis Graham & Stubbs ("DGS"), and AGF to repay the loan from AGF to Bajjer directly from VBF to AGF.  This repayment and the payment of 26 other bridge loans was disclosed and approved by Alder Aqua and DGS in a sources and uses of funds statement provided to them on July 8, 2016. Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 8:**  Admit that between December 1, 2015 and June 30, 2016, Gregg Sedun and/or Alcaron Capital Corporation loaned VBF approximately $250,000.

**ANSWER: Defendant admits that Alcaron Capital Corporation loaned VFB approximately $250,000. Defendant denies remaining allegations of this request.**

**REQUEST NO. 9:** Admit that on or about July 12, 2016, one or more Defendants cause VBF to pay Alcaron Capital Corporation approximately $326,056 in repayment for the loans described in Request No. 8.

**ANSWER:  Defendant admits that VBF paid Alcaron $326,056 in accordance with the sources and uses of funds statement provided to Alder Aqua and DGS on or about July 8, 2016.  Defendant denies the remaining allegations of this Request.**

Defendant's Responses to Request for Admission- Leslie A. Wulf                                    Page 2
1414684v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Leslie A. Wulf edits 4-2-19

App. 098

**REQUEST NO. 10:** Admit that on or about July 14, 2016, Gregg Sedun loaned Wulf $225,000.

    **ANSWER:**   **Admit.**

**REQUEST NO. 11:**   Admit that one or more Defendants received twice their monthly compensation from VBF in July 2016.

    **ANSWER:**   **Denied.**  **Defendant was compensated by VBF pursuant to a management consulting agreement until Alder Aqua's investment in July 2016. The consulting agreement paid Defendant in arrears. Upon Alder Aqua's investment, Defendant became an employee of VBF. Thus, upon closing of Alder Aqua's investment, Defendant was paid for his final month of consulting services (June 2016). This was disclosed to and approved by Alder Aqua and DGS.  Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 12:** Admit that one or more Defendants directed or caused VBF to employ Christine Gagne during your tenure to VBF.

    **ANSWER:**  **Denied.  Answering further, Defendant states Christine Gagne was an independent contractor, not an employee of VBF.**

**REQUEST NO. 13:**   Admit that one or more Defendants directed or caused VBF to pay Christine Gagne under the name "Ronnie O'Brien" during your tenure at VBF.

    **ANSWER:**   **Admitted that Christine Gagne was paid as an independent contractor, under the name "Ronnie O'Brien."  Defendant denies remaining allegations of this Request.**

**REQUEST NO. 14:** Admit that, during at least some of the time she was on VBF's payroll, Christine Gagne was a Canadian national who was not authorized to work in the United States.

    **ANSWER:**   **Denied.  Christine Gagne was an independent contractor, and not on VBF's payroll.**

**REQUEST NO. 15:** Admit that one or more Defendants caused VBF to buy six tractor-trailers.

    **ANSWER:**  **Denied.  The purchase of six tractor trailers was presented to, approved by, and directed by VBF's Board of Directors in two separate board resolutions.**

**REQUEST NO. 16:** Admit that VBF's selling of live fish did not require the transportation of fish in all of the tractor-trailers.

Defendant's Responses to Request for Admission- Leslie A. Wulf             Page 3
1414684v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Leslie A. Wulf edits 4-2-19

App. 099

**ANSWER:** Defendant objects to this Request as vague, nonsensical and not calling for the admission of a fact, but a statement of opinion or judgment. Subject to that objection, denied.

**REQUEST NO. 17:** Admit that VBF could not sell fish as quickly as one or more Defendants represented to Cardinal Farms that VBF could sell fish.

**ANSWER:** Defendants object to this Request as vague and incomprehensible because it does not identify what representation was made, by whom, to whom, and when and thus, Defendants cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, denied.

**REQUEST NO. 18:** Admit that one or more of the Defendants knew by July 2016 that the Grower Model would not be implemented and/or would not be successful if implemented.

**ANSWER:** Denied. Defendants planned to pursue a Grower Model until Alder Aqua representatives directed otherwise.

**REQUEST NO. 19:** Admit that at least one of the Defendants requested or directed that one or more employees of VBF remove the mortality tally sheets from one or more tanks during your tenure at VBF.

**ANSWER:** Denied.

**REQUEST NO. 20:** Admit that at least one of the Defendants misrepresented information relating to VBF's FCR to potential VBF investors and/or lenders.

**ANSWER:** Denied.

**REQUEST NO. 21:** Admit that at least one of the Defendants sought to keep visitors from seeing VBF's grow tanks on at least one occasion.

**ANSWER:** Defendant objects to this Request as vague and incomprehensible because it does not identify any time period and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection, Defendant states that Jens Haarkoetter, a VBF Director and representative of both Amstar Funds and Alder Aqua, and Dr. Otto Happel, beneficial owner of both Amstar and Alder Aqua, instructed all VBF personnel, including Defendant, to limit visitation to the farms and to prohibit photographs in order to prevent competitors from seeing and knowing VBF's patented tank system, growing practices and other features. Additionally, Defendant admits that when fish are being stocked into tanks for the first time, it is common industry practice to limit visitation for bio-security purposes. Defendant denies the remainder of this Request.

Defendant's Responses to Request for Admission- Leslie A. Wulf                                    Page 4
1414684v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Leslie A. Wulf edits 4-2-19

App. 100

**REQUEST NO. 22:** Admit that at least one of the Defendant's represented an FCR of 1:1 during a grow-out phase for a lot or batch during your tenure at VBF.

**ANSWER:** **Defendant objects to this Request as vague and incomprehensible because it does not identify what representation was made, by whom, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, denied.**

**REQUEST NO. 23:** Admit that VBF's FCR was never 1:1 during a grow-out phase for any lot or batch of fish during your tenure at VBF.

**ANSWER:** **Denied.**

**REQUEST NO. 24:** Admit that at least one of the Defendants represented an FCR at or near 1.038:1 during a grow-out phase for a lot or batch during your tenure at VBF.

**ANSWER:** **Defendant objects to this Request as vague and incomprehensible because it does not identify what representation was made, by whom, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, denied.**

**REQUEST NO. 25:** Admit that VBF's FCR was never at or near 1.038:1 during a grow-out phase for any lot or batch of fish during your tenure at VBF.

**ANSWER:** **Denied.**

**REQUEST NO. 26:** Admit that at least one of the Defendants represented an FCR of at or near 1.04 during a grow-out phase for a lot or batch during your tenure at VBF.

**ANSWER:** **Defendant objects to this Request as vague and incomprehensible because it does not identify what representation was made, by whom, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, denied.**

**REQUEST NO. 27:** Admit that VBF's FCR was never at or near 1.04 during a grow-out phase for any lot or batch during your tenure at VBF.

**ANSWER:** **Denied.**

Defendant's Responses to Request for Admission- Leslie A. Wulf                                                                 Page 5
1414684v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Leslie A. Wulf edits 4-2-19

App. 101

**REQUEST NO. 28:** Admit that at least one of the Defendants concealed information from non-Defendant VBF directors relating to the mortality rates on at least one occasion during your tenure at VBF.

**ANSWER:** **Denied. Answering further, Defendant did not provide data on mortality rates to VBF directors; Katie Olson, VBF employee, prepared a report that was circulated to the Board of Directors and to Amstar, and Defendant understood that Amstar prepared its own version of the report to Alder Aqua on a monthly basis.**

**REQUEST NO. 29:** Admit that VBF's actual mortality rate was higher than at least one of the Defendants represented during your tenure at VBF.

**ANSWER:** **Defendant objects to this Request as vague and incomprehensible because it does not identify what representation was made, by whom, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, denied.**

**REQUEST NO. 30:** Admit that Ted Rea knew of that thousands of fish had recently died at the Saint Louis farm at the time of VBF's Board of Directors meeting in September 2017.

**ANSWER:** **Defendant admits Ted Rea knew that certain fish had died at VBF's Saint Louis farm before September 2017 and admits that Mr. Rea discussed this fact with the directors during or within a few days of the September 2017 Board of Directors meeting. Defendant denies the remaining allegations of this request.**

**REQUEST NO. 31:** Admit that the Defendants failed to implement a Fry Quarantine facility even after an extreme death loss event.

**ANSWER:** **Denied. At the time of Defendant's termination from VBF, a portion of VBF's Blairsburg farm was being repurposed for a Fry Quarantine system.**

**REQUEST NO. 32:** Admit that Defendants did not report the extent of all mortality events to the VBF Board of Directors during your tenure at VBF.

**ANSWER:** **Denied. Monthly reports were provided to the VBF Board of Directors during Defendant's tenure as an officer.**

**REQUEST NO. 33:** Admit that at least one of the Defendants, on at least one occasion, misrepresented death loss bio masses in the Monthly Management Reports issued to the Board of Directors.

**ANSWER:** **Denied.**

Defendant's Responses to Request for Admission- Leslie A. Wulf                                                                Page 6
1414684v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Leslie A. Wulf edits 4-2-19

App. 102

**REQUEST NO. 34:** Admit that in the fish industry mortality rates are reported cumulatively by adding together the number of fish per batch that die per month.

**ANSWER:   Denied. The industry uses a bio-mass metric for reporting mortality rates.**

**REQUEST NO. 35:** Admit that at least one of the Defendants reported mortality rates non-cumulatively to the VBF Board of Directors during your tenure at VBF.

**ANSWER:  Denied.**

**REQUEST NO. 36:** Admit that at least one of the Defendants concealed information relating to the fish stocking density during your tenure VBF.

**ANSWER:   Denied.**

**REQUEST NO. 37:** Admit that at least one of the Defendants misrepresented information relating to the fish stocking density to non-Defendant VBF Directors on at least one occasion during your tenure at VBF.

**ANSWER:  Denied.**

**REQUEST NO. 38:** Admit that at least one of the Defendants represented that the VBF tanks could safely hold .75 pounds/gallon during your tenure at VBF.

**ANSWER:  Defendant objects to this Request as vague and incomprehensible because it does not identify who made this representation, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to these objections and without further clarification, Defendant admits in 2016 and 2017, Defendants presented to VBF's Board their belief that upon improved water quality and dissolved $O_2$ levels, they expected VBF tanks could hold .75 pounds of fish per gallon of water.  Defendants were conducting trials of this hypothesis at the Buckeye facility and provided updates as to their progress in testing this hypothesis at subsequent Board of Director meetings.  Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 39:** Admit that at least one of the Defendants represented a VBF fish-stocking plan at 15,000 fingerlings per tank on at least one occasion to third parties during your tenure at VBF.

**ANSWER:   Defendant objects to this Request as vague and incomprehensible because it does not identify who made this representation, to whom, and when and thus,**

Defendant's Responses to Request for Admission- Leslie A. Wulf                                      Page 7
1414684v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Leslie A. Wulf edits 4-2-19

App. 103

**Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, Defendant admits in 2016 and 2017, Defendants presented to the VBF Board and Dr. Happel of Alder Aqua their belief that upon improved water quality and dissolved O$_2$ levels, they expected VBF tanks could hold 15,000 fingerlings per tank. Defendants provided updates as to their progress in testing this hypothesis at subsequent Board of Director meetings. Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 40:** Admit that at least one of the Defendants represented to third parties on at least one occasion that VBF stocked 16,000 fish per six tank pod during your tenure at VBF.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not identify who made this representation, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, Defendant admits in 2016 and 2017, Defendants presented to the VBF Board and Dr. Happel of Alder Aqua their belief that upon improved water quality and dissolved O$_2$ levels and stocking tanks with larger fry, they expected VBF tanks could hold 16,000 fish per six tank pods. Defendants provided updates as to their progress in testing this hypothesis at subsequent Board of Director meetings. Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 41:** Admit that at least one of the Defendants provided to Alder a document noting a stocking rate of 16,000 fingerlings per pod every two months with a 1:1 pound of fish per gallon of water stocking density during your tenure at VBF.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not identify who made this representation and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, Defendant admits in 2016 and 2017, Defendants presented to the VBF Board and Dr. Happel of Alder Aqua their belief that upon improved water quality and dissolved O$_2$ levels and stocking tanks with larger fry, they expected VBF tanks could hold 16,000 fingerlings per pod. Defendants provided updates as to their progress in testing this hypothesis at subsequent Board of Director meetings. Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 42:** Admit that Driver informed a potential investor in early 2016 that VBF could stock 16,000 fingerlings per tank.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not identify when this representation was made or to whom, and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, denied.**

Defendant's Responses to Request for Admission- Leslie A. Wulf                                                                 Page 8
1414684v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Leslie A. Wulf edits 4-2-19

App. 104

**REQUEST NO. 43:** Admit that at least one of the Defendants represented that VBF successfully stocked 16,000 fish/tank for an additional $11 million in EBITDA during your tenure at VBF.

**ANSWER:** **Defendant objects to this Request as vague and incomprehensible because it does not identify who made this representation, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, denied.**

**REQUEST NO. 44:** Admit that, at most, during your tenure at VBF, no more than four of 17 six-tank pods were stocked with 16,000 or more fish.

**ANSWER:** **Defendant states that he has conducted a reasonable inquiry and despite such inquiry, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 45:** Admit that VBF never met its stocking density goals during your tenure at VBF.

**ANSWER: Denied.**

**REQUEST NO. 46:** Admit that the mortality rate on the four batches of six tank pods that were stocked with 16,000 or more fish was in reality 19% or higher during your tenure at VBF.

**ANSWER:** **Defendant states that he has conducted a reasonable inquiry and despite such inquiry, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 47:** Admit that at least one of the Defendants during your tenure at VBF represented that VBF's tanks could safely hold more barramundi than such tanks could hold in reality.

**ANSWER:** **Defendant objects to this Request as vague and incomprehensible because it does not identify who made this representation, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, denied.**

**REQUEST NO. 48:** Admit that Sheriff represented to at least one of the Defendants that his opposing flow system could safely handle 7,500 pounds per tank.

Defendant's Responses to Request for Admission- Leslie A. Wulf                                                  Page 9
1414684v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Leslie A. Wulf edits 4-2-19

App. 105

**ANSWER:   Admit. Answering further, Defendant states that Mr. Sheriff represented to VBF in 2015 and 2016 that his opposing flow system could handle 10,000 pounds of fish per tank.**

**REQUEST NO. 49:** Admit that during your tenure at VBF, at least one of the Defendants represented that each six-tank pod will produce approximately 120,000 pounds annually.

**ANSWER:   Defendant objects to this Request as vague and incomprehensible because it does not identify who made this representation, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, Defendant admits in 2016 and 2017, Defendants presented to the VBF Board and Dr. Happel their belief that upon improved water quality and dissolved $O_2$ levels and with stocking larger fry, they hoped each six-pod tank could produce 120,000 pounds of fish annually.  Defendants provided updates as to their progress in testing this hypothesis at subsequent Board of Director meetings. Defendant denies the remaining allegations of this Request**

**REQUEST NO. 50:** Admit that VBF's projected EBITDA was based on its represented tank density and/or fish-stocking plan during your tenure at VBF.

**ANSWER:  Defendant objects to this Request as vague and incomprehensible because it does not identify any time period for "projected EBITDA", thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, Defendant admits VBF's projections at the time of Alder Aqua's investment were based on Defendants' belief that upon improved water quality and dissolved $O_2$ levels would increase tank density, stocking density and overall fish production.  Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 51:** Admit that at least one of the Defendants represented that VBF had successfully stocked 1:1 pound of fish per gallon during your tenure at VBF.

**ANSWER:   Defendant objects to this Request as vague and incomprehensible because it does not identify who made this representation, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, Defendant admits that VBF represented that it had a test tank that had successfully stocked 1:1 pound of fish per gallon.  Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 52:** Admit that the VBF tanks did not actually have a stocking rate of 1:1 pound of fish per gallon during your tenure at VBF.

Defendant's Responses to Request for Admission- Leslie A. Wulf                                                                  Page 10
1414684v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Leslie A. Wulf edits 4-2-19

App. 106

**ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not identify any time period for "stocking rate", thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, denied.**

REQUEST NO. 53: Admit that Defendants represented to investors or potential investors that opposing flows technology was previously successful and/or that it would very likely be successful when implemented at VBF.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not identify who made this representation, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, Defendant admits, based on information provided to him and other Defendants by Rick Sheriff and Mark Nelson, he believed the opposing flows technology had been and would be successful when implemented, although there were risks associated with implementing that technology in a larger tank system. Defendant denies the remaining allegation of this Request.**

REQUEST NO. 54: Admit that opposing flows technology was not successful at VBF during your tenure at VBF.

**ANSWER: Defendant objects to this Request as vague to the extent that the term "successful" is undefined and does not constitute a statement of fact, but a statement of opinion or judgment. Subject to that objection, denied.**

REQUEST NO. 55: Admit that VBF lost millions of dollars in value during your tenure at VBF.

**ANSWER: Defendants object to this Request as vague to the extent that the term "value" is undefined and does not constitute a statement of fact, but a statement of opinion or judgment. Subject to that objection, denied.**

REQUEST NO. 56: Admit that you were paid over a $1,000,000 by VBF during your tenure at VBF.

**ANSWER: Defendant objects this Request as vague to the extent that payments are not sufficiently identified. Subject to that objection, with respect to Defendant's tenure as a VBF employee pursuant to his Employment Agreement, denied.**

REQUEST NO. 57: Admit that VBF was losing money before Alder invested in VBF.

**ANSWER: Admit.**

Defendant's Responses to Request for Admission- Leslie A. Wulf                                    Page 11
1414684v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Leslie A. Wulf edits 4-2-19

App. 107

**REQUEST NO. 58:** Admit that VBF spent $2 million per month in 2017.

     **ANSWER: Defendant objects to this Request as vague to the extent that the term "spent" is undefined and is subject to multiple interpretations. Subject to that objection, Defendant states that he has conducted a reasonable inquiry and despite such inquiry without access to VBF's books and records, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 59:** Admit that VBF spent approximately $1.5 million per month in 2017.

     **ANSWER: Defendant objects to this Request as vague to the extent that the term "spent" is undefined and is subject to multiple interpretations. Subject to that objection, Defendant states that he has conducted a reasonable inquiry and despite such inquiry without access to VBF's books and records, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 60:** Admit that VBF spent approximately $1 million per month in 2017.

     **ANSWER: Defendant objects to this Request as vague to the extent that the term "spent" is undefined and is subject to multiple interpretations. Subject to that objection, Defendant states that he has conducted a reasonable inquiry and despite such inquiry without access to VBF's books and records, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 61:** Admit that VBF spent approximately $2 million per month in 2016.

     **ANSWER: Defendant objects to this Request as vague to the extent that the term "spent" is undefined and is subject to multiple interpretations. Subject to that objection, Defendant states that he has conducted a reasonable inquiry and despite such inquiry without access to VBF's books and records, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 62:** Admit that VBF spent approximately $1.5 million per month in 2016.

     **ANSWER:  Defendant objects to this Request as vague to the extent that the term "spent" is undefined and is subject to multiple interpretations. Subject to that objection, Defendant states that he has conducted a reasonable inquiry and despite such inquiry without access to VBF's books and records, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

Defendant's Responses to Request for Admission- Leslie A. Wulf                                        Page 12
1414684v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Leslie A. Wulf edits 4-2-19

App. 108

**REQUEST NO. 63:** Admit that VBF spent approximately $1 million per month in 2016.

   **ANSWER: Defendant objects to this Request as vague to the extent that the term "spent" is undefined and is subject to multiple interpretations. Subject to that objection, Defendant states that he has conducted a reasonable inquiry and despite such inquiry without access to VBF's books and records, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 64:** Admit that VBF spent approximately $2 million per month in 2015.

   **ANSWER: Defendant objects to this Request as vague to the extent that the term "spent" is undefined and is subject to multiple interpretations. Subject to that objection, Defendant states that he has conducted a reasonable inquiry and despite such inquiry without access to VBF's books and records, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 65:** Admit that VBF spent approximately $1.5 million per month in 2015.

   **ANSWER: Defendant objects to this Request as vague to the extent that the term "spent" is undefined and is subject to multiple interpretations. Subject to that objection, Defendant states that he has conducted a reasonable inquiry and despite such inquiry without access to VBF's books and records, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 66:** Admit that VBF spent approximately $1 million per month in 2015.

   **ANSWER: Defendant objects to this Request as vague to the extent that the term "spent" is undefined and is subject to multiple interpretations. Subject to that objection, Defendant states that he has conducted a reasonable inquiry and despite such inquiry without access to VBF's books and records, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 67:** Admit that at least one of the Defendants represented that Rick Sheriff was VBF's Chief Technology Officer during your tenure at VBF.

   **ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not identify who made this representation, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, Defendant admits that Rick Sherriff signed a contract with VBF in July 2016, to act as its Chief Technology Officer, which contract was approved by the Board of Directors and specifically by Alder Aqua.**

**REQUEST NO. 68:** Admit that no copyrights were issued to VBF during your tenure at VBF.

Defendant's Responses to Request for Admission- Leslie A. Wulf                                                                Page 13
1414684v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Leslie A. Wulf edits 4-2-19

App. 109

**ANSWER:   Defendant states that he has conducted a reasonable inquiry and despite such inquiry, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 69:** Admit that at least one of the Defendants had some ownership interest in Opposing Flows Aquaculture.

**ANSWER: Defendant objects to this Request to the extent it does not define any time period.  Subject to that objection and without further clarification, Defendant admits that Ted Rea, as registered agent, registered Opposing Flows Aquaculture, Inc. in late 2014, which would license the OFA technology to other growers but Defendant denies that any shares in OFA or other ownership interest was granted to anyone. Once Alder Aqua invested in VBF, it purchased the patents for the opposing flow technology and there was no use for the OFA entity and it was closed.  Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 70:** Admit that there were complaints about the smell of VBF's fish before Norman McCowan started at VBF.

**ANSWER:  Defendant objects to this Request as vague and incomprehensible because it does not identify who raised this complaint, to whom, where, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, denied.**

**REQUEST NO. 71:** Admit that VBF never implemented software and hardware tools that allowed for integration of its operations.

**ANSWER:  Defendant objects this Request as vague to the extent that the terms "software and hardware tools" and "integration of operations" are not sufficiently defined. Subject to that objection and without further clarification, denied.  Answering further, Defendant states VBF was utilizing Aqua Manager and NetSuite to manage and integrate operations.**

**REQUEST NO. 72:** Admit that VBF never had an operational research & development center.

**ANSWER: Admit.**

**REQUEST NO. 73:** Admit that VBF never produced its own fish feed during your tenure at VBF.

**ANSWER: Admit.**

Defendant's Responses to Request for Admission- Leslie A. Wulf                                                    Page 14
1414684v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Leslie A. Wulf edits 4-2-19

App. 110

**REQUEST NO. 74:** Admit that VBF never partnered with Iowa State University during your tenure at VBF.

**ANSWER: Defendant objects this Request as vague to the extent that the term "partnered with" is not sufficiently defined. Subject to that objection and without further clarification, admitted. Answering further, Defendant states that VBF had engaged a group of advisors, including staff from Iowa State University to assess collaborative research opportunities but after Alder Aqua's investment, Dr. Happel specifically instructed Defendants not to share information or otherwise collaborate with any universities.**

**REQUEST NO. 75:** Admit that at least one of the Defendants projected VBF's annual production from the Urban Farm to be at least 8,000,000 pounds/year.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not identify who made this projection, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to that objection and without further clarification, Defendant admits in 2017, based on Defendants' belief that using larger fry and improving water quality and dissolved $O_2$ levels and with the addition of barns 6 and 7, VBF's annual production from the Urban Farm was projected to be 8,000,000 pounds per year. Defendants provided updates as to this projection at subsequent Board of Director meetings. Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 76:** Admit that VBF's total production from January through October 2015 was less than 200,000 pounds.

**ANSWER: Defendant states that he has conducted a reasonable inquiry and despite such inquiry, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 77:** Admit that there was never a market demand for 15 million pounds of Barramundi in the United States.

**ANSWER: Defendant states that he has conducted a reasonable inquiry and despite such inquiry, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

Defendant's Responses to Request for Admission- Leslie A. Wulf                                                                Page 15
1414684v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Leslie A. Wulf edits 4-2-19

App. 111

**REQUEST NO. 78:** Admit that VBF never produced 4.8 million pounds of fish in any given year during your tenure at VBF.

**ANSWER: Defendant states that he has conducted a reasonable inquiry and despite such inquiry, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 79:** Admit that Defendants represented in October 2015 that VBF was valued at $32.5 million.

**ANSWER: Defendant objects to this Request as vague to the extent that the term "value" is undefined and does not constitute a statement of fact, but a statement of opinion or judgment. Defendant further objects to this Request as vague and incomprehensible because it does not identify who made this representation, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to these objections and without further clarification, Defendant admits in investment marketing materials provided to prospective investors, Defendants projected VBF's value at $32.5 million.**

**REQUEST NO. 80:** Admit that at least one of the Defendants provided data for the following documents exhibited to VBF's First Set of Interrogatories to Defendant Keith Driver (answer each sub-part separately):

a. "Executive Summary" and "Marketing Deck" attached as **Exhibit 1.**
b. November 1, 2014 PowerPoint attached as **Exhibit 2**.
c. the November 2014-April 2015 Opposing Flows Tank System Performance Data PowerPoint, attached as **Exhibit 3**.

**ANSWER:  Admitted as to parts a, b and c.**

**REQUEST NO. 81:** Admit that there were no designated growers for the alleged VBF Grower Model as of December 31, 2016.

**ANSWER:  Denied.**

**REQUEST NO. 82:** Admit that VBF purchased U.S. Patent 6,065,430 and U.S. Patent Application 14/289,623 for $2.75 million.

**ANSWER:   Defendant objects to this Request as it does not identify any time period. Subject to this objection, Defendant admits and after completing its due diligence on VBF, Alder Aqua decided to purchase the patents as part of its investment. as part of**

Defendant's Responses to Request for Admission- Leslie A. Wulf                                                                    Page 16
1414684v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Leslie A. Wulf edits 4-2-19

App. 112

Alder Aqua's investment. Amstar Funds thus provided a bridge loan for VBF to purchase US Patent 6,065,430 and U.S. Patent Application 14/289,623 from Rick Sheriff for $2.75 million.  Defendant denies the remaining allegations of this Request.

**REQUEST NO. 83:** Admit that U.S. Patent 6,065,430 expired on October 10, 2017.

**ANSWER: Defendant states that he has conducted a reasonable inquiry and despite such inquiry, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 84:** Admit that one or more Defendants provided information to one or more people from Fisheries Technology Associates to complete that organization's "Technical Assessment of Barramundi Production at VeroBlue Farms with a Focus on Iowa's First: A Due Diligence Assessment Consultation Report" dated July 2, 2015.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not identify who made this representation, to whom, and when and thus, Defendant cannot know what facts are being admitted or denied. Subject to these objections and without further clarification, Keith Driver provided information to Bill Manci at Fisheries Technology Associates to complete the identified Assessment in 2015 as part of the due diligence conducted by Generation Investment Management in preparation for its debt commitment to VBF.**

**REQUEST NO. 85:** Admit that you have communicated with counsel ("Bankruptcy Counsel") in VBF's pending bankruptcy case, Case No. 18-01297 *In re: VeroBlue Farms USA, Inc., et al.* pending in the Northern District of Iowa ("Bankruptcy").

**ANSWER: Defendant objects to this Request as vague and incomprehensible as there are over 5 sets of counsel who have appeared in the Bankruptcy.  Without further clarification and identification of which "Bankruptcy Counsel" is targeted in this Request, Defendant cannot admit to the truth or falsity of this Request, and this request may seek disclosure of communications that are subject to attorney-client privilege and/or common interest privilege.  Subject to these objections, Defendant can neither admit nor deny this Request.**

**REQUEST NO. 86:** Admit that you or one of your representatives has discussed dismissal of this lawsuit with Bankruptcy Counsel.

**ANSWER: Defendant objects to this Request as vague and incomprehensible as there are over 5 sets of counsel who have appeared in the Bankruptcy.  Without further clarification and identification of which "Bankruptcy Counsel" is targeted in this Request, Defendant cannot admit to the truth or falsity of this Request and this request may seek disclosure of communications that are subject to attorney-client privilege and/or common**

Defendant's Responses to Request for Admission- Leslie A. Wulf                                                                 Page 17
1414684v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Leslie A. Wulf edits 4-2-19

App. 113

interest privilege.  Subject to these objections, Defendant can neither admit nor deny this Request.

**REQUEST NO. 87:** Admit that one or more Defendants directly or through counsel requested that the unsecured creditors committee demand that VBF dismiss this lawsuit against the Defendants.

**ANSWER:   Defendant objects to this Request on the grounds that it seeks communications subject to attorney-client and/or common interest privilege. Subject to this objection, Defendant can neither admit nor deny this Request.**

**REQUEST NO. 88:** Admit that you have provided information about Alder to Bankruptcy Counsel.

**ANSWER: Defendant objects to this Request as vague and incomprehensible as there are over 5 sets of counsel who have appeared in the Bankruptcy.  Without further clarification and identification of which "Bankruptcy Counsel" is targeted in these Request, Defendant cannot admit to the truth or falsity of this Request, and this request may seek communications that are subject to attorney-client privilege and/or common interest privilege.  Subject to these objections, Defendant can neither admit nor deny this Request.**

**REQUEST NO. 89:** Admit that one or more Defendants, directly or through counsel, have communicated with (a) Phillip Sheets; (b) Thomas Fawkes and/or Goldstein & McClintock LLP; (c) Aaron Hammer and/or Horwood Marcus & Berk; or (d) any member of the Ad Hoc Committee relating to the Bankruptcy.

**ANSWER:   Defendant objects to this Request on the grounds that it seeks communications subject to attorney-client and/or common interest privilege. Subject to this objection, Defendant can neither admit nor deny this Request.**

**REQUEST NO. 90:** Admit that one or more Defendants directly or through counsel reviewed and/or contributed to the December 19, 2018 letter signed by Thomas Fawkes relating to the Bankruptcy, attached as **Exhibit 4**.

**ANSWER:   Defendant objects to this Request on the grounds that it seeks communications subject to attorney-client and/or common interest privilege. Subject to this objection, Defendant can neither admit nor deny this Request.**

**REQUEST NO. 91:** Admit that Wulf signed a Warrant to Purchase Series A Preferred Shares of VeroBlue Farms USA, Inc. dated July 7, 2016 between VeroBlue Farms USA, Inc. and Alder.

Defendant's Responses to Request for Admission- Leslie A. Wulf                                                    Page 18
1414684v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Leslie A. Wulf edits 4-2-19

App. 114

**ANSWER: Admit.**

**REQUEST NO. 92:** Admit that James Rea signed a Secretary's Certificate dated July 7, 2016 between VeroBlue Farms, Inc. and Alder.

**ANSWER: Defendant states that he has conducted a reasonable inquiry and despite such inquiry without access to VBF's books and records, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 93:** Admit that the proposal to restructure VBF's Canadian affiliate was not executed.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not identify what proposal it is referring to, who made the proposal, to whom, and when it was proposed and thus, Defendant cannot know what facts are being admitted or denied. Subject to these objections and without further clarification, Defendant lacks sufficient knowledge or information to form a belief as to the truth or falsity of this request and it is therefore, denied.**

**REQUEST NO. 94:** Admit that one or more Defendants approved Amstar Group, LLC ("Amstar") and Alder's debt and equity infusions instead of a capital infusion from Generation Investment Management.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not specify any time period for the described debt and equity infusions and thus, Defendant cannot know what facts are being admitted or denied. Subject to these objections and without further clarification, denied. Answering further, Defendant states that when Alder Aqua offered its equity infusion into VBF in July 2016, Alder Aqua mandated that Amstar's debt financing be part of this infusion and Alder Aqua refused to allow Generation Investment Management to issue debt or invest equity VBF.**

**REQUEST NO. 95:** Admit that Alder was not involved in VBF until July 2016.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because the term "involved in VBF" is undefined and thus, Defendant cannot know what facts are being admitted or denied. Subject to these objections and without further clarification, denied. Alder Aqua was engaged in due diligence surrounding its investment in VBF prior to July 2016.**

Defendant's Responses to Request for Admission- Leslie A. Wulf                                    Page 19
1414684v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Leslie A. Wulf edits 4-2-19

App. 115

**REQUEST NO. 96:** Admit that between July 2016 and August 2017, only two of seven directors were appointed by Alder.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not identify which entity's directors were appointed by Alder. Subject to this objection, Defendant states between July 2016 and August 2017, two of VBF's directors were appointed by Alder, but that Alder also controlled the board of Amstar, VBF's sole lender.  Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 97:** Admit that between August 2017 and October 24, 2017, only two of seven directors were appointed by Alder.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because it does not identify which entity's directors were appointed by Alder. Subject to this objection, Defendant states that between August 2017 and October 24, 2017, two of VBF's directors were appointed by Alder, but that Alder also controlled the board of Amstar, VBF's sole lender. Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 98:** Admit that Terry Lyons resigned from the Board of Directors in or before March 2018 and was never replaced.

**ANSWER:  Defendant states that he has conducted a reasonable inquiry and despite such inquiry, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 99:** Admit that Alder invested at least $50 million in VBF during your tenure at VBF.

**ANSWER: Defendant states that he has conducted a reasonable inquiry and despite such inquiry, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

**REQUEST NO. 100:** Admit that no VBF investor has lost more money than Alder during your tenure at VBF.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because the term "lost more money" is undefined and thus, Defendant cannot know what facts are being admitted or denied. Subject to these objections and without further**

Defendant's Responses to Request for Admission- Leslie A. Wulf                                    Page 20
1414684v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Leslie A. Wulf edits 4-2-19

App. 116

clarification, denied.   Defendant has no knowledge or information as to what Alder Aqua's actual gains or losses on its investment in VBF may be.

**REQUEST NO. 101:** Admit that by July 7, 2016, one or more Defendants knew that VBF would pursue the corporate farm model over the Grower Model.

**ANSWER: Defendant objects to this Request as vague and incomprehensible because the term "corporate farm model" is undefined and thus, Defendant cannot know what facts are being admitted or denied. Subject to these objections and without further clarification, denied.**

**REQUEST NO. 102:** Admit that VBF was in default of its credit facility with Amstar in 2016.

**ANSWER: Defendant objects to this Request as the time period of the entire calendar year of 2016 is vague and the term "default" is undefined and thus, Defendant cannot know what facts are being admitted or denied.  Subject to these objections, Defendant denies that Amstar declared VBF to be default in 2016. Answering further, Defendant states that based on negative EBITDA covenants in the Amstar credit facilities, VBF would have been in default the first day, but that Amstar directed, controlled and approved all payments from the facility, including debt payment.**

**REQUEST NO. 103:** Admit that Amstar did not declare VBF's default until 2017.

**ANSWER: Defendant admits that Amstar sent VBF a notice of default in late 2017. Defendant denies the remaining allegations of this request.**

**REQUEST NO. 104:** Admit that Alder introduced ING Capital LLC ("ING") to VBF.

**ANSWER:  Defendant admits Alder introduced ING Europe to VBF and that ING Europe was affiliated with ING Capital LLC.  Defendant denies the remaining allegations of this Request.**

**REQUEST NO. 105:** Admit that VBF would not have been able to satisfy the covenants under an ING revolving credit facility discussed with VBF.

**ANSWER: Defendant objects to this Request to the extent it requests admission of a hypothetical situation and not a fact. Defendant further objects to this Request to the extent it does not identify any time period and thus, Defendant cannot know what facts are being admitted or denied. Subject to these objections and without further clarification, denied.**

Defendant's Responses to Request for Admission- Leslie A. Wulf                                                     Page 21
1414684v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Leslie A. Wulf edits 4-2-19

App. 117

**REQUEST NO. 106:** Admit that one or more Defendants provided information to PriceWaterhouse for a financial audit of VBF.

**ANSWER:  Defendant objects to this Request as vague and incomprehensible because it does not specify any time period for the described audit and thus, Defendant cannot know what facts are being admitted or denied. Subject to these objections and without further clarification, Defendant admits that they provided information about VBF to Pricewaterhouse Coopers for audits of VBF in 2016 and 2017.**

**REQUEST NO. 107:** Admit that Jackson Walker LLP was VBF's corporate counsel from some time in 2014 to sometime in 2017.

**ANSWER:  Defendant admits that from 2014 until his termination from VBF in November 2017, Jackson Walker LLP was VBF's corporate counsel.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in this Request and therefore, denies them.**

**REQUEST NO. 108:** Admit that Jackson Walker LLP currently continues to represent at least one of the Defendants or at least one of the Defendants' Affiliated Entities.

**ANSWER: Denied.**

**REQUEST NO. 109:** Admit that FishDish LLC did not appoint a member to VBF's Board of Directors after Ken Lockard's departure as a director in 2018.

**ANSWER: Defendant states that he has conducted a reasonable inquiry and despite such inquiry, he lacks sufficient knowledge or information to form a belief as to the truth or falsity of this Request, and it is therefore, denied.**

Defendant's Responses to Request for Admission- Leslie A. Wulf                    Page 22
1414684v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Leslie A. Wulf edits 4-2-19

App. 118

Respectfully submitted,

Underwood Perkins, P.C.

By:      */s/ Kimberly D. Annello*
         Kimberly D. Annello
         State Bar No. 24093704
         Two Lincoln Centre
         5420 LBJ Freeway, Suite 1900
         Dallas, Texas 75240
         Telephone:    (972) 661-5114
         Facsimile:    (972) 661-5691
         Email: kannello@uplawtx.com

         Attorney for Defendants

### Certificate of Service

I hereby certify that a true and correct copy of the above and foregoing instrument has been served upon all counsel of record, as listed below, on this 3rd day of April 2019 via ECF and/or E-Mail:

Robert H. Lang
Renato Mariotti
Caroline Pritikin
Eileen Boyle Perich
Thompson Coburn LLP
55 East Monroe, 37th Floor
Chicago, IL 60603
rlang@thompsoncoburn.com
rmariotti@thompsoncoburn.com
cpritikin@thompsoncoburn.com
eboyleperich@thompsoncoburn.com

Matthew E. Laughlin AT0004515
Holly M. Logan AT0004710
Katelyn T. McCollough  AT0013443
DAVIS, BROWN, KOEHN, SHORS & ROBERTS, P.C.
215 10th Street, Suite 1300
Des Moines, Iowa  50309
mattlaughlin@davisbrownlaw.com
hollylogan@davisbrownlaw.com
katelynnmccollough@davisbrown.com

                                            */s/ Kimberly D. Annello*
                                            Kimberly D. Annello

Defendant's Responses to Request for Admission- Leslie A. Wulf                                    Page 23
1414684v1 - V0265.00001 Def. Response to Plt. First Req. for Admission- Leslie A. Wulf edits 4-2-19

App. 119

EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| VEROBLUE FARMS USA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **Case No. 3:18-cv-03047-LTS-MAR** |
| v. | ) | |
| | ) | |
| LESLIE A. WULF, BRUCE A. HALL, | ) | |
| JAMES REA, JOHN E. REA, AND | ) | |
| KEITH DRIVER, | ) | |
| | ) | |
| Defendants. | | |

## DEFENDANT BRUCE A. HALL's RESPONSES TO
## PLAINTIFF'S FIRST SET OF INTERROGATORIES

COMES NOW, Defendant, Bruce A. Hall ("Hall"), in the above-entitled and numbered cause, and submits these responses to Plaintiffs' First Set of Interrogatories.

**I.**
## DEFENDANTS RESPONSES TO FIRST SET OF INTERROGATORIES

**INTERROGATORY NO. 1**: Identify all of Defendants' Affiliated Entities, including the identity of all shareholders, owners, managers, and/or directors.

**ANSWER: Hall objects to this Interrogatory to the extent it seeks information about other defendants of which he has no personal knowledge. Hall further objects to this Interrogatory because it seeks information that it not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.**

**INTERROGATORY NO. 2:** Identify all banks or other financial institutions to which you, Defendants' Affiliated Entities, or Defendants' Family have been named an account holder, had rights to withdraw funds, and/or did withdraw funds, including the account numbers, name of account holder(s), dates account has been held, and type of account.

**ANSWER: Hall objects to this Interrogatory to the extent it seeks information about other defendants of which he has no personal knowledge. Hall also objects to this**

Interrogatory as improperly seeking personal and confidential financial information relating to him and his family, many of whom are not parties to this case. Hall further objects to this Interrogatory because it seeks information that it not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.

**INTERROGATORY NO. 3:**  Identify all real estate owned by you, any member of Defendants' Family, and/or any of Defendants' Affiliated Entities, directly or indirectly (i.e. through a trust or other entity) by address, purchase price, listed sales price, and identity of lenders.

**ANSWER: Hall objects to this Interrogatory to the extent it seeks information about other defendants of which he has no personal knowledge.  Hall also objects to this Interrogatory as improperly seeking personal and confidential financial information relating to him and his family, many of whom are not parties to this case. Hall further objects to this Interrogatory because it seeks information that it not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.**

**INTERROGATORY NO. 4:**  Identify all travel by plane by any one of the Defendants or Defendants' Family to the extent VBF funded any portion of such travel by date, identity of travelers, airlines, identity of payor of expenses, and purpose of travel.

**ANSWER: Hall objects to this Interrogatory to the extent it seeks information and records in Plaintiff's exclusive possession that Hall does not have possession or control over in order to further respond. Subject to this objection, and without access to Plaintiff's books and records, Hall cannot identify all travel that he or other Defendants made during his tenure at VBF that may have been funded by VBF. Hall states that VBF did not fund any plane travel for any of his family members during his tenure at VBF. Documents further responsive to this Interrogatory will be produced and additional responsive documents may be within Plaintiff's exclusive possession and control.**

**INTERROGATORY NO. 5:**  Identify all of your living expenses, including but not limited to, rent, mortgage, other housing, utilities, and/or food, paid in any part by VBF, stating the identity of the relevant vendor(s), amount(s), date(s) of payments, and reason that VBF paid such amount.

**ANSWER: Hall objects to this Interrogatory as improperly seeking personal and confidential financial information relating to him and his family, many of whom are not parties to this case.  Hall further objects to this Interrogatory as seeking information that it not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.  Hall further objects to this Interrogatory to the extent it seeks information and records in Plaintiff's exclusive possession that he does not have possession or control over or access to them to further respond. Documents further responsive to this Interrogatory will be produced and additional responsive documents may be within Plaintiff's exclusive possession and control. Subject**

to these objections, Hall states that while serving as CFO of VBF, he traveled to Iowa from his home in Coppell, Texas, and stayed in Webster City while working for VBF, an average of twice per month.  Hall's expenses incurred in traveling to and from Iowa and meals while there were expensed to VBF. Hall did not expense accommodations to VBF during these stays because he stayed in the house that VBF had purchased in Webster City. Hall states that any expenses reimbursed or paid by VBF were submitted to and approved by VBF in accordance with company policies in place at the time. These reports and other documents further responsive to this Interrogatory are within Plaintiff's exclusive possession and control.

**INTERROGATORY NO. 6:**  Identify all institutional and non-institutional lenders in VBF for which VBF submitted any form of application, whether or not the financing was secured, and the amount of each loan, the date of each loan, and the use or uses of the loan by VBF.

**ANSWER: Hall objects to this Interrogatory to the extent it seeks information and records in Plaintiff's exclusive possession that Hall does not have possession or control over in order to further respond. Subject to this objection, and without access to Plaintiff's books and records, Hall believes that VBF may have submitted applications for loans had discussions regarding loans with Generation Investment Management, Texas Pacific Bank, and Rabo Bank. Documents further responsive to this Interrogatory will be produced and additional responsive documents may be within Plaintiff's exclusive possession and control.**

**INTERROGATORY NO. 7:**  Identify all amounts that the Defendants invested in VBF.

**ANSWER: Hall objects to this Interrogatory to the extent it seeks information and records in Plaintiff's exclusive possession that Hall does not have possession or control over in order to further respond. Hall further objects to this Interrogatory because the term "invested in" is vague and subject to multiple interpretations. Subject to these objections, and without access to Plaintiff's books and records, Hall states that all Defendants went long periods without compensation for their work launching VBF, and personally guaranteed bridge loans for the company, including one such loan for $2,7000,000 for purchase of the Electrolux building in Webster City.  Defendants each purchased their shares of VBF Canada for cash at $0.000001 per share.  Documents responsive to this Interrogatory will be produced and additional responsive documents may be within Plaintiff's exclusive possession and control.**

**INTERROGATORY NO. 8:**  Identify all investors in VBF, the amount of each investment, the date of each investment, and the specific use or uses of the investment by VBF.

**ANSWER: Hall objects to this Interrogatory to the extent it seeks information and records in Plaintiff's exclusive possession that Hall does not have possession or control over in order to further respond. Subject to this objection, and without access to Plaintiff's books and records, Hall believes that in July 2016 preferred equity**

investments in VBF were made by: i) FishDish, LLC in the amount of $6,000,000 and ii) Alder Aqua Ltd. in the amount of $28,000,000. Additionally, Hall believes that there were over 100 investors in VBF Canada at share prices between $0.50 and $0.90 per share. Documents further responsive to this Interrogatory will be produced and additional documents may be within Plaintiff's exclusive possession and control.

**INTERROGATORY NO. 9:**   Identify all amounts (by date, amount, and reason for payment) that Defendants or Defendants' Family received directly or indirectly from VBF or Defendants' Affiliated Entities through compensation, stock (including the value of stock at the time of issuance), any kind of payment, reimbursement of expenses or otherwise and explain the basis of said amounts.

**ANSWER: Hall objects to this Interrogatory to the extent it seeks information about other defendants of which he has no personal knowledge.  Hall also objects to this Interrogatory as improperly seeking personal and confidential financial information relating to him and his family, many of whom are not parties to this case. Hall further objects to this Interrogatory to the extent it seeks information and records in Plaintiff's exclusive possession that he does not have possession or control over or access to them to further respond.  Subject to these objections, Hall was paid $25,000.00 per month by VBF from October 2014 through July 2016 as a consulting fee, pursuant to the Management Services Agreement executed with VBF, BHDH Management, LLC and VeroBlue Farms, Inc. (Canada) (VBF's parent company) on October 1, 2014. Hall was paid $33,333 per month in salary by VBF July 2016 through December 2017, pursuant to his Employment Agreement dated July 1, 2016.  Hall's family entity purchased 3,300,000 shares of stock in VeroBlue Farms, Inc. (Canada) at $.000001 per share in Oct 18, 2014 and he was granted options to purchase 1,000,000 shares of common stock at $1.00 per share in VBF pursuant to a Stock Option Agreement between him and VBF dated July 8, 2016.   Documents further responsive to this Interrogatory will be produced and additional responsive documents may be within Plaintiff's exclusive possession and control.**

**INTERROGATORY NO. 10:**   State VBF's value as of December 31 of each year (or, for 2017, as of the date you resigned as an employee of VBF).

**ANSWER: Hall objects to this Interrogatory to the extent it seeks information and records in Plaintiff's exclusive possession that Hall does not have possession or control over in order to further respond. Subject to this objection, documents further responsive to this Interrogatory will be produced and additional documents may be within Plaintiff's exclusive possession and control.**

**INTERROGATORY NO. 11:**   Identify any and all valuations of VBF by conclusions of value, date, identity of author, and purpose for which each valuation was accomplished.

**ANSWER: Hall objects to this Interrogatory to the extent it seeks information and records in Plaintiff's exclusive possession that Hall does not have possession or control over in order to further respond. Subject to this objection, and without access to Plaintiff's books and records, documents further responsive to this Interrogatory will be produced and additional documents may be within Plaintiff's exclusive possession and control.**

**INTERROGATORY NO. 12:**  Explain why VBF was valued at $32,500,000 in 2015, who determined that value, and explain VBF's approximate value at the time you resigned as an employee of VBF and account for any drop in the value between the two valuations.

**ANSWER: Hall objects to this Interrogatory as seeking a narrative response that is better suited to a deposition.  Hall further objects to this Interrogatory as vague and overbroad to the extent that "valued" is undefined and the calendar year 2015 is too broad to permit a specific answer.  Hall also objects to this Interrogatory to the extent it seeks information and records in Plaintiff's exclusive possession that Hall does not have possession or control over in order to further respond. Subject to this objection, and without access to Plaintiff's books and records, Hall believes (but cannot confirm) that the valuation was based upon a formula utilizing: i) the cash invested in VBF from investors in Canada at prices from $0.50 to $0.90 per share, ii) the value related to the purchase of the Iowa's First Webster City operation, iii) the value of the shares issued for an exclusive license for the technology and iv) a value for the exclusive North American rights to Mainstream's Australian Barramundi.  These amounts were then factored with an applicable multiple to obtain the VBF valuation.   Documents further responsive to this Interrogatory will be produced and additional documents may be within Plaintiff's exclusive possession and control.**

**INTERROGATORY NO. 13:**  Identify (by approximate cost) all operating costs of VBF for each month of 2015, 2016, and 2017, including but not limited to labor costs and utility expenses.

**ANSWER: Hall objects to this Interrogatory to the extent it seeks information and records in Plaintiff's exclusive possession that Hall does not have possession or control over in order to further respond. Subject to this objection, and without access to Plaintiff's books and records, documents further responsive to this Interrogatory will be produced and additional documents may be within Plaintiff's exclusive possession and control.**

**INTERROGATORY NO. 14:**  State VBF's net profits, gross profits, and loss for each month of 2015, 2016, and 2017 (or as close to those dates as you are able to answer).

**ANSWER: Hall objects to this Interrogatory to the extent it seeks information and records in Plaintiff's exclusive possession that Hall does not have possession or control over in order to further respond. Subject to this objection, and without access to**

Plaintiff's books and records, documents further responsive to this Interrogatory will be produced and additional documents may be within Plaintiff's exclusive possession and control.

**INTERROGATORY NO. 15:**  State you and your spouse's current personal net worth, as well as you and your spouse's personal net worth as of December 31, 2018 and December 31, 2017.

**ANSWER:  Hall objects to this Interrogatory as improperly seeking personal and confidential financial information relating to him and his family, many of whom are not parties to this case.  Hall further objects to this Interrogatory as seeking information that it not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.**

**INTERROGATORY NO. 16:**  With regards to your trips to the State of Iowa state your mode of travel, date of travel, reason for travel, identity of persons with whom you traveled and identity of any source of funds for such travel.

**ANSWER: Hall objects to this Interrogatory as improperly seeking personal and confidential financial information relating to him and his family, many of whom are not parties to this case.  Hall further objects to this Interrogatory as seeking information that it not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.  Hall further objects to this Interrogatory to the extent it seeks information and records in Plaintiff's exclusive possession that he does not have possession or control over or access to them to further respond. Documents further responsive to this Interrogatory will be produced and additional responsive documents may be within Plaintiff's exclusive possession and control. Subject to these objections, Hall states that while serving as CFO of VBF, he traveled to Iowa from his home in Coppell, Texas, and stayed in Webster City while working for VBF, an average of twice per month.  Hall's expenses incurred in traveling to and from Iowa and meals while there were expensed to VBF. Hall did not expense accommodations to VBF during these stays because he stayed in the house that VBF had purchased in Webster City. Hall states that any expenses reimbursed or paid by VBF were submitted to and approved by VBF in accordance with company policies in place at the time. These reports and other documents further responsive to this Interrogatory are within Plaintiff's exclusive possession and control.**

**INTERROGATORY NO. 17:**  For each Request for Admission of Fact issued by VBF to you in the above-captioned matter for which you deny the matter in full or in part or issue any answer other than a full and unequivocal admission, identify all factual bases for your denial or other answer.

**ANSWER: Hall objects to this Interrogatory as seeking a narrative response that is better suited to a deposition. Hall objects to this Interrogatory to the extent it seeks**

information about other defendants of which he has no personal knowledge. Subject to these objections, Hall incorporates his responses to VBF's Requests for Admission, served April 3, 2019.

**INTERROGATORY NO. 18:**   Identify any and all opportunities that VBF had to refinance its debt from including the identity of any lenders, the identity of any documentation relating thereto, material terms (interest rate, repayment, etc.), how and when you learned of such opportunities, and whether you communicated with any representative of VBF other than yourself regarding the same (identifying the contact for the Defendant and relevant dates).

**ANSWER: Hall objects to this Interrogatory to the extent it seeks information and records in Plaintiff's exclusive possession that Hall does not have possession or control over in order to further respond. Subject to this objection, and without access to Plaintiff's books and records, Hall can confirm that VBF discussed refinancing of its debt with several parties including but not limited to Ing Bank, Rabo Bank, and Wells Fargo.**

**       In relation to Ing Bank, VBF worked with a senior agriculture banker based in Texas and his team for several months in mid-2017 as they performed due diligence and their own analyst modeling.  Their team clearly understood that VBF was pre-revenue and pre-cash flow but provided a term sheet outlining the details of a proposal to take out the Amstar debt of $42,000,000 and provide additional capital for VBF requirements.  Hall states that this information was presented to the VBF board of directors several times and but ultimately was not approved.  One of the VBF board members, Jens Haarkotter informed VBF CEO Les Wulf that Amstar's principal, Dr. Otto Happel would not agree to the Ing proposed loan (which carried an interest rate of 4.5%) because Amstar was receiving a higher rate on its loan to VBF – 9.0%. Haarkoetter flew to Dallas and met with the Ing Bank senior banker, but would not permit VBF management to attend the meeting. Hall later learned that the Ing senior banker that Haarkoetter had discouraged Ing Bank from lending to VBF because the company was pre-revenue and pre-cash flow.  Documents further responsive to this Interrogatory will be produced and additional documents may be within Plaintiff's exclusive possession and control.**

**INTERROGATORY NO. 19:**   What amount of debt did VBF carry as of these approximate dates: (a) January 1, 2015, (b) January 1, 2016, (c) January 1, 2017, and (d) January 1, 2018?

**ANSWER: Hall objects to this Interrogatory to the extent it seeks information and records in Plaintiff's exclusive possession that Hall does not have possession or control over in order to further respond. Subject to this objection, documents further responsive to this Interrogatory will be produced and additional documents may be within Plaintiff's exclusive possession and control.**

**INTERROGATORY NO. 20:**  Identify any and all entities (including trusts) in which any of the Defendants, any of the Defendants' Affiliated Entities, and/or any member of Defendants' Family has owned an beneficial or equitable interest or has or is serving as a trustee or beneficiary, or with which any Defendant has been employed or compensated as a 1099 independent contractor.

**ANSWER: Hall objects to this Interrogatory as improperly seeking personal and confidential financial information relating to him and his family, many of whom are not parties to this case. Hall further objects to this Interrogatory as seeking information that it not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.**

**INTERROGATORY NO. 21:**  Detail the following as to VBF with as much precision as possible:

> a. Total amount of equity investment; and
> b. Total amount of debt.

**ANSWER: Hall objects to this Interrogatory to the extent it seeks information and records in Plaintiff's exclusive possession that Hall does not have possession or control over in order to further respond. Subject to this objection, and without access to Plaintiff's books and records, Hall believes (but cannot confirm) that up to and through the first half of 2016 (prior to the Alder Aqua investment), VBF raised over $10M in debt and equity across over 100 shareholders and bridge loan providers. Hall believes (but cannot confirm) that VBF received approximately $42,000,000 of debt from Amstar from 2016 thought 2017.  Hall believes (but cannot confirm) that VBF received approximately $34,000,000 of equity financing in July 2016, comprised of $28,000,000 from Alder Aqua and $6,000,000 from Fish Dish, LLC. Documents further responsive to this Interrogatory will be produced and additional documents may be within Plaintiff's exclusive possession and control.**

**INTERROGATORY NO. 22:**  Identify VBF's average cash spent per month during your tenure at VBF.

**ANSWER: Hall objects to this Interrogatory to the extent it seeks information and records in Plaintiff's exclusive possession that Hall does not have possession or control over in order to further respond. Subject to this objection, and without access to Plaintiff's books and records, documents further responsive to this Interrogatory will be produced and additional documents may be within Plaintiff's exclusive possession and control.**

**INTERROGATORY NO. 23:**  Identify the month(s) and years in which VBF made a profit and the amount of profit. Otherwise, state all reasons why VBF did not make a profit for all other months including all reasons for the lack of profit (including but not limited to specific persons, specific decisions, and/or other reasons).

**ANSWER: Hall objects to this Interrogatory to the extent it seeks information and records in Plaintiff's exclusive possession that Hall does not have possession or control over in order to further respond. Subject to this objection, and without access to Plaintiff's books and records,  Hall believes (but cannot confirm) that VBF never made a profit and the several business models VBF provided to investors and lenders indicated that VBF was not projected to make a profit until some point in late 2017  once the Urban Farm was completed and fish could be raised and sold. Documents further responsive to this Interrogatory will be produced and additional documents may be within Plaintiff's exclusive possession and control.**

**INTERROGATORY NO. 24:**  Identify all companies owned and/or controlled by Defendants that closed or were shut down because of financial problems, including but not limited to, running out of money.

**ANSWER: Hall objects to this Interrogatory because it seeks information that is not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.  Hall further objects to this Interrogatory as vague and overbroad because the terms "shut down or ended because of financial problems" is undefined and subject to multiple interpretations.   Subject to these objections, Hall states that he was the CFO and director of Probex Corporation, which filed for Chapter 7  in May 2003, due to the tragic events of September 11, 2001, and that he was the CFO and director of Knight Energy Corp., an oil and gas company that filed for Chapter 11 in April 2009, but he did not have any ownership or controlling interest in either entity.**

Dated:  April 9, 2019                              Respectfully submitted,

Underwood Perkins, P.C.


  _/s/ Kimberly D. Annello_____
Kimberly D. Annello
State Bar No. 24093704
Two Lincoln Centre
5420 LBJ Freeway, Suite 1900
Dallas, Texas 75240
Telephone:     (972) 661-5114

Facsimile:       (972) 661-5691
Email: kannello@uplawtx.com

Attorney for Defendants

## BRUCE A. HALL'S
## DECLARATION UNDER PENALTY OF PERJURY

I, BRUCE A. HALL, state and declare,

      My name is Bruce A. Hall, my date of birth is _____,

and my address is_____,

United States of America. I have read the forgoing answers to Interrogatories and I declare

under penalty of perjury that those answers are true and correct.

Executed in _____ County, State of Texas, on the _____ day    of

_____ , 2019.


                              _____

                              Bruce A. Hall

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument was

served upon all counsel of record, as listed below, via e-serve and/or email, on this 9th day of

April, 2019.

Robert H. Lang
Renato Mariotti
Caroline Pritikin
Eileen Boyle Perich
Thompson Coburn LLP
55 East Monroe, 37th Floor
Chicago, IL 60603
rlang@thompsoncoburn.com
rmariotti@thompsoncoburn.com
cpritikin@thompsoncoburn.com
eboyleperich@thompsoncoburn.com


Matthew E. Laughlin AT0004515
Holly M. Logan AT0004710
Katelynn T. McCollough  AT0013443
DAVIS, BROWN, KOEHN, SHORS &
ROBERTS, P.C.
215 10th Street, Suite 1300
Des Moines, Iowa  50309
mattlaughlin@davisbrownlaw.com
hollylogan@davisbrownlaw.com
katelynnmccollough@davisbrown.com


                          __/s/ Kimberly D. Annello_____
                          Kimberly D. Annello

EXHIBIT G

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | |
|---|---|
| **VEROBLUE FARMS USA, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Case No. 3:18-cv-03047-LTS-MAR** |
| **v.** ) | |
| ) | |
| **LESLIE A. WULF, BRUCE A. HALL,** ) | |
| **JAMES REA, JOHN E. REA, AND** ) | |
| **KEITH DRIVER,** ) | |
| ) | |
| **Defendants.** | |

---

**DEFENDANT JAMES REA'S RESPONSES TO**
**PLAINTIFF'S FIRST SET OF INTERROGATORIES**

---

COMES NOW, Defendant, James Rea ("Rea"), in the above-entitled and numbered cause, and submits these responses to Plaintiffs' First Set of Interrogatories.

**I.**
**JAMES REA'S RESPONSES TO FIRST SET OF INTERROGATORIES**

**INTERROGATORY NO. 1**:  Identify all of Defendants' Affiliated Entities, including the identity of all shareholders, owners, managers, and/or directors.

**ANSWER: J. Rea objects to this Interrogatory to the extent it seeks information about other defendants of which he has no personal knowledge.  J. Rea further objects to this Interrogatory because it seeks information that it not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.**

**INTERROGATORY NO. 2:**  Identify all banks or other financial institutions to which you, Defendants' Affiliated Entities, or Defendants' Family have been named an account holder, had rights to withdraw funds, and/or did withdraw funds, including the account numbers, name of account holder(s), dates account has been held, and type of account.

**ANSWER: J. Rea objects to this Interrogatory to the extent it seeks information about other defendants of which he has no personal knowledge.  J. Rea also objects to this**

Interrogatory as improperly seeking personal and confidential financial information relating to him and his family, many of whom are not parties to this case. J. Rea further objects to this Interrogatory because it seeks information that it not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.

**INTERROGATORY NO. 3:**   Identify all real estate owned by you, any member of Defendants' Family, and/or any of Defendants' Affiliated Entities, directly or indirectly (i.e. through a trust or other entity) by address, purchase price, listed sales price, and identity of lenders.

**ANSWER: J. Rea objects to this Interrogatory to the extent it seeks information about other defendants of which he has no personal knowledge.  J. Rea also objects to this Interrogatory as improperly seeking personal and confidential financial information relating to him and his family, many of whom are not parties to this case. J. Rea further objects to this Interrogatory because it seeks information that it not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.**

**INTERROGATORY NO. 4:**   Identify all persons that have or have had an ownership interest in Opposing Flows Aquaculture, Inc. ("OFA") and OFA related entities.

**ANSWER: Ted Rea registered Opposing Flows Aquaculture with the state of Texas in 2016 to hold patents and issue licenses for the opposing flow technology acquired from Rick Sherriff.  When Alder Aqua invested in VBF in July 2016, Alder Aqua acquired ownership of those patents and technology and OFA ceased any operations.  OFA never issued shares to anyone and did not generate revenue.**

**INTERROGATORY NO. 5:**   Identify all to payments received by you from any Sheriff Entities.

**ANSWER: J. Rea objects to this Interrogatory because it seeks information that it not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.  Subject to that objection, none.**

**INTERROGATORY NO. 6:**   Identify all of your living expenses, including but not limited to, rent, mortgage, other housing, utilities, and/or food, paid in any part by VBF, stating the identity of the relevant vendor(s), amount(s), date(s) of payments, and reason that VBF paid such amount.

**ANSWER: J. Rea objects to this Interrogatory as improperly seeking personal and confidential financial information relating to him and his family, many of whom are not parties to this case.  J. Rea further objects to this Interrogatory as seeking information that it not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.   J. Rea further objects to this Interrogatory to the extent it seeks information and records in Plaintiff's exclusive possession that he does not have possession or control over or access to them to further respond. Documents further responsive to this Interrogatory will be produced and additional responsive documents may be within Plaintiff's exclusive possession and control. Subject to these objections, J. Rea states that while serving as an officer of VBF, he traveled to Iowa from his home in Plano, Texas, and stayed in Webster City while working for VBF, an average of 3-4 days per week.   J. Rea's expenses incurred in traveling to and from Iowa and meals while there were expensed to VBF. J. Rea did not expense accommodations to VBF during these stays because he stayed in the house that VBF had purchased in Webster City. J. Rea states that any expenses reimbursed or paid by VBF were submitted to and approved by VBF in accordance with company policies in place at the time. These reports and other documents further responsive to this Interrogatory are within Plaintiff's exclusive possession and control.**

**INTERROGATORY NO. 7:**  Explain why you choose to move out of the VBF house located in Webster City Iowa and to a home in Ames, Iowa, whether you expensed any living expenses at the Ames home to VBF, and if so, why.

**ANSWER:  J. Rea objects to this interrogatory to the extent it calls for a narrative response that is better suited for a deposition.  Subject to that objection, J. Rea resided at a house located at 1507 Wilson in Webster City, Iowa ("Wilson House") while working on construction of a farming facility for VBF started in October 2016. Shortly after VBF acquired the Wilson House, J. Rea provided furniture that he already owned (and was using in his home in Dallas) to furnish the Wilson House, with the approval of VBF officers. J. Rea was never reimbursed or paid for the furniture in the Wilson House. Several other VBF employees lived in the Wilson House at that time. Before this, J. Rea had been flying back and forth between Dallas and Des Moines weekly for twelve months at a cost of $2800-3200 per month to VBF.**

**In the summer of 2017, J. Rea began working on another construction project for VBF in Webster City (Barns 6 & 7).  He already had committed to move his fiancée and her children to Ames for the 2017-2018 school year. Since other workers and employees were living in the Wilson House at that time, J. Rea asked VBF officers for permission to rent the home located at 2727 Kingston in Ames from Mr. Chi Ho Chester Lo for him and his family for the school year ("Kingston House"), and VBF approved this expense.**

**J. Rea informed VBF that he would need to retrieve his furniture from the Wilson House to use in the Kingston House. VBF officers did not want him to move the furniture and instead told J. Rea to purchase new furniture for the Kingston House and**

VBF would reimburse him for it.  Any expenses reimbursed or paid by VBF related to this house were submitted to and approved by VBF in accordance with company policies in place at the time. Documents further responsive to this Interrogatory will be produced and may be within Plaintiff's exclusive possession and control.

**INTERROGATORY NO. 8:**  Identify all persons you have ever known to stay overnight at the house located at 1507 Wilson Avenue in Webster City, Iowa.

**ANSWER: J. Rea objects to this Interrogatory to the extent it seeks information about other persons of which he has no personal knowledge. Subject to these objections, Mr. Rea states that the following individuals may have stayed to the Wilson Avenue house in Webster City: i) Craig Drucker with Dean Snyder Construction – who was working on VBF projects and had been billing VBF for other accommodations; ii)  various VBF Construction workers, iii) Les Wulf, Bruce Hall, James Rea and Ted Rea all stayed at the house on multiple occasions when working at VBF's facility in Webster City because it was less expensive than multiple hotel rooms or renting an apartment; iv) Jens Harkoetter and Otto Happel also stayed at the house during their visits to VBF's facility in Webster City.**

**INTERROGATORY NO. 9:**  Identify all contractors, VBF employees, and professionals (including, but not limited to, architects) who performed any work or other services regarding the Wulf Lake House or the waste treatment plant; the amounts paid to such persons or entities; the identity of each source of payment; and, specifically whether VBF funded any such payments (and if so, list each payment funded in VBF in whole or in part by amount, date, and payee).

**ANSWER: J. Rea objects to this Interrogatory as seeking information that it not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter. Subject to this Objection, J. Rea states that no contractors engaged by VBF worked on reconstruction of Wulf's home Texas and VBF did not fund any of the work or materials used on Wulf's home. Documents further responsive to this Interrogatory will be produced and may be within Plaintiff's exclusive possession and control.**

**INTERROGATORY NO. 10:**  Identify any and all vehicles purchased or acquired by any of the Defendants during your tenure at VBF.

**ANSWER: J. Rea objects to this Interrogatory to the extent it seeks information about other persons of which he has no personal knowledge. Rea objects to this Interrogatory to the extent it seeks information about other persons of which he has no personal knowledge Subject to these objections, J. Rea states that during his tenure at VBF, he used a Ford Explorer while working at VBF's facilities in Webster City.**

**INTERROGATORY NO. 11:**  Identify the person or people who authorized Tracy Arbanas to perform services in relation to the Wulf Lake House including but not limited to the date of that authorization and the scope and, identify any duties that Arbanas had while the Wulf Lake House was being rebuilt that were not related to the Wulf Lake House.

**ANSWER: J. Rea objects to this Interrogatory as seeking information that it not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter. Subject to this objection, J. Rea authorized Ms. Arbanas to supervise work on Wulf's primary residence, since he was traveling and in Iowa tending to his duties as VBF's CEO. Documents further responsive to this Interrogatory will be produced and may be within Plaintiff's exclusive possession and control.**

**INTERROGATORY NO. 12:**   Identify all amounts (by date, amount, and reason for payment) that Defendants received from VBF through compensation, stock (including the value of stock at the time of issuance), any kind of payment, reimbursement of expenses or otherwise and explain the basis of said amounts.

**ANSWER:  J. Rea objects to this Interrogatory to the extent it seeks information about other defendants of which he has no personal knowledge.  J. Rea also objects to this Interrogatory as improperly seeking personal and confidential financial information relating to him and his family, many of whom are not parties to this case. J. Rea further objects to this Interrogatory to the extent it seeks information and records in Plaintiff's exclusive possession that J. Rea does not have possession or control over in order to further respond.  Subject to these objections, J. Rea was paid $25,000.00 per month by VBF from October 2014 through July 2016 as a consulting fee, pursuant to the Management Services Agreement executed with VBF, RGI Dragon, LLC, and VeroBlue Farms, Inc. (Canada) (VBF's parent company) on October 1, 2014. J. Rea was paid $33,333 per month in salary by VBF July 2016 through December 2017, pursuant to his Employment Agreement dated July 1, 2016.  J. Rea received 3,600,000 shares of stock in VeroBlue Farms, Inc. (Canada) at a price of $.000001 in October 2014 and he was granted options to purchase 1,000 shares of common stock in VBF at a purchase price of $1.00 per share pursuant to a Stock Option Agreement between him and VBF dated July 8, 2016.  Documents further responsive to this Interrogatory will be produced and may be within Plaintiff's exclusive possession and control.**

**INTERROGATORY NO. 13:**   Explain VBF's partnership with Iowa State University, including, who was involved, when the partnership began, and the work done during the duration of this partnership.

**ANSWER: J. Rea further objects to this Interrogatory to the extent it seeks information and records in Plaintiff's exclusive possession that J. Rea does not have possession or control over in order to further respond.  Subject to these objections, J. Rea lacks knowledge or information sufficient to respond to this Interrogatory.**

**INTERROGATORY NO. 14:**  Identify the dates that Jackson Walker LLP has represented any of the Defendants, any of the Defendants' Affiliated Entities, and/or any members of the Defendants' Family together with the general nature of such representation and dates of any such representation.

**ANSWER: J. Rea objects to this Interrogatory to the extent it seeks information about other persons of which he has no personal knowledge. Subject to these objections and answering for himself, J. Rea states that Jackson Walker LLP has not represented him personally, except possibly in his capacity as an officer of VBF and in Jackson Walker's capacity as corporate counsel to VBF, nor has Jackson Walker represented any of his entities or any members of his family.**

**INTERROGATORY NO. 15:**  Identify the dates that Cassels Brock & Blackwell LLP has represented any of the Defendants, any of the Defendants' Affiliated Entities, and/or any members of the Defendants' Family together with the general nature of such representation and dates of any such representation.

**ANSWER: J. Rea objects to this Interrogatory to the extent it seeks information about other persons of which he has no personal knowledge. Subject to these objections and answering for himself, Cassels Brock & Blackwell did not represent J. Rea personally or any of his entities or members of his family.**

**INTERROGATORY NO. 16:**  Identify any and all Communications between any one of the Defendants with Jackson Walker LLP and/or Cassels Brock & Blackwell LLP since June 1, 2018.

**ANSWER: J. Rea objects to this Interrogatory to the extent it seeks information about other persons of which he has no personal knowledge. Subject to these objections and answering for himself, none.**

**INTERROGATORY NO. 17:**  Identify all Communications between any member of the Nelson Family (Grace Nelson, Mark Nelson, Jeff Nelson, Korrine Nelson, and/or Jerita Nelson) or Randy Chalfant, on the one hand, and Defendants or Defendants' counsel on the other hand.

**ANSWER: J. Rea objects to this Interrogatory to the extent it seeks communications subject to attorney-client privilege, work product protection, and/or common interest privilege.  J. Rea also object to this Interrogatory because it seeks information that is not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.**

**INTERROGATORY NO. 18:**   Identify all Communications between Defendants or Defendants' counsel on the one hand, and Kenneth Lockard, Beecher, Field, Walker, Morris, Hoffman & Johnson, P.C., FishDish LLC, Goldstein & McClintock LLP, or Horwood Marcus & Berk Chartered, on the other hand.

**ANSWER: J. Rea objects to this Interrogatory to the extent it seeks communications subject to attorney-client privilege, work product protection, and/or common interest privilege.  J. Rea also object to this Interrogatory because it seeks information that is not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.**

**INTERROGATORY NO. 19:**   Identify all investigations, surveillance, or other formal or informal observations relating to VBF in any way of which Defendants are aware, including but not limited to recordings, photographs, or any other information since the Defendants' terminations through present, and identify who conducted such investigations.

**ANSWER: J. Rea objects to this Interrogatory to the extent it seeks information about other persons of which he has no personal knowledge. Subject to these objections and answering for himself, none.**

**INTERROGATORY NO. 20:**  State you and your spouse's current personal net worth, as well as you and your spouses personal net worth as of December 31, 2018 and December 31, 2017.

**ANSWER: J. Rea objects to this Interrogatory as improperly seeking personal and confidential financial information relating to him and his family, many of whom are not parties to this case. J. Rea further objects to this Interrogatory as seeking information that it not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.**

**INTERROGATORY NO. 21:**  With regards to your trips to the State of Iowa state your mode of travel, date of travel, reason for travel, identity of persons with whom you traveled and identity of any source of funds for such travel.

**ANSWER: J. Rea objects to this Interrogatory as improperly seeking personal and confidential financial information relating to him and his family, many of whom are not parties to this case.  J. Rea further objects to this Interrogatory as seeking information that it not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.  J. Rea further objects to this Interrogatory to the extent it seeks information and records in Plaintiff's exclusive possession that he does not have possession or control over or access to them to further respond. Documents further responsive to this Interrogatory will be produced and additional responsive documents may be within Plaintiff's exclusive possession and control. Subject to these objections, J. Rea states that while serving as an officer of VBF, he traveled to Iowa from his home in Plano, Texas, and stayed in Webster City while working for VBF, an average of 3-4 days per week.  J. Rea's expenses incurred in traveling to and from Iowa and meals while there were expensed to VBF. J. Rea did not expense accommodations to VBF during these stays because he stayed in the house that VBF had purchased in Webster City. J. Rea states that any expenses reimbursed or paid by VBF were submitted to and approved by VBF in accordance with company policies in place at the time. These reports and other documents further responsive to this Interrogatory are within Plaintiff's exclusive possession and control.**

**INTERROGATORY NO. 22:**  For each Request for Admission of Fact issued by VBF to you in the above-captioned matter for which you deny the matter in full or in part or issue any answer other than a full and unequivocal admission, identify all factual bases for your denial or other answer.

**ANSWER: J. Rea objects to this Interrogatory as seeking a narrative response that is better suited to a deposition. J. Rea objects to this Interrogatory to the extent it seeks information about other defendants of which he has no personal knowledge. Subject to these objections, J. Rea incorporates his responses to VBF's Requests for Admission, served April 3, 2019.**

**INTERROGATORY NO. 23:**  Identify any and all claims that have been made against any Defendant, any of Defendants' Affiliated Entities, and/or any member of Defendants' Family for money or other legal relief, by identity of claimant, identity of counsel for all parties, nature of claim, relief sought (including dollar terms), captions or case/claim numbers, status, and nature of resolution, if any.

**ANSWER: J. Rea objects to this Interrogatory to the extent it seeks information about other defendants of which he has no personal knowledge.  J. Rea also objects to this Interrogatory as improperly seeking personal and confidential financial information relating to him and his family, many of whom are not parties to this case. J. Rea further objects to this Interrogatory because it seeks information that it not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or**

**defenses raised in this matter.  Subject to these objections, J. Rea was named as a defendant in a 2012 lawsuit related to breach of an office lease.**

**INTERROGATORY NO. 24:**  Identify any and all times where any Defendant has provided testimony at a deposition, trial, other evidentiary hearing, arbitration, or any other type of adversarial proceeding by captions or case/claim numbers, status, nature of case, nature of resolution (if any), and the identity of anyone who possesses or controls a transcript of the same.

**ANSWER: J. Rea objects to this Interrogatory to the extent it seeks information about other defendants of which he has no personal knowledge.  J. Rea also objects to this Interrogatory as improperly seeking personal and confidential financial information relating to him and his family, many of whom are not parties to this case. J. Rea further objects to this Interrogatory because it seeks information that it not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.  Subject to these objections, none.**

**INTERROGATORY NO. 25:**  Identify the identity of any persons or entities who performed information technology services for VBF and their dates of employment or contracting.

**ANSWER: J. Rea further objects to this Interrogatory to the extent it seeks information and records in Plaintiff's exclusive possession that J. Rea does not have possession or control over in order to further respond.  Subject to these objections, J. Rea cannot recall every service provider who may have performed information technology services for VBF during his tenure. Documents further responsive to this Interrogatory may be within Plaintiff's exclusive possession and control.**

Date:  April 9, 2019                              Respectfully submitted,

                                                            Underwood Perkins, P.C.


                                                             */s/ Kimberly D. Annello*
                                                            Kimberly D. Annello
                                                            State Bar No. 24093704
                                                            Two Lincoln Centre
                                                            5420 LBJ Freeway, Suite 1900
                                                            Dallas, Texas 75240
                                                            Telephone:     (972) 661-5114
                                                            Facsimile:     (972) 661-5691
                                                            Email: kannello@uplawtx.com

                                                            *Attorney for Defendants*

**JAMES REA's**
**DECLARATION UNDER PENALTY OF PERJURY**

I, JAMES REA, state and declare,

     My name is James Rea, my date of birth is _____,   and   my

address is_____,   United

States of America. I have read the forgoing answers to Interrogatories and I declare under

penalty of perjury that those answers are true and correct.

Executed in _____ County, State of Texas, on the _____ day    of

_____, 2019.


                            _____

                            James Rea

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing instrument was

served upon all counsel of record, as listed below, via e-serve and/or email, on this 9th day

April 2019.

      Robert H. Lang
      Renato Mariotti
      Caroline Pritikin
      Eileen Boyle Perich
      Thompson Coburn LLP
      55 East Monroe, 37th Floor
      Chicago, IL 60603
      rlang@thompsoncoburn.com
      rmariotti@thompsoncoburn.com
      cpritikin@thompsoncoburn.com
      eboyleperich@thompsoncoburn.com


      Matthew E. Laughlin AT0004515
      Holly M. Logan AT0004710
      Katelynn T. McCollough  AT0013443
      DAVIS, BROWN, KOEHN, SHORS &
      ROBERTS, P.C.
      215 10th Street, Suite 1300
      Des Moines, Iowa  50309
      mattlaughlin@davisbrownlaw.com
      hollylogan@davisbrownlaw.com
      katelynnmccollough@davisbrown.com


                          _/s/ Kimberly D. Annello_____
                          Kimberly D. Annello

# EXHIBIT H

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **VEROBLUE FARMS USA, INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | )   **Case No. 3:19-CV-00764-L** |
| **v.** | ) |
| | ) |
| **LESLIE A. WULF, BRUCE A. HALL,** | ) |
| **JAMES REA, JOHN E. REA, AND** | ) |
| **KEITH DRIVER,** | ) |
| | ) |
| **Defendants.** | |

**DEFENDANT JOHN E. REA's RESPONSES TO**
**PLAINTIFF'S FIRST SET OF INTERROGATORIES**

COMES NOW, Defendant, John E. Rea ("Ted"), in the above-entitled and numbered cause, and submits these responses to Plaintiffs' First Set of Interrogatories.

**I.**
**TED REA'S RESPONSES TO FIRST SET OF INTERROGATORIES**

**INTERROGATORY NO. 1**:  Identify all of Defendants' Affiliated Entities, including the identity of all shareholders, owners, managers, and/or directors.

**ANSWER: T. Rea objects to this Interrogatory to the extent it seeks information about other defendants of which he has no personal knowledge.  T. Rea further objects to this Interrogatory because it seeks information that it not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.**

**INTERROGATORY NO. 2**:  Identify all banks or other financial institutions to which you, Defendants' Affiliated Entities, or Defendants' Family have been named an account holder, had rights to withdraw funds, and/or did withdraw funds, including the account numbers, name of account holder(s), dates account has been held, and type of account.

**ANSWER: T. Rea objects to this Interrogatory to the extent it seeks information about other defendants of which he has no personal knowledge.  T. Rea also objects to this Interrogatory as improperly seeking personal and confidential financial information**

relating to him and his family, many of whom are not parties to this case. T. Rea further objects to this Interrogatory because it seeks information that it not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.

**INTERROGATORY NO. 3**:   Identify all real estate owned by you, any member of Defendants' Family, and/or any of Defendants' Affiliated Entities, directly or indirectly (i.e. through a trust or other entity) by address, purchase price, listed sales price, and identity of lenders.

**ANSWER: T. Rea objects to this Interrogatory to the extent it seeks information about other defendants of which he has no personal knowledge.  T. Rea also objects to this Interrogatory as improperly seeking personal and confidential financial information relating to him and his family, many of whom are not parties to this case. T. Rea further objects to this Interrogatory because it seeks information that is not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.**

**INTERROGATORY NO. 4**:   Identify all to payments received by you from any Sheriff Entities.

**ANSWER: T. Rea further objects to this Interrogatory because it seeks information that it not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.  Subject to that objection, T. Rea has not received any payments from the Sheriff Entities.  Sheriff did loan funds to Bajjer to pay off a loan on behalf of SSi to Green Bank in November 2016.  Bajjer carries a note receivable from SSi for this loan payoff and Bajjer owes Sheriff for this payoff, but T. Rea did not receive any of these funds.**

**INTERROGATORY NO. 5**:  Identify all of your living expenses, including but not limited to, rent, mortgage, other housing, utilities, and/or food, paid in any part by VBF, stating the identity of the relevant vendor(s), amount(s), date(s) of payments, and reason that VBF paid such amount.

**ANSWER: T. Rea objects to this Interrogatory as improperly seeking personal and confidential financial information relating to him and his family, many of whom are not parties to this case.  T. Rea further objects to this Interrogatory as seeking information that it not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.  T. Rea further objects to this Interrogatory to the extent it seeks information and records in Plaintiff's exclusive possession that he does not have possession or control over or access to them to further respond. Documents**

further responsive to this Interrogatory will be produced and additional responsive documents may be within Plaintiff's exclusive possession and control. Subject to these objections, T. Rea states that while serving as COO of VBF, he traveled to Iowa from his home in Plano, Texas, and stayed in Webster City while working for VBF, an average of 3-4 days per week.  T. Rea's expenses incurred in traveling to and from Iowa and meals while there were expensed to VBF. T. Rea did not expense accommodations to VBF during these stays because he stayed in the house that VBF had purchased in Webster City. T. Rea states that any expenses reimbursed or paid by VBF were submitted to and approved by VBF in accordance with company policies in place at the time. These reports and other documents further responsive to this Interrogatory are within Plaintiff's exclusive possession and control.

**INTERROGATORY NO. 6**:  Identify all legal or beneficial owners of, or managers, of BAJJER LLC and BAJJER II, LLC and all transfers of VBF shares to and from BAJJER, LLC and/or BAJJER II, LLC.

**ANSWER: T. Rea objects to this Interrogatory because it seeks information that it not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.  T. Rea further objects to this Interrogatory to the extent it seeks information and records in Plaintiff's exclusive possession that he does not have possession or control over in order them to further respond.  Subject to this objection, the beneficial owners of Bajjer LLC are:  BHDH Family, LP, LAW Holdings, LLC, and J2 Family, LP, equally.  Bajjer held shares in VBF in trust for Kelson Capital Inc. The beneficial owners of Bajjer II, LLC are BHDH Family, LP and J2 Family LP. Documents relating to the holding of VBF shares in trust by Bajjer will be produced and additional responsive documents may be within Plaintiff's exclusive possession and control.**

**INTERROGATORY NO. 7**:  Explain any and all payments made from VBF to American Growth Funding and identify why such payments were made, including but not limited to, the documentation supporting said payments.

**ANSWER:  T. Rea objects to this Interrogatory to the extent it seeks information and records in Plaintiff's exclusive possession that he does not have possession or control over in order them to further respond. Subject to this objection, T. Rea states that American Growth Funding ("AGF") was initially owned by Bajjer but was sold to Juris Capital on January 2, 2010.   In June 2015, AGF loaned Bajjer $200,000, which was to be used for VBF's operating costs.  Since AGF did not have a prior relationship with VBF, it would not loan the money directly to VBF, but made the loan to Bajjer.  Bajjer then loaned the funds to VBF.  AGF is a hard money lender and thus, by July 2016, the loan balance between AGF and Bajjer was $375,000.   On or about July 8, 2016, pursuant to an agreement between Alder Aqua's counsel, Davis Graham & Stubbs ("DGS") and VBF, the loan from AGF to Bajjer, in the amount of $375,000 was paid out of the funds provided**

to VBF by Alder Aqua at closing of Alder Aqua's investment and Amstar Group's loan to VBF.  This repayment was disclosed and approved by Alder Aqua, Amstar, and DGS in a source and uses of funds statement provided on July 8, 2016, which will be produced. Documents further responsive to this Interrogatory will be produced and additional documents may be within Plaintiff's exclusive possession and control.

**INTERROGATORY NO. 8**:  Identify all Documents relating to VBF's purchase of any tractor-trailers and identify the date of each purchase; the amount paid for each tractor-trailer, the reason for each purchase; the use of each tractor-trailer after purchase; and any other equitable or monetary benefits received by any of the Defendants as a result of any of the purchases.

**ANSWER: T. Rea objects to this Interrogatory to the extent it seeks information and records in Plaintiff's exclusive possession that he does not have possession or control over in order them to further respond. Subject to this objection, the purchase of six tractor trailers was presented to, approved by, and directed by VBF's Board of Directors in two separate board resolutions. As set forth in the investment analyses presented to VBF's Board, the tractor trailers were intended to: i) pick up fry flown from Australia to Chicago, ii) deliver fingerlings from each nursery to the grow out farms, iii) move live fish to both the east and west coast Asian markets; iv) move harvested, dead on ice fish to the processing facility; v) move finished, processed and boxed fish to distribution points. The trucks and/or trailers were specially equipped with heating/cooling/oxygen as needed to perform these tasks. VBF's management believed that purchasing these trucks would address customer service issues resulting from delivery of dead fish, would reduce the risk of brining disease into the VBF farms and would control costs, distribution and operating margins as the company expanded its operations.  Neither T. Rea nor any of the Defendants received equitable or monetary benefits as a result of these purchases. Documents further responsive to this Interrogatory will be produced and may be within Plaintiff's exclusive possession and control.**

**INTERROGATORY NO. 9**:  Identify all amounts (by date, amount, and reason for payment) that Defendants or Defendants' Family received directly or indirectly from VBF through compensation, stock (including the value of stock at the time of issuance), any kind of payment or reimbursement of expenses or otherwise and explain the basis of said amounts.

**ANSWER:  T. Rea objects to this Interrogatory to the extent it seeks information about other defendants of which he has no personal knowledge.  T. Rea also objects to this Interrogatory as improperly seeking personal and confidential financial information relating to him and his family, many of whom are not parties to this case. T. Rea further objects to this Interrogatory to the extent it seeks information and records in Plaintiff's exclusive possession that he does not have possession or control over or access to them to further respond.  Subject to these objections, T. Rea was paid $25,000.00 per month by VBF from October 2014 through July 2016 as a consulting fee, pursuant to the Management Services Agreement executed with VBF, J2CapCo, LLC and VeroBlue Farms, Inc. (Canada) (VBF's parent company) on October 1, 2014. T. Rea was paid**

**$33,333 per month in salary by VBF July 2016 through December 2017, pursuant to his Employment Agreement dated July 1, 2016.  T. Rea's family entity purchased 3,300,000 shares of founder's stock in VeroBlue Farms, Inc. (Canada) at $.000001 per share in October 2014 and he was granted options to purchase 1,000,000 shares of common stock at $1.00 per share in VBF pursuant to a Stock Option Agreement between him and VBF dated July 8, 2016.  Documents further responsive to this Interrogatory will be produced and additional responsive documents may be within Plaintiff's exclusive possession and control.**

**INTERROGATORY NO. 10**:  Identify all documents or other information that VBF provided to the creator of a July 2, 2015 document titled "Technical Assessment of Barramundi Production at VeroBlue Farms with Focus on Iowa's First" attached as **Exhibit 1**, together with the identity of any VBF employees or other representatives who provided such data.

**ANSWER:  T. Rea objects to this Interrogatory to the extent it asks him to identify sources of information in document that he did not author.  Subject to this objection, T. Rea states that he and other Defendants reviewed several versions of this presentation but that he cannot recall what information or documents maybe have been provided, if any, to the author.**

**INTERROGATORY NO. 11**:  Identify all Defendants' representations relating to VBF's annual production by weight and by number of fishes.

**ANSWER: T. Rea objects to this Interrogatory to the extent it seeks information about other defendants of which he has no personal knowledge.  T. Rea further objects to this Interrogatory as vague and overbroad to the extent it fails to identify any specific representation, made to any person, at any particular time. Subject to these objections, documents responsive to this Interrogatory will be produced and other responsive documents may be in Plaintiff's exclusive possession and/or control.**

**INTERROGATORY NO. 12**:  Identify all Defendants' representations relating to VBF's value.

**ANSWER: T. Rea objects to this Interrogatory to the extent it seeks information about other defendants of which he has no personal knowledge.  T. Rea further objects to this Interrogatory as vague and overbroad to the extent it fails to identify any specific representation, made to any person, at any particular time. Subject to these objections, documents responsive to this Interrogatory will be produced and other responsive documents may be in Plaintiff's exclusive possession and/or control.**

**INTERROGATORY NO. 13**:  Identify when, by number of weeks, a barramundi fish (both live haul and dead on ice) would be ready for market including the starting weight of the fish and the weight at the time the fish is ready for market.

**ANSWER:  T. Rea objects to this interrogatory to the extent it is posing a hypothetical and is not seeking to discover facts or other information. T. Rea further objects to this interrogatory as vague and overbroad to the extent "ready for market" is undefined and subject to interpretation.  Subject to these objections, T. Rea has no personal knowledge of growth rates and as COO of VBF, relied on the growth rates presented by Rick Sheriff, Mark Nelson and Mainstream Aquaculture, the provider of the barramundi fry grown by VBF**

**INTERROGATORY NO. 14**:  Explain how VBF intended to profit off its contemplated Grower Model.

**ANSWER:  T. Rea objects to this Interrogatory to the extent it asks him to attest to the state of mind of others and the collective decision of VBF.  T. Rea also objects to this Interrogatory as vague and overbroad as "profit off of" is undefined.  Subject to these Objections, in 2016, T. Rea, as director of business development of VBF, expected that VBF would use the Grower Model as follows: Rick Sheriff had a patent on the opposing flow aquaculture fish tank technology.  VBF had entered into a global distribution agreement with Mr. Sheriff.  Pursuant to that agreement, VBF intended to contract with independent farmers ("Growers") to license the OFA technology to them. These Growers would build and own the fish tank farm properties.  VBF would sell fry to the Growers who would then grow them into full size fish for sale by VBF using the OFA technology.   VBF chose to pursue the Grower Model because it would require less capital from VBF, since the Growers would be building the farms and tank systems, instead of VBF building and operating multiple tank facilities.  However, once Alder Aqua invested in VBF and purchased the OFA patents from Mr. Sheriff, Dr. Happel and other Alder Aqua representatives became concerned over Growers having access to the patented OFA technology.  Based on this concern, and Dr. Happel's general aversion to publicity, Alder Aqua, as the lead shareholder, directed VBF to pursue a corporate owned model for the fish tanks and farming.  This significantly changed the structure of financing and operations for VBF.   Documents responsive to this Interrogatory will be produced and other responsive documents may be in Plaintiff's exclusive possession and/or control.**

**INTERROGATORY NO. 15**:  Identify all Bio-plans, business plans and projections relating to the Grower Model, including the author, the date created, and who received each plan or projection.

**ANSWER: T. Rea objects to this Interrogatory to the extent it seeks information about plans or projections prepared by anyone, of which he may have no personal knowledge. T. Rea objects to this Interrogatory to the extent it asks him to attest to the state of mind**

of others and the collective decision of VBF.  T. Rea further objects to this Interrogatory to the extent it seeks information and records in Plaintiff's exclusive possession that he does not have possession or control over or access to.  Subject to these objections, T. Rea states that he cannot identify every bioplan, business plan or projection created during his tenure at VBF, but that any such plans or projections could have been prepared by him, anyone of the other Defendants, Matt Clarken, Cameron Robinson, Rick Sheriff and/or Mark Nelson.

**INTERROGATORY NO. 16**:  Identify all Bio-plans, business plans and projections relating to the urban farm model, including the author, the date created, and who received each plan or projection.

**ANSWER: T. Rea objects to this Interrogatory to the extent it seeks information about plans or projections prepared by anyone, of which he may have no personal knowledge. T. Rea objects to this Interrogatory to the extent it asks him to attest to the state of mind of others and the collective decision of VBF.  T. rea further objects to this Interrogatory to the extent it seeks information and records in Plaintiff's exclusive possession that he does not have possession or control over or access to. Subject to these objections, T. Rea states that he cannot identify every bioplan, business plan or projection created during his tenure at VBF, but that any such plans or projections could have been prepared by him, anyone of the other Defendants, Matt Clarken, Cameron Robinson, Rick Sheriff and/or Mark Nelson.**

**INTERROGATORY NO. 17**:   Identify all professionals, including, but not limited to, attorneys, accountants, insurance brokers, website developers, website hosts, media consultants, stockbrokers, financial planners, fish biologists, universities, independent aquaculture specialists and/or consultants, who have performed any services for VBF.

**ANSWER:    T. Rea objects to this Interrogatory to the extent it asks him to attest to the collective decisions of VBF.  T. rea further objects to this Interrogatory to the extent it seeks information and records in Plaintiff's exclusive possession that he does not have possession or control over or access to.  Subject to these objections, T. Rea cannot recall every service provider who may have performed services for VBF during his tenure. Documents further responsive to this Interrogatory may be within Plaintiff's exclusive possession and control.**

**INTERROGATORY NO. 18**:  State you and your spouse's current personal net worth, as well as you and your spouse's personal net worth as of December 31, 2018 and December 31, 2017.

**ANSWER: T. Rea objects to this Interrogatory as improperly seeking personal and confidential financial information relating to him and his family, many of whom are not parties to this case. T. Rea further objects to this Interrogatory as seeking information**

that it not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.

**INTERROGATORY NO. 19**:  With regards to your trips to the State of Iowa state your mode of travel, date of travel, reason for travel, identity of persons with whom you traveled and identity of any source of funds for such travel.

**ANSWER:  T. Rea objects to this Interrogatory as vague and overbroad to the extent is not limited in time in any way. T. Rea further objects to this Interrogatory as seeking information that it not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.  Subject to these objections, T. Rea states that while serving as COO of VBF, he traveled to Iowa from his home in Plano, Texas, an average of 3-4 days/week.  T. Rea's expenses incurred in traveling to and from Iowa and meals while there were expensed to VBF. T. Rea did not expense accommodations to VBF during these stays because he stayed in the house that VBF had purchased in Webster City.  T. Rea states that any expenses reimbursed or paid by VBF were submitted to and approved by VBF in accordance with company policies in place at the time. Documents further responsive to this Interrogatory will be produced and may be within Plaintiff's exclusive possession and control.**

**INTERROGATORY NO. 20**:  For each Request for Admission of Fact issued by VBF to you in the above captioned matter for which you deny the matter in full or in part or issue any answer other than a full and unequivocal admission, identify all factual bases for your denial or other answer.

**ANSWER: T. Rea objects to this Interrogatory as seeking a narrative response that is better suited to a deposition. T. Rea objects to this Interrogatory to the extent it seeks information about other defendants of which he has no personal knowledge. Subject to these objections, T. Rea incorporates his responses to VBF's Requests for Admission, served April 3, 2019.**

**INTERROGATORY NO. 21**:  State the date, identity of participants, location, and substance of any presentation by any Defendant regarding VBF to any potential investor, potential lender, actual lender, or shareholder of VBF.

**ANSWER:  T. Rea objects to this Interrogatory as seeking a narrative response that is better suited to a deposition. T. Rea objects to this Interrogatory to the extent it asks him to attest to the state of mind of others and the collective decision of VBF.  T. Rea further objects to this Interrogatory to the extent it seeks information and records in Plaintiff's exclusive possession that he does not have possession or control over or access to.**

**Subject to this objection, documents further responsive to this Interrogatory will be produced and may be within Plaintiff's exclusive possession and control.**

**INTERROGATORY NO. 22**:  Identify the names of any trusts to which any Defendant, any of the Defendants' Affiliated Entities, or any member of Defendants' Family is a trustee or beneficiary.

**ANSWER:  T. Rea objects to this Interrogatory as improperly seeking personal and confidential financial information relating to him and his family, many of whom are not parties to this case. T. Rea further objects to this Interrogatory as seeking information that it not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.**

**INTERROGATORY NO. 23**:  Identify any and all benefits to any Defendants resulting from any rental properties, purchases for VBF, or business relationships with vendors of VBF.

**ANSWER: T. Rea objects to this Interrogatory to the extent it seeks information about other defendants of which he has no personal knowledge.  T. Rea further objects to this Interrogatory as vague and overbroad to the term "benefit" is undefined. Subject to these objections, T. Rea states that he did not receive any personal benefit from any rental property, purchase for VBF, or business relationship with any vendor of VBF.**

**INTERROGATORY NO. 24**: Identify when you realized that the opposing flow technology would not perform as represented by Rick Sheriff and/or Sheriff Entities including what specific aspect(s) of the technology would not perform as expected and/or represented to any Defendant.

**ANSWER: T. Rea objects to this Interrogatory as seeking a narrative response that is better suited to a deposition. Subject to this objection, T. Rea states that he believed that the opposing flow technology performed as represented by Rick Sheriff and the Sheriff Entities.  VBF was testing some additional means to increase stocking density and enhance production from the opposing flow technology, but the technology itself did not fail.**

Date:  April 9, 2019

Respectfully submitted,

Underwood Perkins, P.C.


   */s/ Kimberly D. Annello*
Kimberly D. Annello
State Bar No. 24093704
Two Lincoln Centre
5420 LBJ Freeway, Suite 1900
Dallas, Texas 75240
Telephone:    (972) 661-5114

Facsimile:      (972) 661-5691
Email: kannello@uplawtx.com

Attorney for Defendants

### JOHN E. REA's
### DECLARATION UNDER PENALTY OF PERJURY

I, JOHN E. REA, state and declare,

      My name is John E. Rea, my date of birth is _____, and my address is_____, United States of America. I have read the forgoing answers to Interrogatories and I declare under penalty of perjury that those answers are true and correct.

Executed in _____ County, State of Texas, on the _____ day of _____ , 2019.

_____

John E. Rea

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument was

served upon all counsel of record, as listed below, via e-serve and/or email, on this 9th day of

April, 2019.

Robert H. Lang
Renato Mariotti
Caroline Pritikin
Eileen Boyle Perich
Thompson Coburn LLP
55 East Monroe, 37th Floor
Chicago, IL 60603
rlang@thompsoncoburn.com
rmariotti@thompsoncoburn.com
cpritikin@thompsoncoburn.com
eboyleperich@thompsoncoburn.com


Matthew E. Laughlin AT0004515
Holly M. Logan AT0004710
Katelynn T. McCollough  AT0013443
DAVIS, BROWN, KOEHN, SHORS &
ROBERTS, P.C.
215 10th Street, Suite 1300
Des Moines, Iowa  50309
mattlaughlin@davisbrownlaw.com
hollylogan@davisbrownlaw.com
katelynnmccollough@davisbrown.com


                                        _/s/ Kimberly D. Annello_____
                                        Kimberly D. Annello

# EXHIBIT I

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **VEROBLUE FARMS USA, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 3:19-CV-00764-L** |
| **v.** | ) | |
| | ) | |
| **LESLIE A. WULF, BRUCE A. HALL,** | ) | |
| **JAMES REA, JOHN E. REA, AND** | ) | |
| **KEITH DRIVER,** | ) | |
| | ) | |
| **Defendants.** | | |

### DEFENDANT LESLIE A. WULF'S RESPONSES TO
### PLAINTIFF'S FIRST SET OF INTERROGATORIES

COMES NOW, Defendant, Leslie A. Wulf ("Wulf" or "Defendant"), in the above-entitled and numbered cause, and submits these responses to Plaintiffs' First Set of Interrogatories.

### I.
### DEFENDANT'S RESPONSES TO FIRST SET OF INTERROGATORIES

**INTERROGATORY NO. 1**:  Identify all of Defendants' Affiliated Entities, including the identity of all shareholders, owners, managers, and/or directors.

**ANSWER:  Wulf objects to this Interrogatory to the extent it seeks information about other defendants of which he has no personal knowledge.  Wulf further objects to this Interrogatory because it seeks information that it not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.**

**INTERROGATORY NO. 2**:  Identify all banks or other financial institutions to which you, Defendants' Affiliated Entities, or Defendants' Family have been named an account holder, had rights to withdraw funds, and/or did withdraw funds, including the account numbers, name of account holder(s), dates account has been held, and type of account.

**ANSWER: Wulf objects to this Interrogatory to the extent it seeks information about other defendants of which he has no personal knowledge.  Wulf also objects to this**

Interrogatory as improperly seeking personal and confidential financial information relating to him and his family, many of whom are not parties to this case. Wulf further objects to this Interrogatory because it seeks information that it not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.

**INTERROGATORY NO. 3**:   Identify all amounts (by date, amount, and reason for payment) that Defendants or Defendants' Family received directly or indirectly from VBF through compensation, stock (including the value of stock at the time of issuance), any kind of payment, reimbursement of expenses or otherwise and explain the basis of said amounts.

**ANSWER: Wulf objects to this Interrogatory to the extent it seeks information about other defendants of which he has no personal knowledge.  Wulf also objects to this Interrogatory as improperly seeking personal and confidential financial information relating to him and his family, many of whom are not parties to this case. Wulf further objects to this Interrogatory to the extent it seeks information and records in Plaintiff's exclusive possession that Wulf does not have possession or control over in order to further respond.  Subject to these objections, Wulf was paid $25,000.00 per month by VBF from October 2014 through July 2016 as a consulting fee, pursuant to the Management Services Agreement executed with VBF, LAW Holdings and VeroBlue Farms, Inc. (Canada) (VBF's parent company) on October 1, 2014. Wulf was paid $33,333 per month in salary by VBF July 2016 through December 2017, pursuant to his Employment Agreement dated July 1, 2016.  Wulf received 3,600,000 shares of stock in VeroBlue Farms, Inc. (Canada) at a price of $.000001 in October 2014 and he was granted options to purchase 1,000 shares of common stock in VBF at a purchase price of $1.00 per share pursuant to a Stock Option Agreement between him and VBF dated July 8, 2016.  Documents further responsive to this Interrogatory will be produced and may be within Plaintiff's exclusive possession and control.**

**INTERROGATORY NO. 4**:   Identify all real estate owned by you, any member of Defendants' Family, and/or any of Defendants' Affiliated Entities, directly or indirectly (i.e. through a trust or other entity) by address, purchase price, listed sales price, and identity of lenders.

**ANSWER: Wulf objects to this Interrogatory to the extent it seeks information about other defendants of which he has no personal knowledge.  Wulf also objects to this Interrogatory as improperly seeking personal and confidential financial information relating to him and his family, many of whom are not parties to this case. Wulf further objects to this Interrogatory because it seeks information that it not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.**

**INTERROGATORY NO. 5**:   Identify any and all persons that developed, created, or contributed to any Bioplans for VBF.

**ANSWER:  Wulf objects to this Interrogatory to the extent it seeks information about plans or projections prepared by anyone, of which he may have no personal knowledge. Wulf objects to this Interrogatory to the extent it asks him to attest to the state of mind of others and the collective decision of VBF.  Wulf further objects to this Interrogatory to the extent it seeks information and records in Plaintiff's exclusive possession that he does not have possession or control over or access to.  Subject to these objections, Wulf states that he cannot identify every bioplan, business plan or projection created during his tenure at VBF, but that any such plans or projections could have been prepared by him, anyone of the other Defendants, Matt Clarken, Cameron Robinson, Rick Sheriff and/or Mark Nelson.**

**INTERROGATORY NO. 6**:  Identify any projections or forecasts for sales of fish and state the reasons why actual sales did not meet those projections or forecasts.

**ANSWER: Wulf objects to this Interrogatory because it seeks information that it not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.  Wulf further objects to this Interrogatory to the extent it seeks information and records in Plaintiff's exclusive possession that Wulf does not have possession or control over in order to further respond.  Subject tothis es objections, Wulf states that he cannot identify specific projections or forecasts for sales of fish and that any such forecasts or projections were prepared by Jim Bruffy and/or Haroon Chadrhi.  Wulf states generally that, during his tenure at VBF, the company's fish barns and tanks were not yet fully commissioned or at full production to be able to meet sales targets. Documents further responsive to this Interrogatory will be produced and further responsive documents may be within Plaintiff's exclusive possession and control.**

**INTERROGATORY NO. 7**:  Identify all dates of employment of Christine O'Brien nee Gagne ("Christine O'Brien") by VBF as well as who hired Christine O'Brien for VBF, all of her job titles and duties, the identity of her supervisor at VBF, compensation paid, dates of employment, current address, mobile phone number, and marital status including any spouse's name.

**ANSWER: Wulf objects to this Interrogatory to the extent it seeks information and records in Plaintiff's exclusive possession that Wulf does not have possession or control over or access to them to further respond.  Wulf also objects to this Interrogatory as improperly seeking personal and confidential financial information relating to his family, who are not parties to this case. Subject to this objection, Wulf states that Christine Gagne O'Brien was never employed by VBF.  She provided services as an independent contractor to VBF on construction projects in Webster City, and was paid as a 1099 employee on an hourly basis.  Ms. Gagne was supervised by Randy Chalfant in VBF's construction department and reported her work hours to him. Ms. Gagne did not**

**report to Mr. Wulf or any of the Defendants. Documents further responsive to this Interrogatory are within Plaintiff's exclusive possession and control.**

**INTERROGATORY NO. 8**:  Specify any and all of your business relationships with Rick Sheriff or any Sheriff Entities, including, but not limited to, Opposing Flows Aquaculture, Inc. ("OFA"), by identity of entity, dates of your involvement, nature of your involvement (i.e. owner, employee, and/or manager), nature of the entity's business, annual revenues of entity, and all payments received by you from any business relationships with Rick Sheriff or any Sheriff Entities.

**ANSWER: Wulf objects to this Interrogatory as seeking a narrative response that is better suited to a deposition. Subject to this objection, Wulf states that Ted Rea registered Opposing Flows Aquaculture with the state of Texas in 2016 to hold patents and issue licenses for the opposing flow technology acquired from Rick Sherriff.  When Alder Aqua invested in VBF in July 2016, Alder Aqua acquired ownership of those patents and technology and OFA ceased any operations.  OFA never issued shares to anyone and did not generate revenue.**

**INTERROGATORY NO. 9**:  Identify all of your living expenses, including but not limited to, rent, mortgage, other housing, utilities, and/or food, paid in any part by VBF, stating the identity of the relevant vendor(s), amount(s), date(s) of payments, and reason that VBF paid such amount.

**ANSWER: Wulf objects to this Interrogatory as improperly seeking personal and confidential financial information relating to him and his family, many of whom are not parties to this case. Wulf further objects to this Interrogatory as seeking information that it not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.  Wulf further objects to this Interrogatory to the extent it seeks information and records in Plaintiff's exclusive possession that Wulf does not have possession or control over or access to in order to further respond. Subject to these objections, Wulf states that while performing his duties as CEO of VBF, he traveled to Iowa, Europe, Australia, Canada and multiple other U.S. locations from his home in Gun Barrel City, Texas.  Wulf's expenses incurred in traveling while performing these duties were expensed to VBF. These expenses included air fare, car services, parking, rental cars, meals, accommodations and cell phone charges. Wulf states that any expenses reimbursed or paid by VBF were submitted to and approved by VBF in accordance with company policies in place at the time. These reports and other documents further responsive to this Interrogatory are within Plaintiff's exclusive possession and control.**

**INTERROGATORY NO. 10**:  Identify any insurance proceeds paid in relation to the Wulf Lake House by dates, amount of payment, reason for payment, relevant policy and policy number, and identity of payor(s) and payee(s).

**ANSWER: Wulf also objects to this Interrogatory as improperly seeking personal and confidential financial information relating to him and his family, many of whom are not parties to this case. Wulf further objects to this Interrogatory as seeking information that it not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.   Subject to these objections, Wulf submitted claim number 0355694878 to Allstate Insurance for the fire damage to his home in Gun Barrel City.   The date of loss was January 23, 2015 and Allstate compensated Wulf $326,589 in reconstruction costs pursuant to this claim.   This compensation was paid over time with the last payment being made in October 2016. Documents further responsive to this Interrogatory will be produced.**

**INTERROGATORY NO. 11**:  Other than VBF, identify each Defendant's aquaculture experience by dates, employer identity, job title, scope of work and success of venture.

**ANSWER:  Wulf objects to this Interrogatory to the extent it seeks information about other defendants of which he has no personal knowledge.  Wulf further objects to this Interrogatory as seeking information that it not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter. Subject to these objections, Wulf states that he had no experience in the aquaculture business prior to acquiring VBF in 2014.**

**INTERROGATORY NO. 12**:  Identify why and the basis for your representation in a media interview in March 2016 that VBF planned to expand its annual production from 1 million pounds to 7.2 million pounds starting in 2017, whether VBF ever accomplished this goal, and steps taken relating to accomplishing this goal.

**ANSWER:  Wulf objects to this Interrogatory as seeking a narrative response that is better suited to a deposition.  Wulf further objects to this Interrogatory as vague and overbroad to the extent that the representation is not identified with sufficient detail to permit Wulf to answer.  Subject to these objections, Wulf states generally that any representations that he made regarding VBF's production targets in 2016 were based on construction, commissioning, stocking had production being complete in 240 tanks at VBF's Urban Farm.  This facility was never fully commissioned or stocked during Wulf's tenure at VBF.**

**INTERROGATORY NO. 13**:  Identify all professionals, including, but not limited to, attorneys, accountants, insurance brokers, website developers, website hosts, media consultants, stockbrokers, financial planners and/or consultants, who have performed any services for any Defendant, any of Defendants' Affiliated Entities, and/or any member of Defendants' Family.

**ANSWER: Wulf objects to this Interrogatory as improperly seeking personal and confidential financial information relating to him and his family, many of whom are not parties to this case. Wulf further objects to this Interrogatory as seeking information that it not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.**

**INTERROGATORY NO. 14**:  State you and your spouse's current personal net worth, as well as you and your spouse's personal net worth as of December 31, 2018 and December 31, 2017.

**ANSWER: Wulf objects to this Interrogatory as improperly seeking personal and confidential financial information relating to him and his family, many of whom are not parties to this case. Wulf further objects to this Interrogatory as seeking information that it not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.**

**INTERROGATORY NO. 15**:  With regards to your trips to the State of Iowa state your mode of travel, date of travel, reason for travel, identity of persons with whom you traveled and identity of any source of funds for such travel.

**ANSWER:  Wulf objects to this Interrogatory as improperly seeking personal and confidential financial information relating to him and his family, many of whom are not parties to this case. Wulf further objects to this Interrogatory as seeking information that it not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.  Wulf further objects to this Interrogatory to the extent it seeks information and records in Plaintiff's exclusive possession that Wulf does not have possession or control over or access to in order to further respond. Subject to these objections, Wulf states that while performing his duties as CEO of VBF, he traveled to Iowa, Europe, Australia, Canada and multiple other U.S. locations from his home in Gun Barrel City, Texas.  Wulf's expenses incurred in traveling while performing these duties were expensed to VBF. These expenses included air fare, car services, parking, rental cars, meals, accommodations and cell phone charges. Wulf states that any expenses reimbursed or paid by VBF were submitted to and approved by VBF in accordance with company policies in place at the time. These reports and other documents further responsive to this Interrogatory are within Plaintiff's exclusive possession and control.**

**INTERROGATORY NO. 16**:  Identify any and all entities (including trusts) in which any of the Defendants, any of the Defendants' Affiliated Entities, and/or any member of Defendants' Family has owned a beneficial or equitable interest or has or is serving as a trustee or beneficiary, or by which any Defendant has been employed or compensated as a 1099 independent contractor.

**ANSWER: Wulf objects to this Interrogatory as improperly seeking personal and confidential financial information relating to him and his family, many of whom are not parties to this case. Wulf further objects to this Interrogatory as seeking information that it not relevant or reasonably calculated to lead to the discovery of evidence relevant to the claims or defenses raised in this matter.**

**INTERROGATORY NO. 17**:  For each Request for Admission of Fact issued by VBF to you in the above captioned matter for which you deny the matter in full or in part or issue any answer other than a full and unequivocal admission, identify all factual bases for your denial or other answer.

**ANSWER: Wulf objects to this Interrogatory as seeking a narrative response that is better suited to a deposition. Wulf objects to this Interrogatory to the extent it seeks information about other defendants of which he has no personal knowledge. Subject to these objections, Wulf incorporates his responses to VBF's Requests for Admission, served April 3, 2019.**

**INTERROGATORY NO. 18**:  Detail what you allege to be misconduct of any VBF officer, director, and/or employee, and/or any representative of Alder Aqua by identity of participants in misconduct (including perpetrators, alleged victims, and witnesses), relevant dates, identity of any witnesses, and whether any claims have been initiated relating to the same or other legal proceedings.

**ANSWER: Wulf objects to this Interrogatory as seeking a narrative response that is better suited to a deposition. Wulf further objects to this Interrogatory as premature and seeking communications and information that may be subject to attorney-client privilege and/or attorney work product protection. Subject to these objections, Wulf states that any claims or misconduct by VBF and/or Alder Aqua will be detailed when Wulf is ordered to answer and plead in response to the Amended Complaint.**

**INTERROGATORY NO. 19**:  State all reasons why VBF terminated each Defendant's employment and identify all persons who decided to terminate each Defendant and when the decision to terminate each was made.

**ANSWER: Wulf objects to this Interrogatory to the extent it asks him to attest to the state of mind of others. Wulf further objects to this Interrogatory to the extent it asks him to individually attest to the collective decision of VBF during time periods when he was not an officer or director of VBF.  Wulf also objects to this Interrogatory to the extent it seeks communications that may be subject to attorney-client privilege.  Subject to these objections, Wulf states that while he was CEO of VBF, in early 2017, VBF parted ways with Keith Driver and repurchased his stock at a discount and entered into**

a noncompetition and consulting agreement with him.  Later, in September-October 2017, Wulf was directed by VBF's Board as controlled by Alder Aqua representatives, Jens Harkoetter, Eva Ebstein and Bjorn Thelander, to terminate the employment of Defendants Bruce Hall and Ted Rea without cause.  As VBF's CEO, Wulf requested that VBF's corporate counsel, Rick Dahlson of Jackson Walker, document termination agreements with Hall and Rea.  The Alder representatives on VBF's Board also insisted that their counsel, David Graham & Stubbs, also consult on the termination agreements with Hall and T. Rea. After these agreements were executed, Mr. Thelander and Anders Wester, on behalf of Amstar, refused to release funds to VBF to pay Hall and Rea as required under these agreements.  On November 6, 2017, Mr. Wulf was terminated by Bjorn Thelander, Alder/Amstar attorneys Justin Taylor and Brian Boonstra of DGS, and Jason Lucas of Amstar Funds, without cause.  He has no knowledge of the reasons for termination of any other defendant.   Documents further responsive to this Interrogatory will be produced and additional responsive documents may be within Plaintiff's exclusive possession and control.

**INTERROGATORY NO. 20**:  Identify whether any Defendant made any disclosures regarding any self-dealing transactions to non-Defendant VBF directors at any time. If so, provide the relevant dates of disclosure, recipients of disclosure, mode of disclosure, and substance of disclosure.

**ANSWER: Wulf objects to this Interrogatory to the extent it draws a legal conclusion that certain transactions constituted "self-dealing." Subject to that objection, Wulf states that with regard to the allegations contained in Paragraphs 11-42 of Plaintiff's Complaint, each transaction or occurrence was disclosed to VBF's Board of Directors and/or its lead investor Alder Aqua and/or approved by VBF's Board of Directors at their monthly meetings.  Documents further responsive to this Interrogatory wil be produced and additional responsive documents may be within Plaintiff's exclusive possession and control.**

**INTERROGATORY NO. 21**:  Identify all input that any Defendant (including their counsel) had in relation to the December 19, 2018 letter signed by Thomas Fawkes relating to the Bankruptcy, attached as **Exhibit 1** ("Fawkes Letter"), specifying your input, or lack thereof, per each page and paragraph of the Fawkes Letter, and advise whether you received any draft of the Fawkes Letter before it was transmitted to VBF's counsel.

**ANSWER:  Wulf objects to this Interrogatory as vague and overbroad as the term "input" is undefined.  Wulf also objects to this Interrogatory to the extent it asks him to identify sources of information in letter that he did not author.  Wulf also objects to this Interrogatory to the extent it seeks the discovery of communications subject to attorney client privilege and/or common interest privilege.  Subject to these objections, Wulf states that he was interviewed by Mr. Fawkes, as counsel for the Official Committee of Unsecured Creditors on December 11, 2018.**

**INTERROGATORY NO. 22**:  Identify by relevant identifying numbers, domain names, dates, subject matter, and type any and all domain names, patents, trademarks, and/or copyrights (including, but not limited to common law copyrights), including successful and unsuccessful applications, that were in the name of VBF as an applicant or co-applicant, licensed to or from VBF, and/or funded in whole or in part by VBF funds.

**ANSWER: Wulf objects to this Interrogatory to the extent it seeks information and records in Plaintiff's exclusive possession that Wulf does not have possession or control over or access to.  Wulf further objects to this Interrogatory to the extent it is not limited in time in any way. Subject to these objections, documents further responsive to this Interrogatory are within Plaintiff's exclusive possession and control.**

**INTERROGATORY NO. 23**:  Identify all witness statements related to the Complaint or VBF of which you are aware by identity of witness, form of statement (affidavit, deposition testimony, trial testimony, voicemail transcriptions, inclusion in memo, counsel summary, etc.), date of statement, and identity of any person or entity in possession or control of such statement.

**ANSWER: Wulf objects to this Interrogatory to the extent it seeks communications and documents subject to attorney-client privilege, work product protection and/or common interest privilege.  Subject to this objection, Wulf believes that witness statements were made or provided to Eric Simms, VFB's HR Director, in the fall of 2017 in connection with his investigation of multiple instances of harassment by Jens Harkoetter.  Wulf also believes that additional witness statements may have been made to Suzanne Pariser in connection with her investigation of Mr. Harkoetter performed on behalf of Alder and/or Amstar. Documents responsive to this Interrogatory will be produced and additional responsive documents may be within Plaintiff's exclusive possession and control.**

**INTERROGATORY NO. 24**:  Explain why Terry Lyons and Gregg Sedun were added to VBF's Board of Directors and identify any transfer of VBF shares to either individual and/or entities that they own and/or control, the amount paid for such shares, and why the transfer occurred.

**ANSWER: Wulf objects to this Interrogatory as seeking a narrative response that is better suited to a deposition. Wulf objects to this Interrogatory to the extent it asks him to attest to the state of mind of others Wulf also objects to this Interrogatory to the extent it seeks communications that may be subject to attorney-client privilege. Subject to these objections, Wulf states Terry Lyons was added as VBF's Chairman of Board due to his years of corporate governance and being lead director of large global investment banking firm, Mr. Lyons traveled to Switzerland at the request of Dr. Otto Happel to meet for an interview to join the Board and act as Chairman.**

**Gregg Sedun was asked to join the Board after he assisted in  securing $4,500,000 in bridge loans from 23 different investors in 2014 through mid-2016 and in order to access his vast capital markets banking background.**

**INTERROGATORY NO. 25**:   Explain why you refused to provide John Brobjorg supporting documentation for expenses that you submitted to VBF for reimbursement.

**ANSWER: Wulf objects to this Interrogatory as seeking a narrative response that is better suited to a deposition.   Wulf further objects to this Interrogatory as it is not limited in time in any way. Wulf also objects to this Interrogatory to the extent that it assumes facts that are not true.   Subject to these objections, Wulf states that there were no instances in which John Brobjorg requested documentation for expenses Wulf smutted to be reimbursed by VBF and Wulf did not provide them.**

Date:  April 9, 2019                            Respectfully submitted,

                                                Underwood Perkins, P.C.

                                                 _/s/ Kimberly D. Annello_____
                                                Kimberly D. Annello
                                                State Bar No. 24093704
                                                Two Lincoln Centre
                                                5420 LBJ Freeway, Suite 1900
                                                Dallas, Texas 75240
                                                Telephone:     (972) 661-5114
                                                Facsimile:     (972) 661-5691
                                                Email: kannello@uplawtx.com

                                                Attorney for Defendants

## LESLIE A. WULF's
## DECLARATION UNDER PENALTY OF PERJURY

I, LESLIE A. WULF, state and declare,

My name is Leslie A. Wulf, my date of birth is _____,

and my address is_____,

United States of America. I have read the forgoing answers to Interrogatories and I declare

under penalty of perjury that those answers are true and correct.

Executed in _____ County, State of Texas, on the _____ day     of

_____, 2019.


_____
Leslie A. Wulf

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument was

served upon all counsel of record, as listed below, via e-serve and/or email, on this 9th day of

April, 2019.

Robert H. Lang
Renato Mariotti
Caroline Pritikin
Eileen Boyle Perich
Thompson Coburn LLP
55 East Monroe, 37th Floor
Chicago, IL 60603
rlang@thompsoncoburn.com
rmariotti@thompsoncoburn.com
cpritikin@thompsoncoburn.com
eboyleperich@thompsoncoburn.com


Matthew E. Laughlin AT0004515
Holly M. Logan AT0004710
Katelynn T. McCollough  AT0013443
DAVIS, BROWN, KOEHN, SHORS &
ROBERTS, P.C.
215 10th Street, Suite 1300
Des Moines, Iowa  50309
mattlaughlin@davisbrownlaw.com
hollylogan@davisbrownlaw.com
katelynnmccollough@davisbrown.com


                                    _/s/ Kimberly D. Annello_____
                                    Kimberly D. Annello

# EXHIBIT J

# THOMPSON & KNIGHT LLP

ATTORNEYS AND COUNSELORS

NICOLE WILLIAMS

DIRECT DIAL: 214.969.1149
EMAIL: Nicole.Williams@tklaw.com

ONE ARTS PLAZA
1722 ROUTH STREET, SUITE 1500
DALLAS, TX 75201
214.969.1700
FAX 214.969.1751
www.tklaw.com

AUSTIN
DALLAS
FORT WORTH
HOUSTON
NEW YORK
⎯⎯⎯⎯⎯
ALGIERS
LONDON
MÉXICO CITY
MONTERREY

July 2, 2019

**VIA ELECTRONIC MAIL**

Kim Annello
Two Lincoln Centre
5420 LBJ Freeway, Suite 1900
Dallas, Texas 75240
Kannello@uplawtx.com

Re:     VeroBlue Farms USA, Inc. v. Leslie A. Wulf et al., Case No. 3:19-cv-00764-L
        <u>Deficiencies Regarding Defendants' Discovery Responses</u>

Dear Kim:

This letter in sent in accordance with Federal Rule of Civil Procedure 37 and Local Rule 7.1(a) regarding Leslie Wulf ("Wulf"), Bruce Hall ("Hall"), James Rea ("James Rea") and John E. Rea ("Ted Rea")'s responses to VBF's First Set of Interrogatories to Wulf, Hall, James Rea and Ted Rea (collectively, the "<u>Interrogatory Responses</u>" by the "<u>Responding Defendants</u>"), the Responding Defendants' responses to VBF's First Request For Admission of Fact (the "<u>Admission Responses</u>"), and the Responding Defendants' responses to VBF's Requests for the Production of Documents (the "<u>Document Responses</u>") (collectively, the "<u>Discovery Responses</u>").

On April 15, 2019, counsel for VBF and the Responding Defendants met and conferred regarding certain deficiencies in the Interrogatory Responses ("April Conference"). Below, VBF describes the specific deficiencies, and requests supplemental answers for each deficiency, as was discussed during the April 15, 2019 conference. Please provide a response and supplemental answers, production, and a privilege log by **July 16, 2019**.

## I.     VBF's Interrogatories to Founders

As a preliminary matter, many of the Interrogatory Responses do not comply with Federal Rule of Civil Procedure 33 which requires "candor in responding" to discovery by interrogatory. *See Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 616-17 (5th Cir. 1977). Responding Defendants are required to "pull together a verified answer by reviewing all sources of responsive information reasonably available to [them] and providing the responsive, relevant facts reasonably available to [them]." *Areizaga v. ADW Corp.*, 314 F.R.D. 428, No. 3:14-cv-2899-P (N.D. Tex. April 4, 2016).

App. 172

Kim Annello
July 2, 2019
Page 2

Specifically, if a Responding Defendant has information reasonably available to him regarding each other Defendant, that information must be provided. It appears that at least the following Interrogatory Responses are not based upon a review of all information reasonably available to the Responding Defendants including interrogatories related to each other Defendant's Affiliated Entities, banks or financial institutions, amounts received from VBF, real estate, aquaculture experience, beneficial and equitable interests (including trusts); sources of information for the Fawkes letter. *See, e.g.,* Wulf Interrogatories 1, 2, 3, 4, 11 (as to each Defendant's aquaculture experience), 16, 21; J. Rea Interrogatories 1, 2, 3, 15 (representation of any Defendant by Cassels Brock) 16 (communications between any Defendant and Jackson Walker or Cassels Brock) 23 (claims against any Defendant); Hall Interrogatories 1, 2, 3, 24 (companies shut down because of financial problems); and Ted Rea Interrogatories 1, 2, 3, 22.   Please revise all Interrogatory Responses, including those listed in this paragraph, after reviewing "all sources of responsive information." VBF reserves all rights to raise deficiencies not specifically discussed herein at a later date.

## A. Defendants' Net Worth Is Discoverable and Relevant to VBF's Punitive Damages Claims

The Responding Defendants objected to all requests seeking information relating to their net worth including any real estate or other personal property they own.  As you know, Federal Rule of Civil Procedure 26(b) allows a party to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" FED. R. CIV. P. 26(b)(1).  The information sought "need not be admissible in evidence to be discoverable." *Id.*  VBF asserts in this lawsuit that the Responding Defendants wasted corporate assets, including an $80-$90 million investment. *See, e.g.*, Compl. ¶¶ 40-42; *see also* Proposed Second Am. Compl. ¶¶ 55, 56, 171-175, 233, 315, 333, 339, 342, 437-450.   VBF is entitled to all information that may lead to the discovery of where those funds were spent, by whom, and for what purpose while the Defendants were in control of VBF, which includes information relating to net worth and any real estate or personal property.

VBF also asserts in this lawsuit that it is entitled to punitive damages. *See, e.g.*, Compl. ¶¶ 48, 56, 63, 73, 77; *see also* Proposed Second Am. Compl. ¶¶ 235, 243, 250, 254, 294, 298, 363, 437-450.  District courts in the Fifth Circuit have held that "evidence of net worth is relevant, discoverable, and admissible at trial to evaluate a plaintiff's punitive damage claim." *Wright v. Weaver*, No. 4:07-cv-369, 2009 WL 5170218, at *4 (E.D. Tex. Dec. 18, 2009) (citing *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 137 (E.D. Tex. 2003)).  Texas courts have similarly held that "parties may discover and offer evidence of a defendant's net worth" in cases where punitive or exemplary damages may be awarded. *In re Jacobs*, 300 S.W.3d 35, 40 (Tex. App.—Houston [14th Dist.] 2009) (citations omitted).

For these reasons, the Responding Defendants must withdraw their objections to any Discovery Responses relating to their net worth and provide proper responses, as discussed above and in more detail below.

Kim Annello
July 2, 2019
Page 3

### B. Interrogatories to Wulf

#### 1. Relevancy Objections

Wulf's objections based on relevancy are improper.  Information related to Defendants' Affiliated Entities (No. 1); real estate owned by Wulf, Defendants' Family, and Defendants' Affiliated Entities (No. 4); all professionals who performed services for any Defendant, Defendants' Affiliated Entities, or Defendants' Family (No. 13); Wulf and his spouse's current personal net worth (No. 14); and beneficial or equitable interests of any Defendant (No. 16) are all relevant to several issues in this litigation, including (1) VBF's claims that the Defendants misappropriated and wasted VBF corporate funds and used VBF funds for the benefit of themselves, their families, or their affiliated entities; (2) VBF's claims that the Responding Defendants overpaid professionals who were hired to provide services for VBF; (3) VBF's accounting claim against the Defendants; (4) Defendants' net worth (including liquid assets and personal property); and (5) VBF's request for punitive damages.  Please withdraw these objections and answer these interrogatories.

#### 2. Insufficient Answers

With respect to Interrogatory No. 3, Wulf failed to include Christine Gagne's compensation and possibly others. The request requires that Wulf identify "all amounts" that "Defendants' Family" received from VBF.  Please supplement this answer.

With respect to Interrogatory No. 13, Wulf objected to providing any single professional who performed any services for him, any other Defendant, any Defendants' Affiliated Entities, or any member of Defendants' Family.  VBF hereby requests a supplemental answer to this interrogatory relating to any professionals who performed any services for him,      any      other Defendant, any Defendants' Affiliated Entities, or any member of Defendants' Family who were paid with VBF funds.  Please supplement this answer.

With respect to Interrogatory No. 18, you represented during the April Conference that Wulf would revise his response to this request to include reference to the Third-Party Complaint. Please do so.

With respect to Interrogatory No. 21, Wulf asserted an objection based on communications between Defendants and Mr. Fawkes being "subject to the attorney client privilege and/or common interest privilege."  As you know, VBF vehemently objects to any privilege claim that you have made relating to communications between your clients and any attorney or committee member in the Bankruptcy Proceeding.  In addition to this improper objection, Wulf responded that he "was interviewed" by Mr. Thomas Fawkes on December 11, 2018, which implies that Wulf's only input to the December 19, 2018 letter signed by Mr. Fawkes arose from one single interview.  In the April Conference, you represented that it was "hard to separate letters and interviews." Please withdraw your privilege objection and supplement Wulf's answer to Interrogatory No. 21.

Kim Annello
July 2, 2019
Page 4

### 3.  Withdrawn Interrogatory

Based on your representation during the April Conference that Wulf admits that he had no experience in the aquaculture business prior to acquiring VBF in 2014, VBF withdraws Request No. 11.  VBF reserves the right to raise this request, or the information requested, at a later date, including at any deposition and trial.

## C.  Interrogatories to Hall

### 1.  Relevancy Objections

Defendant Hall objected to providing information related to Defendants' Affiliated Entities (No. 1); banks at which Defendant Hall, Defendants' Affiliated Entities, or Defendants' Family have an account or can withdraw funds (No. 2); real estate owned by Hall, Defendants' Family, and Defendants' Affiliated Entities (No. 3); Hall and his spouse's current personal net worth (No. 15); and the names of any trusts to which any Defendant, Defendants' Affiliated Entities, or any member of Defendants' Family is a trustee or beneficiary (No. 20), on the basis, in part, that such information is not relevant.  As described above, these requests are relevant to (1) VBF's claims that the Defendants misappropriated and wasted VBF corporate funds and used VBF funds for the benefit of themselves, their families, or their affiliated entities; (2) VBF's claims that the Responding Defendants overpaid professionals who were hired to provide services for VBF; (3) VBF's accounting claim against the Defendants; (4) Defendants' net worth (including liquid assets and personal property); and (5) VBF's request for punitive damages.  Please withdraw these objections and answer these interrogatories.

### 2.  Insufficient Answers

Defendant Hall failed to sufficiently answer Interrogatory No. 4 relating to travel by the Defendants or Defendants' Family to the extent that VBF funded any portion of it.  In his response, Hall stated that he "cannot identify all travel that he or other Defendants made . . .that may have been funded by VBF."  To clarify, the interrogatory asks that Hall provide information relating to his travel and the other Defendants' travel that he knows about from 2014 through 2017.  While Hall references his current lack of access to Plaintiffs' books and records, there are certainly records available to Hall—including his own—that would provide this type of information. Please supplement this answer with this information that Hall can currently identify through resources reasonably available to him.

Defendant Hall failed to provide a sufficient response to Interrogatory No. 5, which requests that Hall identify all living expenses, including all expenses paid for at least in part by VBF.  Hall identified that he traveled to Iowa from Coppell, Texas "an average of twice per month" and that the travel expenses and meals were expensed to VBF.  Hall additionally stated, in relevant part, that "[d]ocuments further responsive to this Interrogatory will be produced."  In his response, Hall fails to provide any information relating to his living expenses for those trips, nor does he provide any calendar or travel log relating to each.  Information relating to Hall's travel and living

Kim Annello
July 2, 2019
Page 5

expenses are clearly relevant to VBF's claims that Defendants misappropriated and wasted corporate assets. If Hall has any further information or documents that he intends to produce relating to his travel and living expenses paid for with VBF funds, please supplement this answer and produce all responsive documents in accordance with Rule 33.

Defendant Hall failed to sufficiently answer Interrogatory No. 9, which asks that he provide information relating to amounts the Defendants or Defendants' Family received directly or indirectly from VBF, which is also relevant to VBF's claims that Defendants misappropriated and wasted corporate assets. As discussed in the April Conference, please confirm that the Defendants will or have produced all documentation relating to Hall's "family entity" which purchased "3,300,000 shares of stock in VeroBlue Farms, Inc. (Canada) at $.000001 per share" in October 2014. Please supplement this answer.

Defendant Hall also failed to sufficiently answer Interrogatory No. 10, which requests that Hall state VBF's value at the end of each year. As discussed in the April Conference, Hall should provide the value of VBF to the best of his recollection with any appropriate qualifications to his answer. For the same reason, Defendant Hall's answer to Interrogatory No. 11 regarding any and all valuations of VBF is insufficient. Please supplement these answers.

With respect to Interrogatory No. 16, please produce any calendars or travel logs for Hall.

### 3.  Withdrawn Interrogatories

Finally, as discussed in the April Conference, VBF agreed to withdraw Interrogatories Nos. 13, 14, and 19 directed to Hall. VBF reserves the right to raise these requests, or the information requested, at a later date, including at any deposition and trial.

## D.  Interrogatories to James Rea

### 1.  Relevancy and Privilege Objections

In relevant part, Defendant James Rea objected to providing information related to Defendants' Affiliated Entities (No. 1); banks at which Defendant James Rea, Defendants' Affiliated Entities, or Defendants' Family have an account or can withdraw funds (No. 2); real estate owned by James Rea, Defendants' Family, and Defendants' Affiliated Entities (No. 3); communications between Defendants or Defendants' counsel and any member of the Nelson Family or Randy Chalfant (No. 17); communications between Defendants or Defendants' counsel and any one of the following: Kenneth Lockard, his law firm, FishDish LLC, Goldstein & McClintock LLP, or Horwood Marcus & Berk (No. 18); and James Rea and his spouse's current personal net worth (No. 20), on the basis that such information was not relevant to the claims or defense raised in this matter.

As discussed above, these requests are relevant to (1) VBF's claims that the Defendants misappropriated and wasted VBF corporate funds and used VBF funds for the benefit of

Kim Annello
July 2, 2019
Page 6

themselves, their families, or their affiliated entities; (2) VBF's claims that the Responding Defendants overpaid professionals who were hired to provide services for VBF; (3) VBF's accounting claim against the Defendants; (4) Defendants' net worth (including liquid assets and personal property); and (5) VBF's request for punitive damages.   Additionally, the communications between Defendants and the Nelson Family are relevant to VBF's claims that the Defendants misrepresented the business plans, operational issues, and the Metrics to disinterested directors of VBF.  *See, e.g.,* Compl.  ¶ 41; Proposed Second Am. Compl. ¶¶ 57-63, 99, 127, 142. Please withdraw these objections and answer these interrogatories.

Further, any communications between Defendants and the Nelson Family relating to the Bankruptcy proceeding are not privileged.  Please withdraw all objections based on privilege.  To the extent that you refuse to withdraw your objections, please produce a detailed privilege log as described in Section III.

### 2.  Insufficient Answers

In response to Interrogatory No. 9, which requests that James Rea provide information relating to "all contractors, VBF employees, and professionals" who performed any work or services on the Wulf Lake House or waste treatment plant, James Rea improperly limits his response to "contractors" who were or were not engaged (or paid) by VBF to work on the reconstruction of Wulf's home in Texas.  The interrogatory, however, requires that Mr. Rea identify "all contractors, VBF employees, and professionals" and how each of those individuals was paid for that work.  This request is relevant to VBF's claims that the Responding Defendants overpaid professionals who were hired to provide certain services to VBF.  During the April Conference, you agreed to revisit this answer.  Please supplement your answer to respond to whether there were any VBF employees or other professionals that performed any work on the Wulf Lake House or the waste treatment plant.

In response to Interrogatory Nos. 10 and 11, James Rea's answers are non-responsive or incomplete. Interrogatory No. 10 requests information regarding vehicles purchased or acquired by any of the Defendants. Interrogatory No. 11 requests information about the duties that Tracy Arbanas had not related to the Wulf Lake House.  Please supplement these answers.

In response to Interrogatory No. 14, James Rea refused to provide information relating to his knowledge of Jackson Walker LLP's representation of any other Defendants other than himself.  During the April Conference, you agreed to revisit this response.  Please supplement the answer.

In response to Interrogatory No. 19, James Rea only answered as to his own knowledge of any "investigations, surveillance, or other formal or informal observations relating to VBF."  The request is not limited to investigations of which James Rea has detailed, personal knowledge. Under Rule 33, James Rea must answer regarding any investigations, surveillance or other formal observations of which he has any knowledge.  Please supplement the answer.

Kim Annello
July 2, 2019
Page 7

In response to Interrogatory No. 21, James Rea referred to the fact that he traveled to Iowa from his home in Plano, Texas on average 3-4 days per week. During the April Conference, you agreed to inquire whether any of the Defendants have calendars or travel logs. Please produce those documents and supplement this answer.

Finally, in response to Interrogatory No. 25, James Rea stated that he cannot "recall every service provider who may have performed information technology services." But James Rea is required to provide the name of any service provider that he does recall or that he can determine by access to sources reasonably available to him. During the April Conference, you agreed to revisit James Rea's response. Please supplement this answer.

### 3. Withdrawn Interrogatories

As we discussed in the April Conference, VBF has agreed to withdraw Interrogatories Nos. 11 and 12 directed to James Rea. VBF reserves the right to raise these requests, or the information requested, at a later date, including at any deposition and trial.

### E. Interrogatories to Ted Rea

### 1. Relevancy Objections

In relevant part, Defendant Ted Rea objected to providing information related to Defendants' Affiliated Entities (No. 1); banks at which Ted Rea, Defendants' Affiliated Entities, or Defendants' Family have an account or can withdraw funds (No. 2); real estate owned by Ted Rea, Defendants' Family, and Defendants' Affiliated Entities (No. 3); all professionals who performed services for any Defendant, Defendants' Affiliated Entities, or Defendants' Family (No. 17); Ted Rea's and his spouse's current personal net worth (No. 18); and the names of any trusts to which any Defendant, Defendants' Affiliated Entities, or any member of Defendants' Family is a trustee or beneficiary (No. 22), on the basis that these interrogatories seek information that is not relevant to the claims or defenses raised in this matter.

As discussed above, these requests are relevant to (1) VBF's claims that the Defendants misappropriated and wasted VBF corporate funds and used VBF funds for the benefit of themselves, their families, or their affiliated entities; (2) VBF's claims that the Responding Defendants overpaid professionals who were hired to provide services for VBF; (3) VBF's accounting claim against the Defendants; (4) Defendants' net worth (including liquid assets and personal property); and (5) VBF's request for punitive damages. Please withdraw these objections and answer these interrogatories.

Ted Rea's relevancy objections to Interrogatory No. 21, which requests information relating to presentations by any Defendant to investors, lenders, or shareholders are also not well founded. VBF raised this deficiency in the April Conference, and you represented that you would "look into" whether Defendants' have any documents (including marketing decks). Please confirm

Kim Annello
July 2, 2019
Page 8

that you have produced any such documents, or intend to do so shortly.  Please supplement this answer.

### 2.  Insufficient Answers

With respect to Interrogatories Nos. 11 and 12, Ted Rea indicated that he would produce documents responsive to these interrogatories.  Please confirm that Mr. Rea has produced documents relating to VBF's annual production and all Defendants' representations of VBF's value.  Please either supplement this answer or identify the documents responsive to these requests in accordance with Rule 33 by July 16.

Please supplement Mr. Ted Rea's answer to Interrogatory No. 13 with any appropriate qualifications as to the growth rates of barramundi by July 16.

As discussed in the April Conference, VBF was amenable to withdrawing Interrogatory No. 4 relating to payments Ted Rea received from any Sheriff Entities.  However, after further consideration, we request that Ted Rea supplement his response to Interrogatory No. 4, as the information provided is vague and confusing. Specifically, please provide additional information relating to "SSi," including (i) an explanation as to why Sheriff loaned funds to Bajjer to pay off a loan on behalf of SSi to Green Bay; (ii) a description of SSi; (iii) a description of what the loan to Green Bay was for; (iv) why Bajjer paid off the loan; and (v) any other relevant details that clarify your response.  Also, please produce any relevant documentation.

### 3.  Withdrawn Interrogatory

Furthermore, based on your representations during the April Conference that you are unaware that any family member of any Defendant received any kind of payment or reimbursement of expenses as described in Interrogatory No. 9 (except for Christine Gagne O'Brien), VBF withdraws that request. VBF reserves the right to raise this request, or the information requested, at a later date, including at any deposition and trial.  If Ted Rea decides to supplement this answer or if we have misunderstood your representation, please supplement the answer.

## II.  The Admission Responses

The Admission Responses to Requests No. 85-90, which seek information relating to VBF's bankruptcy case, included improper privilege objections without any clarification as to what privilege Responding Defendants are actually asserting, whom that privilege covers, and why.  As you know, VBF vehemently objects to any privilege claim that you have made relating to the Bankruptcy, as outlined more in-depth in VBF's Response to Certain Defendants' Motion to Quash Subpoenas or for Protective Order.  Dkt. 42.  Please withdraw all privilege objections and properly respond to Requests No. 85-90.   To the extent that you refuse to withdraw your objections, please produce a detailed privilege log.

Kim Annello
July 2, 2019
Page 9

### III.  The Document Responses

The Responding Defendants' objections based on relevancy are improper.  First, Documents related to Defendants' Affiliated Entities (Request No. 5); bank accounts (Request No. 6); federal and state income (Request No. 8); and property or real estate (Request No. 9) are relevant to (1) VBF's claims that the Defendants misappropriated and wasted VBF corporate funds and used VBF funds for the benefit of themselves, their families, or their affiliated entities; (2) VBF's claims that the Responding Defendants overpaid professionals who were hired to provide services for VBF; (3) VBF's accounting claim against the Defendants; (4) Defendants' net worth (including liquid assets and personal property); and (5) VBF's request for punitive damages.

Second, documents relating to Defendants' retention of Jackson Walker LLP to represent any Defendant or any of Defendants' Affiliated Entities (Request No. 79) are relevant because Defendants claim that Jackson Walker LLP represented VBF as it relates to certain termination agreements that Defendants rely upon.  And the mere retention of Jackson Walker LLP as counsel, in and of itself, is not privileged.

Third, documents relating to the Nelson Family or Randy Chalfant (Request No. 81) are relevant because of the Nelson's involvement in Iowa's First (before it became VBF) and because of the Nelson's continued involvement in VBF during Defendants' tenure.  And, to the extent that Responding Defendants rely on privilege, as discussed above, VBF vehemently objects to any privilege claim that they have made relating to the Bankruptcy.

Further, documents relating to Defendants and Mr. Lockard, FishDish LLC, and/or the counsel referenced in Request No. 82 are relevant given Mr. Lockard and FishDish LLC's relationship with VBF, and are not privileged as it relates to the Bankruptcy proceeding.

Please withdraw each of these objections and properly respond to Request Nos. 5, 6, 8, 9, 79, 81, and 82, as discussed above.

Defendants also have represented that they have additional documents to produce, but have not produced these documents and have refused to provide a date for the completion of document production.

To the extent that you are withholding any responsive documents or information based on any assertion of privilege or objection based on privilege, VBF demands that you produce a detailed privilege log pursuant to Fed. R. Civ. P. 26(b)(5)(A) (providing that a party withholding information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, must: "(i) expressly make the claims; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed-and do so in a manger that, without revealing information itself privileged or protected, will enable other parties to assess the claim").

Kim Annello
July 2, 2019
Page 10

As you know, there is now a Protective Order in place (Dkt. 112) under which the Responding Defendants can designate "any document or portion of a document. . .or interrogatory answer produced" that they "reasonably and in good faith believe[] is of such a "commercially or competitively sensitive nature that disclosure" to anyone other than certain persons designated therein could "reasonably be expected to result in injury." Dkt. 112, ¶¶ 6, 7, 13.

Please provide a response to each of the issues set forth above in Sections I-III, including amended and/or supplemental answers, productions, and privilege logs, **by July 16, 2019**.

### IV.     Other Discovery Requests

Responding Defendants have failed to provide dates for their depositions since the April Conference and in response to an email of May 9, 2019 which provided additional deposition dates.  As you know, VBF vehemently disputes your position in the April Conference that neither Mr. Hall nor Mr. Ted Rea would be presented for their deposition until after the Court resolves issues relating to their alleged releases.  All Responding Defendants have answered the Amended Complaint. None have moved to dismiss on the grounds of any purported release.  Accordingly, there is no supportable reason not to produce all four Responding Defendants for their depositions. Please provide dates in September and October for all four depositions **by July 10, 2019**.

On June 24, 2019, VBF's counsel sent a draft Motion for Leave to Take Additional Depositions and requested a conference on that Motion.  **Please provide dates the week of July 8 or July 15 to conduct a conference on this issue.**

Finally, VBF served the registered agent of Law Holdings LLC, an entity associated with Wulf, on February 21, 2019.  The subpoena response is long overdue.  Even though a conference is not required for such a third-party subpoena and only out of an abundance of caution without waiver of VBF's rights to seek compliance from Law Holdings LLC, VBF would like to discuss whether your office will be responding to the subpoena on behalf of Law Holdings.  **Please provide dates the week of July 8 or July 15 to conduct a conference on this issue.**

Very truly yours,

Nicole L. Williams

cc:      Counsel of Record

# EXHIBIT K

**UNDERWOOD  PERKINS, P.C.**
Attorneys and Counselors at Law
Two Lincoln Centre
5420 LBJ Freeway, Suite 1900
Dallas, Texas 75240
www.underwoodperkins.com

From the Office of:                                                   Telephone (972) 661-5114
Kimberly D. Annello                                                  Facsimile (972) 661-5691
                                                                     kannello@uplawtx.com

July 22, 2019

Nicole L. Williams                                  Via Email   Nicole.Williams@tklaw.com
Thompson & Knight LLP
1722 Routh Street, Suite 1500
Dallas, Texas 75201

Re:     VeroBlue Farms USA, Inc. v. Leslie Wulf, et al., Case No. 3:19-cv-00764-L (N.D. Tex.)

Dear Ms. Williams:

        We write in response to your letter dated July 2, 2019 and our follow up conversation on July 22, 2019.

        **Relevance Objections**

        Defendants and their counsel are well aware of the requirements of the Federal Rules of Civil Procedure with respect to responding to discovery requests, and have complied with such rules. Many of Plaintiffs' requests were directed to all four Defendants and were answered by all four Defendants. Defendants will not duplicate or repeat answers for each other. Similarly, Defendants will not answer discovery requests directed to actions taken by, services performed for, or payments made to, their family members and/or affiliated entities. Defendants are before the court; their families and other entities are not. It is not an appropriate use of any discovery device under Rules 33 or 36 to ask a party to attest to a matter on behalf of a nonparty.

        Similarly, Defendants will not provide information about their assets, financial situations, business ownership, or any other information related to any similar requests for their spouses, children or family members. This includes Wulf Interrog. Nos. 1, 4, 13, 16; Hall Interrog. Nos. 1, 2, 3, 9, 15; J. Rea Interrog. Nos. 1, 2, 3, 20; T. Rea Interrog. Nos. 1, 2, 3, 17, 18, 22 and Doc. Req. Nos. 5, 6, 8, 9.   Such information is not relevant to VBF's claims of misappropriation or overpayment. VBF has maintained exclusive access to all of its own records of disbursements and expenditures, and has identified transactions that it deemed self-dealing and/or exorbitant. It can certainly rely on its own records to assess whether payments, purchases or reimbursements made by VBF were proper without examining Defendants' entire personal financial situation and that of their spouses and

Nicole Williams
July 22, 2019
Page 2

families.  Moreover, these requests are not at all limited to persons or entities that VBF may have paid or purchased goods or services from. The aforementioned requests seek information regarding all assets and financial information for every Defendant, every member of the family, and any business entity each Defendants or family member may have ever been involved with.  VBF is attempting to engage in a punitive discovery process, not only with Defendants, but with their spouses, children, business partners, and colleagues as well. Such inquiries do not begin to approach relevant discovery, and Defendants will not take part in such an abuse of the discovery process.

As to these discovery requests being relevant to VBF's claim for an accounting and/or punitive damages, both of those issues are remedies, and thus, are not relevant until liability is established. Plaintiff asserts that Defendants' net worth is both discoverable and relevant to VBF's punitive damages claim, relying on Federal Rule of Civil Procedure 26(b), decisions arising out of the Eastern District of Texas, and a Houston Appellate Court. However, your letter conveniently ignores Texas Civil Practice & Remedies Code § 41.0115, enacted on September 1, 2015, that changed the landscape of a litigant's prior right to obtain net worth discovery. With the enactment of § 41.0115, a movant must now first submit a motion to the trial court demonstrating a substantial likelihood of success on the merits of a claim for exemplary damages before being allowed to obtain net worth discovery. Tex. Civ. Prac. & Rem. Code § 41.0115(a). Then if the trial court, after notice and a hearing, determines that the movant has met its burden, the trial court may only authorize the use of the least burdensome method available to obtain such evidence. *Id.* § 41.0115(b).  This statute further supports Defendants' position that a scorched earth discovery campaign into their net worth and financial situation, and that of their families and business partners, is not relevant at this point in the proceeding.

**Common Interest Privilege**

VBF demanded that Defendants answer multiple discovery requests regarding their communications, if any, with the Official Committee of Unsecured Creditors, the Ad Hoc Equity Committee, the members of both committees, and their counsel in the bankruptcy proceedings currently underway in Iowa.  As Defendants have represented, Defendants and their counsel shared a common interest with the Official Committee of Unsecured Creditors, the Ad Hoc Equity Committee, the members of both committees, and their counsel with respect to challenges raised by both committees to VBF's reorganization plan submitted in its Chapter 11 proceeding. The common interest privilege is well recognized under Iowan and Texas law as set forth in Defendants' Motion to Quash [Dkt. No. 37-1] and its related briefing.  While Defendants are certainly are aware of VBF's "vehement" objections to every position that Defendants have taken in this case, such objections, however vehement, does not diminish the applicability of this privilege. Defendants were interviewed by counsel for the Creditors Committee on December 11, 2018, and were represented by counsel during that interview. Whether this interview was the only source, the primary source, or a confirmatory source for the Fawkes Letter or the Equity Committee's challenges, Defendants cannot know or say. At that time, the parties were acting in joint and common interest to challenge VBF's

Nicole Williams
July 22, 2019
Page 3

plan and, consequently, their communications regarding the Fawkes Letter and the Equityholders'
Committee's actions are privileged. These communications will be included on the privilege log
provided once Defendants' document production is complete.

## Wulf Answers to Interrogatories

Interrog. No. 3-- As you are well aware, Defendants were summarily terminated from VBF
over 18 months ago and have not had access to VBF's records or documents since then. Despite your
assumption that Defendants have VBF's books and records, or access to such, they do not.  And
Defendants will not guess or speculate in response to discovery requests that ask for specific figures
at specific points in time, especially not when Plaintiff has the very documents to ascertain this
information.

Interrog. No. 13- Mr. Wulf stands on his objection to answering any interrogatory on behalf
of his family members or affiliated entities. To the extent that VBF has agreed to limit this request to
identifying professionals who provided services to him that were paid with VBF funds, Wulf will
supplement his answer.

Interrog. No. 18 – Mr. Wulf will supplement this answer to reflect the allegations raised in
the Third-Party Complaint.

Interrog. No. 21 – Please see discussion of common interest privilege above.

## Hall Answers to Interrogatories

Interrog. Nos. 4, 5 and 16 – Mr. Hall does not have calendars or travel logs to enable him to
identify every trip that he may have made during his four-year tenure as CFO of VBF. He has
answered these interrogatives to the best of his knowledge and based on available records. To the
extent he has any records of such travel, they will be produced.

Interrog. No. 9 – Mr. Hall will produce all nonprivileged documents related to his purchase of
3,330,000 shares of stock in VBF, Inc. in October 2014.

## J. Rea Answers to Interrogatories

Interrog. Nos. 17 and 18 – Mr. Rea stands on his objections to these interrogatories as
irrelevant and seeking privileged information.  Mr. Rea's (or any Defendants') challenge to VBF's
Chapter 11 reorganization plan was wholly within their rights. The bankruptcy court did not make
any finding that such challenge was improper or without merit. In fact, VBF and its plan sponsor and
majority owner, Alder Aqua, agreed to address many of the objections that Defendants raised at the

Nicole Williams
July 22, 2019
Page 4

Confirmation Hearing via an agreed order. Defendants' assertion of their legal rights to object and/or challenge VBF's reorganization plan do not serve as the basis for any claim for relief by VBF. Even if these requests were relevant, they seek communications governed by the common interest privilege. As to communications with the Nelson family, any communications after October 24, 2018 are subject to Defendants' common interest privilege with other parties who were challenging VBF's Chapter 11 reorganization plan. To the extent Mr. Rea, or any other Defendant, had communications with the Nelson family before this date, those will be produced

 Interrog. No. 9 – Mr. Rea will supplement this response, if necessary.

 Interrog. No. 10 – This interrogatory requests information regarding any vehicle owned by any Defendant during a four-year period. Mr. Rea is not privy to the personal consumption decisions of the other Defendants. Mr. Rea will supplement his answer to this interrogatory to be limited to vehicles that were purchased or leased by VBF and used by Defendants.

 Interrog. No. 11 – Mr. Rea will supplement this response with respect to Ms. Arbanas' duties, to the extent she had any.

 Interrog. No. 14 – Each Defendant does not know the other's individual or personal need for legal counsel. Mr. Rea has answered this to the best of his knowledge.

 Interrog. No. 19 – Mr. Rea did not limit this answer to "investigations of which [he] has detailed, personal knowledge." There is no further information to be provided.

 Interrog. No. 21 – Mr. Rea does not have calendars or travel logs to enable him to identify every trip that he may have made during his four-year tenure with VBF.

 Interrog. No. 25 -- Mr. Rea will supplement this response, if necessary.

**T. Rea. Answers to Interrogatories**

 Interrog. No. 4 – Your letter purports to improperly add new questions to this interrogatory which is not permitted by Rule 33. Documents related to the Bajer/SSi loan will be produced in response to the subpoena served on Bajjer.

 Interrog. Nos. 11-12, 21 – Mr. Rea cannot identify every representation made by him, or anyone else ,about the business they were operating on a daily basis. If the representations referenced in these requests are included in emails or presentation decks, they will be produced.

 Interrog. No. 13 – Mr. Rea will supplement this response, if necessary.

Nicole Williams
July 22, 2019
Page 5

**Requests for Admissions**

Requests Nos. 85-90 – Defendants stand on their objections that these admissions seek privileged communications as discussed above. A privilege log is not required in response to a request for admission, but a log will be provided in response to Plaintiff's document requests.

**Responses to Document Requests**

Request No. 79 – It is unclear how Jackson Walker's representation of an unrelated entity that may or may not have been affiliated with one or more of the Defendants at any time is relevant to Defendants' claims arising out of their termination agreements.  Defendants were separately represented by undersigned counsel in connection with those agreements, and communications between Defendants' counsel, Jackson Walker, and counsel for VBF related to negotiation and VBF's later breach of those agreements have been produced, and/or will be produced, in response to VBF's document requests. This request appears to be directed to VBF's adversary proceeding against Jackson Walker in the Chapter 11 proceeding and not at the claims in this case. Although Defendants do not believe this is a proper use of discovery in this matter, anticipating this issue, Defendants will identify any separate entities that were retained by Jackson Walker and the dates of such representation. If retention letters exist, they will be produced.

Requests Nos. 81 and 82 – Please see discussion of common interest privilege above. To the extent Defendants have any documents with the named individuals prior to October 24, 2018, those will be produced.

As we discussed today, Defendants will endeavor to provide the supplement responses described in this letter, produce additional responsive documents, and provide a privilege log for any withheld documents by **August 23, 2019.**

**Depositions**

Defendants did not "fail to provide dates for deposition since the April Conference." Plaintiff's counsel requested that the depositions previously scheduled for May 2019 be rescheduled because Plaintiff was planning to amend its complaint with additional claims and the parties were seeking a new scheduling order with the Court. At no time has any Defendant refused to appear or provide dates for deposition. Your continued inaccurate attacks and vitriolic communications are neither necessary nor appreciated.  Defendants will provide dates for deposition in October-November by August 6, 2019.

As we discussed, Defendants will agree to expand the limit on depositions under Rule 31 to 15 depositions for each side.  We have agreed that this 15-deposition limit currently applies to fact witnesses and does not include depositions of designated testifying expert witnesses.

Nicole Williams
July 22, 2019
Page 6

Thank you for your anticipated cooperation.

Sincerely,

*Kimberly D. Annello*

Kimberly D. Annello

KDA/kb