UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                          :
VEROBLUE FARMS USA INC.,                                   :
                                                          :
                              Plaintiff,                   :
                                                          :                    20 Civ. 4394 (JPC)
               -v-                                         :
                                                          :                    OPINION AND ORDER
                                                          :
CANACCORD GENUITY LLC,                                     :
                                                          :
                              Defendant.                   :
                                                          :
-----------------------------------------------------------------------X

On October 9, 2020, Plaintiff VeroBlue Farms USA, Inc. ("VBF") filed a Fourth Amended Complaint spanning 221 pages and 97 exhibits, alleging that Defendant Canaccord Genuity LLC assisted VBF's own founders' fraudulent acts and fiduciary breaches. Now before the Court are Canaccord's motions to dismiss the Third and Fourth Amended Complaints under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as well as Canaccord's motions for sanctions in connection with both the Third and Fourth Amended Complaints. For the reasons that follow, the Court denies Canaccord's motion to dismiss the Third Amended Complaint as moot, grants Canaccord's motion to dismiss the Fourth Amended Complaint with prejudice, and denies Canaccord's motions for sanctions.

## I. Background

### A. Factual Allegations

Except as otherwise noted, the following facts are taken from the Fourth Amended Complaint and from the documents attached thereto. Dkt. 335 ("FAC"); *see Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir. 2002) (noting that at the motion to dismiss stage, a court may consider "any written instrument attached to [the complaint] as an exhibit or any statements or

documents incorporated in it by reference" as well as any documents "integral" to the complaint, *i.e.*, "where the complaint 'relies heavily upon [the document's] terms and effect'" (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995))).

VBF is an aquaculture, *i.e.*, fish farming, business, that was founded in 2014 by Leslie A. Wulf, Bruce A. Hall, James Rea, John E. "Ted" Rea, and Keith Driver (the "Founders"). FAC ¶ 1. According to the Fourth Amended Complaint, the Founders were in complete control of VBF from 2014 to 2018. *See id.* ¶ 21. From May 1, 2014 until December 14, 2015, Wulf, Hall, James Rea, and Ted Rea were the sole members of the VBF Board of Directors. *Id.* ¶ 22. After that point several "Independent Board Members" joined VBF's Board, *see id.* ¶¶ 24-32, but "the Founders still controlled VBF," *id.* ¶ 33. The Founders abused this control to (1) misappropriate "VBF cash and other assets" and (2) make "fraudulent misrepresentations and conceal[] . . . material facts" regarding the company's technology and profitability. *Id.* ¶ 62. Specifically, the Founders represented that VBF's "Opposing Flows Technology" ("OFT") provided a superior water filtration and oxygenation water system for VBF's fish tanks, when in fact it did not actually work. *Id.* ¶ 2. In addition, the Founders lied about their production and profitability numbers to give the false impression the business was high performing, when in fact the "application of the OFT was fatally flawed." *Id.* ¶¶ 2, 121.

Canaccord, an investment banking company, allegedly assisted the Founders in making these fraudulent misrepresentations.[1] In February 2015, VBF hired Canaccord to raise debt for VBF's parent company, VBF Canada. *Id.* ¶¶ 3, 47-48; *id.*, Exh. 95 ("Engagement Agreement").[2]

---

[1] VBF does not allege that Canaccord was involved in the Founders' misappropriations. *See* FAC ¶ 63.

[2] Although VBF attached the Engagement Agreement and Mutual Release, detailed below, to the Fourth Amended Complaint, VBF appears to suggest that the Court cannot consider them with respect to certain claims. *See* FAC ¶ 739 ("Neither the Engagement Letter nor the Release

Pursuant to the Engagement Agreement, Canaccord was authorized to distribute marketing materials to prospective investors, but VBF was "solely responsible for the accuracy and completeness" of those materials.  Engagement Agreement at 2.  Canaccord had "no obligation to verify[] the accuracy or completeness of" information prepared or supplied by VBF and was "under no circumstances" to "be liable to [VBF] for any damage arising out of the inaccuracy or incompleteness of any such information."  *Id.* at 4.  In the fall of 2015, the parties orally agreed to expand the Engagement Agreement; when the National Bank of Canada, which VBF had hired to raise equity, discontinued its efforts, Canaccord agreed to raise equity for VBF in addition to debt. FAC ¶¶ 53, 762.

In accordance with the Engagement Agreement, Canaccord drafted marketing decks, which were disseminated to "those who became VBF shareholders, Independent Board Members, Independent Officers, and possibly then-current VBF shareholders not affiliated with the Founders."  *Id.* ¶¶ 59-60.  These decks incorporated the Founders' lies about the company's technology and profitability.  The Fourth Amended Complaint alleges that Canaccord knew or should have known that these representations were false.  *See, e.g.*, *id.* ¶¶ 80, 87, 118-121.  In support, the Fourth Amended Complaint leans heavily on a June 15, 2015 email from Dr. Anthony Michaels, an aquaculture expert that Canaccord had contacted to investigate VBF.  *See id.* ¶ 4.  In

---

were referenced in the previous counts.  They also are not central to VBF's claims against Canaccord for aiding and abetting, knowing participation in the tort of another, conspiracy, negligent misrepresentation, fraudulent concealment, or unjust enrichment.  This is not a suit for breach of either agreement, and VBF can prove Counts I through VIII without reference to, and without reliance on, either document. Therefore, VBF pleads Count IX in the alternative.").  To the extent VBF makes such an argument, it is incorrect.  VBF attached both documents to the Fourth Amended Complaint, *see* FAC Exhs. 95, 96, and VBF references both documents throughout the Fourth Amended Complaint, *see* FAC ¶¶ 11, 700c, 710c, 737, 739, 740, 742, 743, 749-54, 756-63, 766, 767, 771-72.  Indeed, VBF bases its recission claim on the Mutual Release.  *See id.* ¶¶ 735-68. Accordingly, the Court considers both documents in deciding Canaccord's motion to dismiss.

that email, Dr. Michaels alerted Canaccord that, among other things, VBF's "energy and mass flux calculations [were] almost at the theoretical limits," that the fish that VBF farmed actually sell at half of the modeled price, and that the technology "is not new as claimed and multiple companies have gone bankrupt on similar systems." FAC, Exh. 20A. Canaccord immediately forwarded that email to Wulf, who forwarded it to Hall, Driver, Ted Rea, and James Rea—the remainder of the VBF Board. *Id.*; FAC ¶ 200.

The Fourth Amended Complaint contends that this was a "fork in the road" in that "Canaccord could have taken the right path, . . ceased its collaboration with the Founders[,] . . . and advised those other than the Founders who could have acted for VBF that a well-respected aquaculture expert had just thrown cold water on VBF." FAC ¶ 5. Instead, Canaccord, motivated by its desire to earn a commission, *id.* ¶ 11, "took the wrong path," *id.* ¶ 5, and "join[ed] the Founders in concealing VBF's fatal flaws and making misrepresentations regarding VBF's OFT, Metrics, and performance, instead of disclosing such critical facts to individuals who were then, or who later became, VBF shareholders, VBF non-Founder management, VBF directors who were independent of the Founders, and others who could act for VBF (besides the Founders, Canaccord's co-conspirators)," *id.* ¶ 6.

VBF contends that it suffered $80 million in damages as a result of this misconduct. *Id.* ¶ 12. However, VBF does not allege that Canaccord actually secured any funding during the parties' engagement. *See id.* ¶¶ 26-29 (describing the investments VBF secured but not alleging that Canaccord secured any); Dkt. 372, Exh. A ("Demand Letter") at 7-9;[3] *see also* Dkt. 246, Exh.

---

[3] Canaccord argues that the Court can consider the Demand Letter at this stage because the Fourth Amended Complaint extensively quotes from it and relies upon it, thereby rendering it integral to the Fourth Amended Complaint. *See* Motion to Dismiss at 5 n.3; FAC ¶ 53. VBF does not dispute the accuracy or authenticity of the Demand Letter. Accordingly, the Court agrees with Canaccord that it is appropriate to consider the Demand Letter at this stage.

1 at 108-09.[4]  In fact, Canaccord threatened to sue VBF in August 2016 for obtaining financing on

its own and refusing to pay Canaccord fees it alleged it was due under the Engagement Agreement.

FAC ¶¶ 53, 738; Demand Letter; FAC, Exh. 96 ("Mutual Release") at 1.

To settle this dispute, on September 26, 2016, VBF and Canaccord entered into a Mutual

Release.  VBF agreed to pay Canaccord $475,000, and VBF and Canaccord agreed to release each

other from "any and all claims . . . known or unknown . . . based upon, relating to or arising out of

the Engagement Agreement, the Dispute (including any efforts to resolve the Dispute), the

Transaction, the engagement of Canaccord to provide services to [VBF] and its subsidiaries, and/or

the services that Canaccord provided to [VBF] and its subsidiaries."  Mutual Release at 1-2; *see*

FAC ¶¶ 11, 700c, 710c, 734, 738.  The Fourth Amended Complaint does not allege any dealings

between the parties after this point.

## B.  Procedural History

This is one of three actions VBF filed against Canaccord within the span of six months.

*See Veroblue Farms USA, Inc. v. Wulf*, No. 19 Misc. 375 (AJN) (S.D.N.Y.) (the "Subpoena

Action"); *Veroblue Farms USA, Inc. v. Wulf*, No. 3:19 Civ. 764-X (N.D. Tex.) (the "Texas

---

[4] In moving to dismiss, Canaccord asserts that it did not raise any funding for VBF.  Dkt. 356 ("Motion to Dismiss") at 11 & n.8.  In support, it cites a settlement letter that VBF's attorney filed on the docket, in which VBF stated that Canaccord raised "$0" from investors.  *Id.*; Dkt. 246, Exh. 1 at 108-09.  "While consideration on a motion to dismiss is typically limited to the four corners of an amended complaint, a court is not required to 'turn a blind eye to [a plaintiff's] previous filings.'"  *Kupferstein v. TJX Cos.*, No. 15 Civ. 5881 (NG), 2017 WL 590324, at *2 (E.D.N.Y. Feb. 14, 2017) (quoting *Kupferstein v. Wakefern Food Corp.*, No. 15 Civ. 5828 (AMD), Dkt. 25 at 4 (E.D.N.Y. May 13, 2016)).  Although VBF does not contest this, the Court concludes that it need not consider this letter at this stage, as the Fourth Amended Complaint, on its face, does not allege that Canaccord raised any money from investors.  This omission is telling.

Action"); *Veroblue Farms USA, Inc. v. Canaccord Genuity LLC*, Adv. No. 20-09002 (Bankr. N.D. Iowa) (the "Iowa Action").[5]

As detailed below, the claims before this Court were severed from the Texas Action; the remainder of that action, which includes VBF's claims against the Founders, remains pending in the Northern District of Texas.  But the Texas Action did not, in fact, begin in Texas.  It began when VBF filed suit against the Founders in the Northern District of Iowa on July 31, 2018.  Dkt. 1. In its initial Complaint, VBF alleged that the Founders committed fraud and made material misstatements via a number of discrete "schemes."  *Id.*  VBF did not name Canaccord as a defendant or otherwise mention Canaccord.  On August 15, 2018, VBF filed its First Amended Complaint.  Dkt. 9.  VBF again did not name Canaccord as a defendant.  The Iowa court then transferred the action to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a).  Dkt. 50.

After the case was transferred to Texas, on September 23, 2019, VBF filed its Second Amended Complaint (the "SAC"), adding Canaccord as a defendant for the first time.  Dkt. 159. Canaccord and several other Defendants moved to dismiss.  The Texas court then transferred the claims against Canaccord to this District based on the forum selection clause in the Engagement Agreement.  Dkt. 291 ("Texas Opinion") at 35-37.  In doing so, the Texas court concluded that the public interest favored transfer because the Engagement Agreement had a New York choice-of-law provision and that New York has a "stronger interest than Texas in resolving this dispute."  *Id* at 35-36.  In the same opinion, the Texas court resolved several motions to dismiss filed by the Founders.  In doing so, the Texas court noted that VBF "can only sue for the fraud the defendants

---

[5] VBF filed the Subpoena Action to compel Canaccord respond to a non-party subpoena seeking certain discovery.  Subpoena Action, Dkt. 4.  The court dismissed the case on the basis that VBF could not proceed via a subpoena and was required to pursue the normal discovery process in this action.  *See id.* Dkts. 27, 35.  The Iowa Action is stayed pending resolution of this action.  Iowa Action, Dkts. 33, 34.

perpetrated on it," and because "the disinterested directors control [VBF], [VBF] should be able to know what statements were false or what material omissions were made."  *Id.* at 28. Accordingly, the Texas court "direct[ed] [VBF] to remove from its new pleading allegations of fraud where [VBF] was not the recipient of the fraudulent statement."  *Id.* at 20.

After it was transferred, this case was assigned to the Honorable Paul G. Gardephe.  The parties stipulated to allowing VBF until August 3, 2020 to file another amended complaint and Canaccord until September 14, 2020 to file a motion to dismiss. Dkt. 304.  VBF filed a document entitled "First Amended Complaint" on August 3, 2020, but it was rejected by the Clerk's Office because it was not in fact the first amended complaint filed in this action.  On August 6, 2020, after the August 3 deadline to file had passed, VBF moved for leave to re-file the amended complaint or for it to be considered properly titled. Dkt. 307.  Canaccord opposed this request on the basis that the proposed complaint "suffer[ed] from a number of glaring defects and violate[d] the most basic pleading requirements." Dkt. 308 at 1.  Canaccord "provide[d] notice under Federal Rule of Civil Procedure 11(c) of VBF's counsel's failure to abide by their obligations to ensure that their pleadings are not 'presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.'"  *Id.* at 4.  The Court granted VBF leave to file the Third Amended Complaint and stated that Canaccord could raise any objections in its motion to dismiss. Dkt. 310.

On August 10, 2020, VBF filed the Third Amended Complaint.  Dkt. 311 ("TAC").  The Third Amended Complaint was 183 pages long and attached hundreds of pages of exhibits.  The Third Amended Complaint incorporated the most recent amended complaint in the Texas Action, *id.* ¶ 13, Exh. 1 (the "Texas Complaint"), which itself was 283 pages long, exclusive of exhibits, and contained over 1,000 numbered paragraphs.

Canaccord served a sanctions motion on VBF on August 21, 2020, raising issues with VBF's Third Amended Complaint.  Dkt. 354 ("First Sanctions Motion"); *see* Dkt. 374 ("Second Sanctions Motion") at 2.  On September 3, 2021, VBF notified Canaccord that it intended to amend the Third Amended Complaint.  *See* Dkt. 375 ("Opp'n to Second Sanctions Motion") at 2.  The parties filed a proposed stipulation extending Canaccord's September 14, 2020 deadline to respond to the Third Amended Complaint until September 28, 2021.  Dkt. 314 at 3.  Judge Gardephe did not endorse the stipulation.

Then, at 5:39 p.m. on September 10, 2020, VBF informed Canaccord that it intended to file a pre-motion letter seeking leave to amend the Third Amended Complaint the following day, and asked Canaccord to state whether it consented to allowing it leave to amend.  *See* Second Sanctions Motion at 2.  Canaccord responded that it would not be able to read the extremely lengthy proposed complaint and assess whether it consented under that time frame, and VBF filed the pre-motion letter the following day.  *Id.* at 2-3; Dkt. 315.

On September 14, 2021, pursuant to the agreed-upon briefing schedule endorsed by the Court, Canaccord filed a motion to dismiss the Third Amended Complaint.  *See* Dkt. 316 at 1 n.1. In accordance with Judge Gardephe's individual rules, Canaccord served this but did not file it on the docket.  That same day, Canaccord filed a letter motion for a conference regarding sanctions. *See id.*  Judge Gardephe referred this case to the Honorable Robert W. Lehrburger for general pretrial supervision.  Dkt. 318.

This case was then reassigned to the undersigned.  Dkt. 324.  Upon reassignment, the Court instructed the parties to file any motion papers that had been served but not docketed.  *Id.* Accordingly, Canaccord filed its motion to dismiss the Third Amended Complaint on October 2, 2021.  Dkt. 326.  Judge Lehrburger held a conference on October 7, 2021, and permitted VBF to

file its Fourth Amended Complaint. *See* Dkt. 334. Judge Lehrburger, however, cautioned VBF that "it's conceivable that at some point in the future, it may be appropriate for consideration of whether the costs associated with the revised briefing might be divided in some way." Dkt. 348 ("Tr.") at 16.

VBF filed the Fourth Amended Complaint on October 9, 2020. *See* Dkt. 335. The Fourth Amended Complaint does not incorporate the Texas Complaint, but adds 38 pages of allegations from that complaint. In total, the Fourth Amended Complaint brings nine counts against Canaccord: (1) aiding and abetting and knowing participation in the Founders' breaches of fiduciary duties, (2) aiding and abetting the Founders' fraudulent concealment, (3) aiding and abetting the Founders' fraudulent misrepresentations, (4) conspiracy to breach the Founders' fiduciary duties to VBF, (5) conspiracy to defraud VBF, (6) negligent misrepresentation, (7) fraudulent concealment, (8) alternative claim for unjust enrichment, and (9) alternative claim for recission and/or declaratory judgment, as related to the Engagement Agreement and Mutual Release. FAC ¶¶ 661-739.

Canaccord moved to dismiss the Fourth Amended Complaint on October 30, 2020. That motion was fully submitted on December 18, 2020. Motion to Dismiss; Dkts. 364 ("Opp'n to Motion to Dismiss"), 371. Canaccord's first motion for sanctions was also fully submitted on December 18, 2020. First Sanctions Motion; Dkts. 367 ("Opp'n to First Sanctions Motion"), 371. VBF filed a second motion for sanctions based on the Fourth Amended Complaint on October 30, 2020. That motion was fully submitted on January 15, 2021. Second Sanctions Motion; Opp'n to Second Sanctions Motion; Dkt. 378. The Court held oral argument on August 30, 2021.

## II.   Defendant's Motions to Dismiss

For a complaint to survive a Rule 12(b)(6) motion to dismiss, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding the motion to dismiss, the Court "accept[s] all allegations in the complaint as true and draw[s] all inferences in the non-moving parties favor."   *LaFaro v. N.Y. Cardiothoracic Grp.*, 570 F.3d 471, 475 (2d Cir. 2009) (citation and internal quotation marks omitted).   Although the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015), that tenet "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice,'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (alteration in original) (quoting *Iqbal*, 556 U.S. 687).[6]

Both Canaccord's motion to dismiss the Third Amended Complaint and its motion to dismiss the Fourth Amended Complaint are pending before the Court.   When faced with a motion to dismiss a complaint that has since been amended, a district court "has the option of either denying the pending motion as moot or evaluating the motion in light of the facts alleged in the amended complaint."   *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303-04 (2d Cir. 2020).   In light

---

[6] Canaccord contends that VBF's claims must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), Motion to Dismiss at 23-24, whereas VBF maintains that the more lenient standard of Rule 8(a) applies to certain elements of its claims, Opp'n to Motion to Dismiss at 12.   Because for reasons that follow the Court concludes that the Fourth Amended Complaint must be dismissed under either standard, it is not necessary to resolve whether certain, or all, of VBF's claims must satisfy Rule 9(b)'s more stringent standard.

of the second motion to dismiss, the Court elects the former, and denies the motion to dismiss the Third Amended Complaint as moot.

The Court therefore addresses only the motion to dismiss the Fourth Amended Complaint. Canaccord moves to dismiss the Fourth Amended Complaint on the basis that (1) the Mutual Release and the Engagement Agreement bar VBF's Claims, (2) New York's *in pari delicto* doctrine bars VBF's claims, (3) the Fourth Amended Complaint fails to state a claim upon which relief can be granted, and (4) the Fourth Amended Complaint fails to meet the basic pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. Because the Court concludes that the Mutual Release, the Engagement Agreement, and the *in pari delicto* doctrine all bar VBF's claims, the Court does not address Canaccord's other arguments for dismissal.

## A.   The Mutual Release

The parties agree that New York law governs the scope of the Mutual Release. *See* Motion to Dismiss at 12 & n.9; Opp'n to Motion to Dismiss at 14. Under New York law, "a valid release constitutes a complete bar to an action on a claim which is the subject of the release." *Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276 (2011) (internal quotation marks and citation omitted). A release may cover unknown claims, including unknown fraud claims, "if the parties so intend and the agreement is 'fairly and knowingly made.'" *Id.* (quoting *Mangini v. McClurg*, 24 N.Y.2d 556, 566-67 (1969)). Whether the parties intended to release such claims "must be determined from the language in the" release. *Gamble v. Tyson*, No. 17 Civ. 6635 (LAK) (SN), 2019 WL 5722129, at *8 (S.D.N.Y. Jan. 4, 2019).

The defendant bears the initial burden of establishing that it has been released from certain claims. *Centro Empresarial Cempresa S.A.*, 17 N.Y.3d at 276. The burden then shifts to the plaintiff to show a reason "sufficient to void the release," such as duress, illegality, fraud, or mutual

mistake.  *Id.* (internal quotation marks and citation omitted).  If a plaintiff seeks to invalidate a release based on fraudulent inducement, the plaintiff must identify "a separate fraud from the subject of the release."  *Id.*

Canaccord and VBF entered into the Mutual Release in September 2017, after Canaccord threatened to sue VBF for breaching the Engagement Agreement.  FAC ¶¶ 53, 738; *see* Demand Letter.  The Mutual Release included the following language:

> [VBF] . . . fully and forever . . . release[s] and discharge[s] Canaccord . . . from and against any and all claims, demands, damages, debts, disputes, liabilities, accounts, obligations, costs, expenses, actions and causes of action, of every nature, whether based upon tort, contract or any other theory of recovery, whether known or unknown, suspected or unsuspected, contingent or fixed, liquidated or unliquidated, which it or [VBF] ever had, now has, owns or holds, or at any time heretofore ever had, owned or held, or may at any time have, own or hold, against [Canaccord], based upon, relating to or arising out of the Engagement Agreement, the Dispute[7] (including any efforts to resolve the Dispute), the Transaction, the engagement of Canaccord to provide services to [VBF] and its subsidiaries, and/or the services that Canaccord provided to [VBF] and its subsidiaries . . . .

Mutual Release ¶ 3(b).[8]

Thus, under the plain terms of the Mutual Release, VBF released Canaccord from liability for the claims it now brings.  The Mutual Release broadly covers claims "known or unknown" based on any "theory of recovery," including claims "based upon tort."  *Id.*  VBF's claims sound in tort.  And the Mutual Release covers claims "based upon, relating to or arising out of," among other things, "the engagement of Canaccord to provide services to [VBF] and its subsidiaries, and/or the services that Canaccord provided to [VBF] and its subsidiaries."  *Id.*  VBF's claims all arise out of the services that Canaccord provided VBF.

---

[7] The Mutual Release defined the "Dispute" as "whether VeroBlue owes any amount of money to Canaccord under the Engagement Agreement with the [sic] respect to the Transaction and, if so, the amount owed."  *Id.* at p. 1, Background C.

[8] VBF does not dispute that it is bound by the Mutual Release, which binds VeroBlue Farms Inc. and its "affiliates."  Mutual Release at 2; Motion to Dismiss at 13 n.10; FAC ¶ 46.

12

VBF's arguments otherwise are unavailing.  In the Fourth Amended Complaint, VBF contends that the Mutual Release is voidable because Canaccord "concealed" from VBF its participation in the Founders' supposed misconduct.  *See* FAC ¶ 749 ("Because the true facts of the Founders' breaches of fiduciary duty, fraud, and material misrepresentations, as assisted by Canaccord, were concealed and never revealed to VBF through its Independent Board Members, the . . . [Mutual] Release [is] voidable."); *see also id.* ¶ 745.  In opposing the motion to dismiss, VBF expands upon this, arguing that it "did not knowingly release any claims as its fiduciaries, the Founders and Canaccord, did not make proper disclosures to VBF of the facts of the misconduct alleged in the FAC that occurred prior to the Release."  Opp'n to Motion to Dismiss at 33.  VBF contends that the Founders' fraud "[a]t a minimum . . . raise a fact issue about the [Mutual] Release that precludes dismissal."  *Id.* at 31.

This argument fails under well-established New York law.  Put simply, a signatory need not disclose all facts to make a release valid.  *See Consorcio Prodipe, S.A. de C.V. v. Vinci, S.A.*, 544 F. Supp. 2d 178, 190 (S.D.N.Y. 2008) ("[U]nder New York law, all the facts and circumstances of the claims being released need not be disclosed in order for a release to be valid and enforceable." (citing *Alleghany Corp. v. Kirby*, 333 F.2d 327, 333 (2d Cir. 1964)); *Alleghany Corp.*, 333 F.2d at 333 ("There is no prerequisite to the settlement of a fraud case that the  defendant must come forward and confess to all his wrongful acts in connection with the subject matter of the suit."); *accord Centro Empresarial Cempresa S.A.*, 17 N.Y.3d at 276.

Indeed, "[a] 'general release executed even without knowledge of a specific fraud effectively bars a claim or defense based on that fraud.'"  *Consorcio Prodipe, S.A. de C.V.*, 544 F. Supp. 2d at 191 (quoting *Sotheby's, Inc. v. Dumba*, No. 90 Civ. 6458 (KMW), 1992 WL 27043, at *7 (S.D.N.Y. Jan. 31, 1992)).  This includes a release executed even before any "semblance of fraud

had come to light." *Id.* at 190; *see, e.g.*, *IBM v. Simon*, 376 F. Supp. 3d 292, 301 (S.D.N.Y. 2019) (agreeing with the plaintiff's argument that "in releasing all claims, 'whether known or unknown, . . . hidden or concealed' that arise out of or relate to any 'matters related to [their transaction]' Defendants have released any claim that [the plaintiff] fraudulently induced the Settlement by hiding the true value of its [s]ales [r]evenue" (citation omitted)).  Instead, to void a release for fraud, VBF must identify a "separate fraud" not covered by the release.  VBF has failed to do so here. Because "[t]he fraud described in the complaint . . . falls squarely within the scope of the release, . . . that fraud cannot nullify the release." *Estate of Mautner v. Alvin H. Glick Irrevocable Grantor Tr.*, No. 19 Civ. 2742 (NRB), 2019 WL 6311520, at *4 (S.D.N.Y. Nov. 25, 2019) (alterations in original) (internal quotation marks omitted).

VBF's suggestion in its opposition that Canaccord breached a fiduciary duty does not change this calculus.  As an initial mater, VBF has not alleged facts suggesting Canaccord actually owed VBF a fiduciary duty.  VBF's Fourth Amended Complaint alleges that VBF aided and abetted and conspired with the Founders to breach *the Founders'* fiduciary duties.  *See, e.g.*, FAC ¶¶ 12, 13, 64, 66, 69, 403, 661-670, 694-705.  Nowhere in the 221-page Fourth Amended Complaint does VBF allege that Canaccord owed VBF a fiduciary duty.  Instead, it alleges that, by the nature of its role as VBF's "alleged agent," Canaccord had a "special relationship with VBF" that required it to "impart correct information to VBF." *Id.* ¶ 717.  And the Engagement Agreement specifically stated that it was not creating a fiduciary relationship.  *See* Engagement Agreement at 6.  Even VBF's opposition is tepid in this respect, asserting that "Wulf, and *arguably* Canaccord, had affirmative duties of disclosure to VBF." Opp'n to Motion to Dismiss at 33 (emphasis added).

Regardless, VBF's argument still fails.  The New York Court of Appeals made clear in *Centro* that "[w]here a principal and fiduciary are sophisticated parties engaged in negotiations to

terminate their relationship . . . the principal cannot blindly trust the fiduciary's assertions."  17

N.Y.3d at 279.  This is particularly true where "the fiduciary relationship is no longer one of

unquestioning trust."  *Id.* at 278.  But even *Centro* "d[id] not go so far as to hold that a relationship

of unquestioning trust *prevents* a party from being able to release fraud claims."  *Chadha v.

Wahedna*, 146 N.Y.S.3d 466 (Sup. Ct. 2021) (emphasis added).  "In fact, nothing in *Centro* (or its

progeny *Pappas v. Tzolis*, 20 N.Y.3d 228 (2012)) requires that the parties have prior business

disputes to be able to release fraud claims."  *Id.*  Instead, "[t]he test . . . is whether, given the nature

of the parties' relationship at the time of the release, the principal is aware of information about the

fiduciary that would make reliance on the fiduciary unreasonable."  *Pappas*, 20 N.Y.3d at 233.

Reliance on Canaccord in this instance would have been unreasonable.  VBF and Canaccord

are sophisticated entities and were represented by counsel during the negotiation of the Mutual

Release.  And by that point, the parties' relationship had clearly deteriorated—Canaccord was

threatening to sue VBF for failing to pay it for its services.  *See, e.g.*, *Pappas*, 20 N.Y.3d at 233

(finding that the parties' relationship "was not one of trust" because "[t]he relationship between

[the plaintiffs and the defendant] had become antagonistic").  Thus the "nature of the parties'

relationship at the time of the release" was no longer one of "unquestioning trust."  *Id.* at 232-33.

Finally, VBF argues that even if the Mutual Release is valid, it does not cover VBF's claims,

since it was "only addressing disputes about whether VBF owed Canaccord any money for its

services, and not VBF's current intentional tort claims."  Opp'n to Motion to Dismiss at 34.  This

too is unconvincing.  That the parties signed the Mutual Release in order to settle Canaccord's

payment demands does not nullify the Mutual Release's broad language.  *See Consorcio Prodipe,

S.A. de C.V.*, 544 F. Supp. 2d at 189 ("New York law . . . recognizes that 'a clear and unambiguous

release . . . should be enforced according to its terms.'" (quoting *Booth v. 3669 Del.*, 92 N.Y.2d

934, 935 (1998))).  Instead, the Mutual Release clearly reflects the parties' intent to resolve all potential claims between them.

In support of its argument otherwise, VBF relies principally on *Chiappone v. North Shore University Hospital*, 83 N.Y.S.3d 113 (App. Div. 2018).  *See* Opp'n to Motion to Dismiss at 34.  In *Chiappone*, the defendant hospital and the plaintiff settled claims arising from an initial hospital visit by executing a broad release covering "all past, present and future claims."   83 N.Y.S.3d at 115.   The plaintiff then sought to sue the hospital for injuries that occurred during a second, unrelated hospital visit that occurred after the initial visit but before the parties executed the release.  *Id.*  The Second Department concluded that the defendant hospital had failed to establish, as a matter of law, that in executing the release, the plaintiff intended to release claims for the subsequent, unrelated hospital visit.   That the plaintiff knew of the injury from the subsequent visit was "insufficient, itself, to establish that the release was intended to cover any potential claims" beyond those arising from the first visit.  *Id.* at 116.

But *Chiappone* is distinguishable.  Most importantly, the parties in *Chiappone* were not sophisticated parties.  VBF and Canaccord, by contrast, are both sophisticated parties that were represented by counsel in executing the Mutual Release.  "As sophisticated entities, they negotiated and executed an extraordinarily broad release with their eyes wide open."  *Centro Empresarial Cempresa S.A.*, 17 N.Y.3d at 278.  "They cannot now invalidate that release by claiming ignorance of the depth of their fiduciary's misconduct."  *Id.*  Moreover, unlike in *Chiappone*, the Mutual Release reflects VBF's intent to release *all* claims arising out of the parties' previous relationship.  *See, e.g.*, Mutual Release ¶ 3 (releasing all claims "arising out of the Engagement Agreement, the Dispute (including any efforts to resolve the Dispute), the Transaction, the engagement of Canaccord to provide services to [VBF] and its subsidiaries, and/or the services that Canaccord

provided to [VBF] and its subsidiaries").[9]   As such, any claims arising from that relationship, including this one, are barred.[10]

## B.   The Engagement Agreement

While the Mutual Release alone provides sufficient basis to dismiss the Fourth Amended Complaint, the Court next turns to the Engagement Agreement, which Canaccord argues also bars VBF's claims.  The parties agree that New York law also governs the scope of the Engagement Agreement.  *See* Motion to Dismiss at 12 & n.9; Opp'n to Motion to Dismiss at 14.  The Engagement Agreement, which laid out the terms of the "Canaccord Project," stated:

> In carrying out [Canaccord's] responsibilities under this agreement, [Canaccord] will necessarily rely on information prepared or supplied by [VBF] . . . .  However, [Canaccord] will be entitled to rely on, and assume no obligation to verify, the accuracy or completeness of such information and under no circumstances will be

---

[9] VBF also cites to *Green v. Lake Placid 1980 Olympic Games, Inc.*, 538 N.Y.S.2d 82, 84-85 (App. Div. 1989).  *See* Opp'n to Motion to Dismiss at 34-35.  But *Green* is clearly distinguishable.  There, the court found that there was a question of material fact as to whether the parties intended to release unrelated claims because (1) the release specifically referred to only one outstanding dispute, (2) the release was prepared by the defendant's attorney and was not reviewed by the plaintiff's attorney, (3) there was no consideration for releasing additional claims, and (4) the defendant's attorney purportedly represented that the settlement was not meant to preclude the unrelated claims.  *Green*, 538 N.Y.2d at 84-85.

[10] During oral argument, VBF made much of a June 2021 opinion from the Texas court denying one of the Founder's motions to dismiss, and suggested that the Court should deny dismissal here in the interests of "comity."  It appears that VBF was referring to the Texas court's June 11, 2021 opinion denying Keith Driver's motion to dismiss in a single paragraph.  It reads, in relevant part:

> Next, Driver moved to dismiss VeroBlue's third amended complaint because (1) a release bars the claims against Driver, (2) the complaint inadequately pleads fraud claims in Counts 1-15 and 33 against Driver, and (3) Counts 1-15 and 33 are not actionable.  The Court has reviewed the briefing and hereby DENIES Driver's motion to dismiss VeroBlue's third amended complaint.

*Veroblue Farms USA, Inc. v. Wulf*, No. 3:19 Civ. 764-X, 2021 WL 2414852, at *2 (N.D. Tex. June 11, 2021).  The Court is able to glean little from this opinion, including why it would weigh against dismissal in this case, which concerns a different complaint, a different defendant, and a different release.

liable to [VBF] for any damages arising out of the inaccuracy or incompleteness of any such information.

Engagement Agreement at 4.[11]   VBF's claims, which concern Canaccord's allegedly misleading marketing decks, plainly "aris[e] out of the [alleged] inaccuracy or incompleteness" of information "prepared or supplied by [VBF]" for Canaccord's use during the Canaccord Project.

VBF's arguments to the contrary are again unavailing.   First, VBF argues that the Engagement Agreement is void because the Mutual Release "specifically terminated and superseded the Engagement Letter."   Opp'n to Motion to Dismiss at 28.   It is not lost on the Court that VBF argues that the Engagement Agreement is void in light of the Mutual Release yet also argues that the Mutual Release is itself voidable.   Regardless, VBF does not dispute that the Engagement Agreement governed the terms of the parties' transactions before they executed the Mutual Release, *i.e.*, when the alleged fraud occurred.   And VBF does not argue that the Mutual Release somehow *imposed* liability on Canaccord for using the information VBF had previously provided it.   Nor could it.   The Mutual Release only served to absolve Canaccord of liability even further.

Second, VBF suggests that there are factual issues that cannot be resolved at this stage because the parties orally modified the Engagement Agreement and Canaccord never actually signed the Engagement Agreement.   *See* Opp'n to Motion to Dismiss at 28.   As to the first point, the Fourth Amended Complaint describes the terms of the supposed oral modification, pursuant to which Canaccord agreed to seek equity, in addition to debt, investments.   *See* FAC ¶ 53.   This oral modification has no impact on VBF's claims.   And as to the second point, the Texas court already

---

[11] VBF does not dispute that the Engagement Agreement, which was between Canaccord and "VeroBlue Farms, Inc. and its present and future subsidiaries and any entity used thereby to facilitate the transactions contemplated thereby" included VBF.   Engagement Agreement at 1; *see* FAC ¶ 46 (referring to VeroBlue Farms Inc. as VBF's parent company).

made clear that "under New York law, agreements need only be signed by the party the agreement will be enforced against."  Texas Opinion at 36.  VBF cannot attempt to revive dead arguments to survive dismissal.

Third, VBF argues that even if the Engagement Agreement is not void, it does not cover intentional torts.  "[A]n exculpatory agreement, no matter how flat and unqualified its terms, will not exonerate a party from liability under all circumstances," such as for "willful or grossly negligent acts."  *Kalisch-Jarcho, Inc. v. City of New York*, 58 N.Y.2d 377, 384-85 (1983).  "More pointedly, an exculpatory clause is unenforceable when, in contravention of acceptable notions of morality, the misconduct for which it would grant immunity smacks of intentional wrongdoing."  *Id.* at 385.

VBF argues that "[a]iding or abetting fraud and breaches of fiduciary duty and entering into a conspiracy to do so most certainly 'smacks of intentional wrongdoing.'"  Opp'n to Motion to Dismiss at 29.  The Court disagrees, at least in these circumstances.  VBF's theory is that Canaccord committed wrongdoing by relying on the information that VBF gave it.  But the Engagement Agreement specifically *allowed* Canaccord to rely on that information.  It therefore cannot "smack[] of intentional wrongdoing" to actually rely on that information, even if it was false.

To the extent that VBF suggests that other provisions of the Engagement Agreement, which "provided Canaccord with control over and duties related to the information provided by the Founders that is the subject of VBF's claims against Canaccord," somehow led to an affirmative duty to stop the Founder's scheme, Opp'n to Motion to Dismiss at 30, this too fails.  The Engagement Agreement gave Canaccord the right to review any materials prior to distribution, to conduct due diligence, and to rely on information "reasonably believed by [Canaccord] to be reliable."  Engagement Agreement at 4.  These provisions simply did not nullify the language in

that Agreement releasing Canaccord from liability for VBF's bad information.  Thus, on its plain

terms, the Engagement Agreement too bars VBF's claims.

**C.   Canaccord's _In Pari Delicto_ Defense**

While both the Engagement Agreement and the Mutual Release independently bar VBF's

claims, the Court also considers another of Canaccord's arguments for dismissing VBF's claims—

New York's _in pari delicto_ doctrine.  VBF responds that this defense should be governed by Iowa

or Texas law, not New York law.  VBF explains that under those states' laws, the defendant bears

a higher burden to show the _in pari delicto_ doctrine applies, and VBF contends that Canaccord has

not met that burden.  In addressing Canaccord's motion to dismiss based on the _in pari delicto_

doctrine, the Court first addresses what state law applies before turning to the _in pari delicto_ defense

on the merits.

**1.   Choice of Law**

The Mutual Release stated that the Mutual Release "and any dispute concerning [the Mutual

Release] and/or the Released Matters, shall in all respects be interpreted, enforced, and governed

by and under the laws of the State of New York."  Mutual Release ¶ 8.  It defined the "Released

Matters" as to both VBF and Canaccord to include claims "based upon, relating to or arising out of

the Engagement Agreement, the Dispute (including any efforts to resolve the Dispute), the

Transaction, the engagement of Canaccord to provide services to [VBF] and its subsidiaries, and/or

the services that Canaccord provided to [VBF] and its subsidiaries and any compensation therefor."

_Id._ ¶ 3(b).  It specified that these Released Matters include "all . . . causes of action[] of every nature,

whether based upon tort, contract, or any other theory of recovery" that are "based upon, relating

to or arising out of . . . the services that Canaccord provided to [VBF]."  _Id._

VBF argues that New York choice-of-law provision should not apply because "[t]he tort claims asserted against Canaccord here arise from separate and intentional wrongful conduct by Canaccord . . . and fell well outside the provision of any actual legitimate services to VBF." Opp'n to Motion to Dismiss at 15.   But this is in conflict with VBF's own allegations in the Fourth Amended Complaint.   VBF's entire theory is that Canaccord "helped the Founders create misrepresentations and conceal negative information," "disseminated the misrepresentations," and "helped the Founders create false marketing materials for VBF," all to "earn a large commission." FAC ¶¶ 9-11.  The claims here therefore clearly arose out of the relationship between Canaccord and VBF.

And even if the provisions did not apply, New York law would still govern VBF's underlying tort claims and Canaccord's *in pari delicto* defense.  Because determining what law applies to a party's claims can be a fact-intensive inquiry, courts "often decline to make a choice of law determination at the motion to dismiss stage." *Cotiviti, Inc. v. Deagle*, 501 F. Supp. 3d 243, 255 (S.D.N.Y. 2020) (quoting *Holborn Corp. v. Sawgrass Mut. Ins. Co.*, 304 F. Supp. 3d 392, 398 (S.D.N.Y. 2018)).  However, "when facts necessary to make that determination are sufficiently clear, courts in this District have engaged in this analysis at the motion to dismiss stage." *Id.*; *see also Licci ex rel. Licci v. Lebanese Canadian Bank, SAL* ("*Licci I*"), 672 F.3d 155 (2d Cir. 2012) (affirming the district court's grant of a motion to dismiss based on choice-of-law rules).

"In diversity cases, federal courts resolve conflicts of law by looking to the conflicts rules of the forum state." *Williams v. Deutsche Bank Sec., Inc.*, No. 04 Civ. 7588 (GEL), 2005 WL 1414435, at *3 (S.D.N.Y. June 13, 2005) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  New York applies "an interest-analysis approach: 'The law of the jurisdiction having the greatest interest in the litigation will be applied.'" *Licci ex rel. Licci v. Lebanese*

*Canadian Bank, SAL* ("*Licci II*"), 739 F.3d 45, 48 (2d Cir. 2013) (quoting *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 197 (1985)).  This is a "flexible approach" designed to assess which jurisdiction has the "greatest concern with the specific issue raised in the litigation" based on "its relationship or contact with the occurrence or the parties."  *Id.* at 48-49 (quoting *Licci I*, 672 F.3d at 157-58).  "[T]he interest analysis is applied differently depending on whether the rules in question are conduct-regulating rules that 'people use as a guide to governing their primary conduct,' or loss-allocating rules that 'prohibit, assign, or limit liability after the tort occurs.'"  *Id.* at 49 (quoting *Licci I*, 672 F.3d at 158).

VBF brings various tort claims based on fraud and negligent misrepresentation.  As the motion to dismiss concerns the "availability" of various claims of fraud it implicates "conduct regulating rules rather than loss allocating rules."  *Mark Andrew of Palm Beaches, Ltd. v. GMAC Com. Mortg. Corp.*, 265 F. Supp. 2d 366, 378 (S.D.N.Y. 2003), *aff'd*, 96 F. App'x 750 (2d Cir. 2004); *see La Luna Enters. v. CBS Corp.*, 74 F. Supp. 2d 384, 389 (S.D.N.Y. 1999) (claims of fraud are conduct-regulating); *Reed Const. Data Inc. v. McGraw-Hill Cos.*, 49 F. Supp. 3d 385, 425 (S.D.N.Y. 2014) (noting that fraud "is generally a conduct-regulating doctrine"), *aff'd*, 638 F. App'x 43 (2d Cir. 2016).

In assessing conduct-regulating laws, "the law of the jurisdiction where the [allegedly tortious acts] occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders."  *Licci I*, 672 F.3d at 158 (quoting *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 384 (2d Cir. 2006)); *accord Mark Andrew of Palm Beaches, Ltd.*, 265 F. Supp. 2d at 378 ("New York courts have usually applied the law of the place of the tort.").  According to the Fourth Amended Complaint, "Canaccord . . . committed the tortious acts alleged herein in substantial part in New York."  FAC ¶ 18.  Indeed, the only conduct in the

Fourth Amended Complaint that Canaccord is alleged to have committed occurred in New York. *See, e.g.*, *id.* ¶¶ 228, 188; *see AHW Inv. P'ship, MFS, Inc. v. Citigroup Inc.*, 661 F. App'x 2, 5 (2d Cir. 2016) ("[T]he allegedly wrongful conduct . . . took place in New York . . . .  We therefore conclude that New York's rules on fraud damages and negligent misrepresentation apply.").  Thus, New York law applies to VBF's tort claims.

Therefore, Canaccord's affirmative defense of *in pari delicto* is also governed by New York law.  *See Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 459 n.3 (2010); *see also In re ICP Strategic Credit Income Fund Ltd.*, 568 B.R. 596, 608-09 (S.D.N.Y. 2017) (collecting cases for the proposition that *in pari delicto* is governed by the same law as the underlying tort), *aff'd sub nom. In re ICP Strategic Income Fund, Ltd.*, 730 F. App'x 78 (2d Cir. 2018); *Cobalt Multifamily Invs. I, LLC v. Shapiro*, 857 F. Supp. 2d 419, 434 (S.D.N.Y. 2012) ("[I]n this Circuit, the law governing an affirmative defense to a claim is the same as the law governing the claim itself."); *FIA Leveraged Fund Ltd. v. Grant Thornton LLP*, 56 N.Y.S.3d 12, 18 (App. Div. 2017) (concluding that *in pari delicto* is a "substantive equitable defense" that is governed by a contract's choice-of-law provisions and is "inextricably intertwined with the issues underlying the substantive claims brought by that party").

VBF's arguments otherwise are unpersuasive.  VBF contends that Iowa law should apply because neither party is domiciled in New York and the effects of the wrongful acts were felt most strongly in Iowa, where VBF resides.  Opp'n to Motion to Dismiss at 13-14.  VBF alternatively argues that Texas has a greater interest in the action since the Founders operated VBF out of their corporate offices in Texas.  *Id.* at 14.  These arguments might have carried weight if this was a loss-allocating rule, as domicile is typically the chief factor in determining choice of law for those type of claims.  *See Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 72, (1993) ("[I]f competing 'postevent

remedial rules' are at stake other factors are taken into consideration, chiefly the parties' domiciles."). But it is not. Accordingly, the parties' domiciles and the after-effects of the fraud do not require this Court to apply Iowa or Texas law. *See Licci I*, 672 F.3d at 158 ("Although the plaintiffs' injuries occurred in Israel, and Israel is also the plaintiffs' domicile, those factors do not govern where, as here, the conflict pertains to a conduct-regulating rule."). Instead, the Court applies the law of the forum where Canaccord's alleged wrongful conduct took place—New York.

### 2. New York's *In Pari Delicto* Doctrine

Under New York law, the *in pari delicto* doctrine "mandates that courts will not intercede to resolve a dispute between two wrongdoers" because "a wrongdoer should not profit from his own misconduct." *Kirschner*, 15 N.Y.3d at 464. Because "[c]orporations are not natural persons" and "must act solely through the instrumentality of their officers or other duly authorized agents," a corporation is responsible for the acts of "its authorized agents even if particular acts were unauthorized." *Id.* (citation omitted). This includes if the agent commits fraud. *See id.* Because *in pari delicto* is an affirmative defense, it is properly "resolved on the pleadings." *Id.* at 459 n.3; *see also Buckley v. Deloitte & Touche USA LLP*, No. 06 Civ. 3291 (SHS), 2007 WL 1491403, at *5 (S.D.N.Y. May 22, 2007) ("Courts may appropriately apply the doctrine of *in pari delicto* on a motion to dismiss on those occasions when issues of imputation are clearly established by the allegations on the face of the complaint.").

New York law allows for the "most narrow of exception[s]" to the *in pari delicto* doctrine—the adverse interest exception. *Kirschner*, 15 N.Y.3d at 566-67. "This exception provides that when an agent is engaged in a scheme to defraud his principal, either for his own benefit or that of a third person, the presumption that knowledge held by the agent was disclosed to the principal fails because he cannot be presumed to have disclosed that which would expose and defeat his fraudulent

purpose." *Center v. Hampton Affiliates, Inc.*, 66 N.Y.2d 782, 784 (1985).  This applies in the case of "outright theft or looting or embezzlement—where the insider's misconduct benefits only himself or a third party; *i.e.*, where the fraud is committed against a corporation rather than on its behalf." *Kirschner*, 15 N.Y.3d at 466-67.  "It cannot be invoked merely because [the agent] has a conflict of interest or because he is not acting primarily for his principal." *Center*, 66 N.Y.2d at 784.

VBF contends that it has raised a factual question of whether the adverse interest exception applies because "the Founders, with Canaccord's knowing assistance, favored their own interests over those of VBF and that the inevitable outcome of that misconduct was the implosion of VBF while the Founders and Canaccord reaped financial benefits."  Opp'n to Motion to Dismiss at 37. VBF contends that the fraud merely extended the company's legal existence, and as such it is not clear if VBF "benefitted" from the Founders' conduct.  *Id.* at 38-39.

VBF's argument is in conflict with both New York law and the allegations in the Fourth Amended Complaint.  That the Founders may have acted for their own personal benefit is insufficient to apply the adverse interest exception.  *See Kirschner*, 15 N.Y.3d at 467 ("To allow a corporation to avoid the consequences of corporate acts simply because an employee performed them with his personal profit in mind would enable the corporation to disclaim, at its convenience, virtually every act its officers undertake.").  Indeed, an officer's personal interest is often in line with that of the corporation.  *Id.*  "[F]or the adverse interest exception to apply, the agent 'must have totally abandoned his principal's interests and be acting entirely for his own or another's purposes,' not the corporation's."  *Id.* at 468 (quoting *Center*, 66 N.Y.2d at 784-85).  "So long as the corporate wrongdoer's fraudulent conduct enables the business to survive—to attract investors

and customers and raise funds for corporate purposes—this test is not met." *Id.* This is true even if the actions "can be said to have caused the company's ultimate bankruptcy." *Id.*

Indeed, the Fourth Amended Complaint makes clear that "VBF does not allege that Canaccord directly aided and abetted, or conspired with, the Founders as to . . . misappropriations" of VBF's cash and other assets. FAC ¶¶ 62, 63. Instead, VBF alleges that "Canaccord and the Founders collaborated to manipulate VBF's actual operational data to increase interest in VBF" from potential investors. *Id.* ¶ 8. VBF contends that the Founders obtained investments based on these misrepresentations. *See, e.g., id.* ¶¶ 125 ("[T]he Founders . . . raised investments for VBF from others . . . by misrepresenting [VBF's metrics and technical] capabilities."), 440 ("[The directors' and officers'] misrepresentations . . . allowed them to raise . . . tens of millions of dollars."). Indeed, it asserts that if the Founders "intentionally concealed" the email from Dr. Michaels "because they each knew that if VBF . . . knew the truth about VBF's Metrics, Water Quality financial information, and the actual capabilities of the OFT (or lack thereof), VBF would have (1) ceased intake of debt and equity investments, (2) ceased to expend funds on its continued operation, and (3) at a minimum, increased its oversight of [the Founder's] management of VBF." *Id.* ¶ 212. The allegations in the Fourth Amended Complaint thus undermine VBF's argument that the Founders had totally abandoned the principal's interests. The adverse interest exception therefore does not apply, and the *in pari delicto* doctrine bars VBF's claims.

### D.  Motion to Amend

VBF requests that, "if the Court finds that the [Fourth Amended Complaint] is deficient as to any cause of action," it be given leave to amend. Opp'n to Motion to Dismiss at 27. The placement of this request, within the section addressing whether VBF has stated a claim for which relief can be granted, suggests that VBF only seeks leave if the Court rules on that basis. The

Court does not even reach Canaccord's argument that VBF has failed to state a claim, having found three independent bars to VBF's claims. But to the extent VBF seeks leave to amend Fourth Amended Complaint as it relates to the Release, the Engagement Agreement, or the *in pari delicto* defense, the Court denies leave to amend.

Under Rule 15(a) of the Federal Rules of Civil Procedure, a court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). Although this is a permissive standard, "it is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Leave to amend should generally be denied "in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008). "[W]here the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied." *Hayden v. County of Nassau*, 180 F.3d 42, 53-54 (2d Cir. 1999) (citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 76 (2d Cir. 1998)).

VBF has failed to identify any additional facts it could plead that would cure the fatal issues discussed above and allow it to survive another motion to dismiss. *See Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (concluding that a plaintiff is not "entitled to an advisory opinion from the Court informing [him] of the deficiencies in the complaint and then an opportunity to cure those deficiencies" (quoting *In re Eaton Vance Mut. Funds Litig.*, 403 F. Supp. 2d 310, 318 (S.D.N.Y. 2005))); *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) (finding no abuse of discretion in denying leave to amend where the plaintiff made no showing of how the complaint's defects could be cured). Indeed, the Court cannot fathom what

additional facts VBF would be able to plead that would survive dismissal.  As then-district Judge Lynch aptly noted, "[w]hile pleading is not a game of skill in which one misstep may be decisive to the outcome, neither is it an interactive game in which the plaintiffs file a complaint, and then bat it back and forth with the Court over a rhetorical net until a viable complaint emerges." *In re Refco Cap. Mkts., Ltd. Brokerage Customer Sec. Litig.*, Nos. 06 Civ. 643 (GEL), 07 Civ. 8686 (GEL), 07 Civ. 8688 (GEL), 2008 WL 4962985, at *2 (S.D.N.Y. Nov. 20, 2008) (citations and internal quotation marks omitted), *aff'd sub nom. Cap. Mgmt. Select Fund Ltd. v. Bennett*, 680 F.3d 214 (2d Cir. 2012).  "It is the plaintiff['s] responsibility to plead [its] case adequately, and a court may deny a plaintiff leave to replead when that party has—as here—'been given ample prior opportunity to allege a claim.'"  *Id.* (quoting *In re Merrill Lynch Ltd. Partnerships Litig.*, 7 F.Supp.2d 256, 276 (S.D.N.Y. 1997), *aff'd*, 154 F.3d 56 (2d Cir. 1998)).  VBF will not be given another opportunity to muster a claim where none lies.

### III.  Canaccord's Motions for Sanctions

Having dismissed VBF's claims on the merits, the Court turns to the two pending motions for sanctions, both as to the Third Amended Complaint and the Fourth Amended Complaint.  In its first motion, Canaccord argues that the Third Amended Complaint was filed to improperly increase the cost of litigation and included plainly frivolous claims.  First Motion for Sanctions at 4. Canaccord raises an issue with VBF incorporating the Texas Complaint, and calls the Third Amended Complaint "prolix, absurdly redundant, ambiguous, and vague." *Id.* at 1.  It also notes that the Third Amended Complaint "include[d] reams of irrelevant information" and allegations of

fraud where VBF was not the recipient of the fraudulent statement, notwithstanding the Texas court's demand that it remove any such references. *Id.* at 1, 5-6.

In response, VBF amended the Third Amended Complaint to address one issue raised by Canaccord—that the Third Amended Complaint improperly incorporated the Texas Complaint. In doing so, VBF incorporated allegations from the Texas Complaint directly into the Fourth Amended Complaint, adding an additional 38 pages. Canaccord then filed a second motion for sanctions on the basis that the Fourth Amended Complaint included more irrelevant information and did not cure the issues Canaccord had previously raised. *See* Second Sanctions Motion at 1.

## A. Legal Standard

Rule 11 requires an attorney to certify that (1) a pleading "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" and (2) "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b). Under Rule 11, a party must make a motion for sanctions separately from any other motion. *Id.* 11(c)(2). It must then serve the motion on the opposing party, after which it must give the opposing party 21 days to "withdraw[] or appropriately correct[]" "the challenged paper, claim, defense, contention, or denial." *Id.*

"Rule 11(b)(2) establishes an objective standard of reasonableness for determining whether counsel is presenting a frivolous argument." *Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*, No. 16 Civ. 885 (JPO), 2019 WL 422613, at *2 (S.D.N.Y. Feb. 4, 2019) (internal quotation marks omitted); *see Simon DeBartolo Grp. v. Richard E. Jacobs Grp.*, 186 F.3d 157, 166 (2d Cir. 1999). "The appropriateness of sanctions is distinct from the underlying merits of a claim." *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, No. 15 Civ. 2457 (GHW), 2019 WL 1244493, at *7

(S.D.N.Y. Mar. 18, 2019), *vacated in part*, 991 F.3d 361 (2d Cir. 2021), *and aff'd*, 850 F. App'x 38 (2d Cir. 2021).   "[T]o constitute a frivolous legal position for purposes of Rule 11 sanction, it must be clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." *Simon DeBartolo Grp.*, 186 F.3d at 167 (quoting *Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir. 1990)).

The 1993 Advisory Committee Note to Rule 11 lays out several possible considerations for deciding whether to impose sanctions: (1) "[w]hether the improper conduct was willful, or negligent;" (2) "whether it was part of a pattern or activity, or an isolated event;" (3) "whether it infected the entire pleading, or only one particular count or defense;" (4) "whether the person has engaged in similar conduct in other litigation;" (5) "whether it was intended to injure;" (6) "what effect it had on the litigation process in time or expense;" (7) "whether the responsible person is trained in the law;" (7) "what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case;" and (8) "what amount is needed to deter similar activity by other litigants."   Fed. R. Civ. P. 11 advisory committee note to 1993 amendment; *see Holmes v. Allstate Corp.*, No. 11 Civ. 1543 (LTS) (DF), 2012 WL 627238, at *15 (S.D.N.Y. Jan. 27, 2012), *report and recommendation adopted*, 2012 WL 626262 (S.D.N.Y. Feb. 27, 2012).   "Courts maintain a high bar for establishing a Rule 11 violation given judicial concern for encouraging zealous advocacy." *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 179 (S.D.N.Y. 2008).   "[E]ven if the district court concludes that the assertion of a given claim violates Rule 11 . . . the decision whether or not to impose sanctions is a matter for the court's discretion." *Bobcar Media*, 2019 WL 422613, at *2 (alterations in original) (quoting *Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004)).

In addition, under 28 U.S.C. § 1927, an attorney responsible for "multipl[ying] the

proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Section 1927 "authorizes sanctions 'when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose,' and upon 'a finding of conduct constituting or akin to bad faith.'" *Gollomp v. Spitzer*, 568 F.3d 355, 368 (2d Cir. 2009) (quoting *60 E. 80th St. Equities, Inc. v. Sapir*, 218 F.3d 109, 115 (2d Cir. 2000)).

Under both Rule 11 and section 1927, an attorney against whom sanctions are sought must have notice and an opportunity to be heard. *Id.*; *60 E. 80th St. Equities, Inc.*, 218 F.3d at 117; Fed. R. Civ. P. 11(c)(1).

## B.   VBF's Procedural Objections to the First Motion for Sanctions

VBF raises two procedural objections in opposing the first motion for sanctions. First, VBF contends that Canaccord violated Rule 11 by filing its first sanctions motion because VBF complied with the 21-day safe-harbor period by filing the Fourth Amended Complaint. *See* Opp'n to First Sanctions Motion at 2-5. In support, VBF points to several cases in which courts have held that filing a motion for leave to amend within 21 days shields a party from sanctions. *See id.* at 3 & n.1. But in each of these cases, the party actually cured the offending representations or pleading. *See Cotto v. City of New York*, No. 16 Civ. 8651 (NRB), 2018 WL 3094915, at *3 (S.D.N.Y. June 20, 2018) (finding the plaintiff did not engage in bad faith by "correcting the alleged violations" within the 21-day period by filing a motion to amend); *Rates Tech. Inc. v. Mediatrix Telecom, Inc.*, No. 05 Civ. 2755 (JS) (AKT), 2007 WL 1987787, at *4 (E.D.N.Y. June 29, 2007) (concluding that the safe-harbor rule shielded the plaintiff because "the proposed First Amended Complaint correct[ed] the alleged deficiencies in the original Complaint"); *Team*

*Obsolete Ltd. v. A.H.R.M.A. Ltd.*, 216 F.R.D. 29, 43 (E.D.N.Y. 2003) (declining to impose sanctions based on certain claims that were "effectively withdrawn" when the plaintiff sought leave to amend).  As even those cases make clear, a plaintiff cannot take advantage of the 21-day safe-harbor period if it does not seek to cure the deficiencies identified.  *See, e.g.*, *Team Obsolete Ltd.*, 216 F.R.D. at 43-44 (noting that the claims subject to the motion to amend were "effectively withdrawn" but addressing the remaining claims that the plaintiff continued to push in the amended complaint).

Here, VBF only amended its prior complaint to reference, rather than incorporate, the Texas Complaint.  *See* Dkt. 315; *see also* Tr. at 13:2-8 (VBF admitting that "the claims are still the same" except that "the factual background is different because instead of just incorporating specific allegations from the Texas Complaint, we have alleged them and restated them").  It did not otherwise address the deficiencies raised by Canaccord.  And the filing of the Fourth Amended Complaint did not somehow moot these issues.  "Judges in this District have allowed parties to renew motions for sanctions under Rule 11 where the offending pleading is no longer before the Court."  *Int'l Techs. Mktg., Inc.*, 2019 WL 1244493, at *10 (collecting cases); *see, e.g.*, *City of Yonkers v. Otis Elevator Co.*, 844 F.2d 42, 49 (2d Cir. 1988) (approving of sanctions for "needless expense" caused by waiting to withdraw claims until summary judgment briefing was complete).  Thus, while VBF is shielded from sanctions for incorporating the Texas Complaint, it cannot not take advantage of the 21-day safe-harbor period when it comes to the other bases for sanctions raised in Canaccord's motion.

Second, VBF contends that the first sanctions motion was untimely because, in essence, the Third Amended Complaint suffered from the same alleged defects as the Second Amended Complaint.  *See* Opp'n to First Sanctions Motion at 5-6.   This too fails.  "Although Rule 11

contains no explicit time limit for serving the motion, the 'safe harbor' provision functions as a practical time limit, and motions have been disallowed as untimely when filed after a point in the litigation when the lawyer sought to be sanctioned lacked an opportunity to correct or withdraw the challenged submission." *In re Pennie & Edmonds LLP*, 323 F.3d 86, 89 (2d Cir. 2003).  VBF cites *Safe-Strap Co. v. Koala Corp.*, 270 F. Supp. 2d 407, 413 n.3 (S.D.N.Y. 2003), for the proposition that a motion for sanctions should be filed "promptly after the inappropriate paper is filed."  Opp'n to First Sanctions Motion at 6.  But the "inappropriate paper" here was the Third Amended Complaint, not the Second Amended Complaint.  That VBF has engaged in ostensibly improper behavior for a *more* extensive period does not weigh against sanctions; it weighs in their favor.

### C.   VBF's Objections to the Merits of the First and Second Motions for Sanctions

On the merits, the first and second motions for sanctions are quite similar.  First, Canaccord argues that sanctions should be imposed because the claims in the Third Amended Complaint and the Fourth Amended Complaint are frivolous.  In large part, Canaccord rehashes its arguments for dismissal under Rule 12.  *See* First Motion for Sanctions at 5-9; Section Motion for Sanctions at 6-8. But "[t]he mere fact that the plaintiffs fail to state a claim, however, does not mean that Rule 11 sanctions should be imposed."  *Team Obsolete Ltd.*, 216 F.R.D. at 44.  "The fact that a legal theory is a long-shot does not necessarily mean it is sanctionable.  The operative question is whether the argument is frivolous, *i.e.*, the legal position has 'no chance of success,' and there is 'no reasonable argument to extend, modify or reverse the law as it stands.'"  *Fishoff v. Coty Inc.*, 634 F.3d 647, 654 (2d Cir. 2011) (citations omitted) (quoting *Morley v. Ciba-Geigy Corp.*, 66 F.3d 21, 25 (2d Cir. 1995)).  "Otherwise Rule 11 sanctions would be imposed whenever a complaint was dismissed, thereby transforming it into a fee shifting statute under which the loser pays."

*Team Obsolete Ltd.*, 216 F.R.D. at 44 (quoting *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Serv., Inc.*, 9 F.3d 1263, 1270 (7th Cir. 1993)).

VBF's claims certainly toe the line between long-shot and frivolous. As explained above, there are three independent bases for barring VBF's claims. The Court does not even reach Defendants' arguments that the Fourth Amended Complaint fails to state a claim. And putting aside the fact VBF's claims are barred, VBF's entire theory—which largely amounts to an argument that Canaccord did not save VBF from itself—stands on shaky footing. For instance, VBF's theory of damages is specious. VBF claims that Canaccord assisted the Founders' in their fraudulent scheme to make "fraudulent misrepresentations and conceal[] . . . material facts" from potential investors regarding the company's technology and profitability. FAC ¶ 62. Yet VBF does not allege that Canaccord actually secured any funding. *See id.* ¶¶ 26-29; Demand Letter. And VBF suggests that Canaccord lied to VBF because anonymous third-party investors "who received false information did not erase it from their memories the day that they officially became VBF directors, shareholders, officers, and/or employees." Opp'n to Motion to Dismiss at 6-7. Finally, to argue that Canaccord had knowledge of the Founder's lies, VBF relies almost exclusively on one email calling into doubt VBF's metrics—an email Canaccord promptly shared with VBF's own Board of Directors.

Nonetheless, the Court is hesitant to impose sanctions based on its interest in "encouraging zealous advocacy." *E. Gluck Corp.*, 252 F.R.D. at 179. "Although all of [VBF's] arguments may not ultimately have prevailed," it is difficult for the Court to say that they are "patently contrary to existing law." *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 391 (2d Cir. 2003). For instance, New York law does allow a party to void a release for fraud. VBF has simply failed to show a separate fraud sufficient to void the release here. And New York law does provide that a new

contract can void a previous one.  That it can do so is simply irrelevant here.  Finally, New York

choice-of-law rules do counsel that domicile should guide the choice of law in some instances.

Those rules are just not relevant here.  Most importantly, this is not a case where the *Court* warned

VBF that its claims were frivolous such that continuing to pursue them reflected bad faith.  *See,*

*e.g.*, *Gollomp*, 568 F.3d at 369.  Thus, while VBF's claims all fail, the Court declines to find that

VBF's claims are so frivolous as to violate Rule 11's commands.

       Canaccord does, however, point to several other actions VBF has taken that do cause pause.

The sheer length and structure of the Third Amended Complaint and the Fourth Amended

Complaint are concerning.   Courts have dismissed complaints that "are unnecessarily long-

winded," as they "place an undue burden on the court as well as any parties seeking to respond."

*Phipps v. City of New York*, No. 17 Civ. 6603 (ALC), 2019 WL 4274210, at *2 (S.D.N.Y. Sept. 10,

2019); *see Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("Unnecessary prolixity in a

pleading places an unjustified burden on the court and the party who must respond to it because

they are forced to select the relevant material from a mass of verbiage." (quoting 5 C. Wright & A.

Miller, Federal Practice and Procedure § 1281)); *accord Nungesser v. Columbia Univ.*, 15 Civ.

3216 (GHW), 2017 WL 1102661, at *1 (S.D.N.Y. March 23, 2017); *see also Jones v. Nat'l*

*Commc'ns & Surveillance Networks*, 266 F. App'x 31, 32-33 (2d Cir. 2008) (affirming dismissal

of single-spaced 58-page complaint that had 87 pages of attachments); *Blakely v. Wells*, 209 F.

App'x 18, 19 (2d Cir. 2006) (affirming dismissal of a 57-page, 597-paragraph complaint).

       Other courts have suggested that filing inexcusably long complaints may warrant the

imposition of sanctions.  *See Sirohi v. Trustees of Columbia Univ.*, 162 F.3d 1148 (2d Cir. 1998)

(unpublished) ("[T]he court's decision to grant the defendants leave to renew their motion for

sanctions was not an abuse of discretion because of the complaint's excessive length and

considerable disorganization." (citing Fed. R. Civ. P. 8(a)(2))); *Council of Commuter Orgs. v. Metro. Transp. Auth.,* No. 82 Civ. 8372 (PNL), 1984 WL 603, at *1 (S.D.N.Y. July 2, 1984) ("Judge Pollack described the complaint of '80 pages with over 120 paragraphs' as 'a gross, unmitigated, inexcusable imposition on the court, counsel and the 41 parties-defendant . . . .'  He noted that 'the breach of reasonable pleading invites the imposition of sanctions.'"); *cf. State Farm Mut. Auto. Ins. Co. v. Mallela*, No. 00 Civ. 4923 (CPS), 2002 WL 31946762, at *17 (E.D.N.Y. Nov. 21, 2002) ("There can be little doubt that filing the Complaint increased the cost of this litigation.   The memoranda of law submitted in connection with the motions to dismiss the Complaint contain over 250 pages of legal argument, supplemented with thousands of pages of appendixes and other submissions.").

Both the Third Amended Complaint and the Fourth Amended Complaint are excessive. The Third Amended Complaint is 183 pages long, with 658 numbered paragraphs.  TAC; *see* First Motion for Sanctions at 9.  The Third Amended Complaint incorporated the Texas Complaint, TAC ¶ 13, which itself is 282 pages long, *see* Texas Complaint.  To make matters worse, the Texas Complaint explicitly states that it does *not* address the claims against Canaccord.  *See id.* ¶ 192 ("On June 5, 2020, this Court transferred VBF's lawsuit against Canaccord to the Southern District of New York (Case No. 1:20-cv-04394-PGG), VBF will therefore refrain from making allegations regarding Canaccord other than as needed to understand and support the allegations against the Founders.").  Although VBF cured its initial decision to incorporate the Texas Complaint, it did so by adding 38 pages of allegations from that complaint directly into the Fourth Amended Complaint.  Again, these are from a complaint that, on its face, is not about Canaccord.  The Fourth Amended Complaint now spans 221 pages.  The exact number of paragraphs is difficult to decipher; the last paragraph is listed as 773, but the Fourth Amended Complaint repeats various

paragraphs and contains numerous unnumbered subparagraphs.  In addition, the Fourth Amended Complaint includes thousands of pages of exhibits.

VBF responds that "[b]oth complaints are long due to (i) the sheer amount of fraud and other misconduct that occurred, and (ii) the Founders and Canaccord forcing VBF, through their Rule 9(b) attacks on the prior complaint in the Texas Action, to parse out each fraudulent statement, in painstaking detail."  Opp'n to Second Sanctions Motion at 10.  But the Court fails to see how much of this is necessary.  For instance, the Fourth Amended Complaint sets forth an extensive array of "specific examples of the close collaboration between Canaccord and the Founders," which the Fourth Amended Complaint admits "may not in and of themselves constitute . . . independent fraudulent act[s]" but rather serve to "provide important factual background to further explain Canaccord's role in the Founders' misconduct."  FAC ¶ 128; *see also* ¶¶ 166, 173, 181, 219, 334.  This includes, for instance, emails from before Canaccord ever contracted with VBF.  It also includes emails from certain third parties to the Founders, *see id.* ¶¶ 130-135, 146-155, or exclusively between third parties, *see id.* ¶¶ 136-138, criticizing or raising questions about the Founders' projections.  The Fourth Amended Complaint also describes various forms of fraud that it admits Canaccord was not involved in.  *See, e.g.*, *id.* ¶¶ 149, 333, 349, 361, 483, 541, 550-551, 559, 568, 595, 608-609, 618.

Both the Third Amended Complaint and the Fourth Amended Complaint, through their length and overuse of unnecessary factual allegations not directly relevant to the claims at issue here, place an "undue burden on the court as well as any parties seeking to respond."  *Phipps*, 2019 WL 4274210, at *2.  This, of course, is not a motion for summary judgment—VBF is not required to prove its claim at this stage.  And even summary judgment motions are limited, in most instances, to 25 pages.  *See* Rule 2.B of the Court's Individual Rules and Practices in Civil Cases; *see also*

S.D.N.Y. L. Civ. R. 56.1(a) ("Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, *short and concise statement*, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."). This alone should have been an indication that it would be unwise to file a complaint over 200 pages, especially for a case against a single defendant. *Cf. Komlosi v. N.Y. State Off. of Mental Retardation & Developmental Disabilities*, No. 88 Civ. 1792 (JFK), 1990 WL 29352, at *2 (S.D.N.Y. Mar. 12, 1990) (denying a motion to strike a lengthy complaint in a case involving 26 defendants, many of whom were sued individually and in their official capacities, several lengthy government investigations, and complex claims).

Even more concerning is that VBF acted with little regard for the Texas court's instruction that VBF "remove from its new pleading allegations of fraud where [VBF] was not the recipient of the fraudulent statement." Texas Opinion at 20. VBF makes numerous references to misstatements to "potential investors." *See, e.g.*, FAC ¶¶ 666a (claiming that Canaccord is liable for "collaborating with the Founders to make misrepresentations of material fact as alleged herein, including to potential investors (some of whom became actual VBF shareholders and/or directors)"), 666b (similar), 678a (similar), 678b (similar), 689a (similar), 719 (similar). VBF argues that "[m]ost references to 'potential investors' in the [Third Amended Complaint] are not the subject of direct fraud allegations," and the Texas court's order "does not mean that VBF is barred from including complaint allegations for purposes other than alleging specific actionable fraudulent conduct, including for the purpose of background or context, such as false representations that were made jointly between the Founders and Canaccord." Opp'n to First Sanctions Motion at 15. This argument is too cute by half. Indeed, in stating that "most" references are not the subject of direct fraud allegations, VBF tacitly admits that some claims *are*

about fraud to potential investors, in direct violation of the Texas court's order.  Moreover, VBF, represented by experienced, sophisticated counsel, should have been aware that such extensive "background" was inappropriate to include in a complaint, particularly given the concerns raised by both the Texas court and by Canaccord in its first motion for sanctions.

Notwithstanding what the Court considers to be concerning conduct on VBF's part, the Court declines to impose sanctions.  VBF's actions again toe the line between exuberant litigation tactics and bad faith conduct.  But "[w]ithout objectively unreasonable statements, . . . a greater litigiousness do[es] not alone amount to improper purpose."  *Storey*, 347 F.3d at 393.

Finally, the Court addresses VBF's suggestion that it was *Canaccord* that needlessly increased the costs of litigation.  *See* Opp'n to First Sanctions Motion at 19.  VBF contends that "in **four** separate motions—two pending motions for sanctions and two pending motions to dismiss—Canaccord repeats the same arguments that could have been raised in a single motion to dismiss."  Opp'n to Second Sanctions Motion at 1.  But, as the above should make clear, Canaccord's first motions for sanctions was compelling, even if ultimately unsuccessful.  To move for sanctions under Rule 11, VBF was *required* to file a separate motion from its motion to dismiss. *See* Fed. R. Civ. P. 11(c)(2).  Canaccord was also *required* to file its motion to dismiss the Third Amended Complaint when it did; although the parties stipulated to extend Canaccord's time to respond, the Court did not endorse the stipulation.  Canaccord was also justified in moving to dismiss the Fourth Amended Complaint—the now operative complaint—and filing for sanctions for VBF's failure to cure the deficiencies identified in its Third Amended Complaint.  Notably, Canaccord kept its second motion for sanctions brief, limiting it to only 9 pages.  *See* Second

Sanctions Motion.  The same cannot be said of VBF's opposition, which is over twice that long. *See* Opp'n to Second Sanctions Motion.

VBF's argument that it in fact sought to reduce the proceedings in this case is even less compelling.  For instance, VBF lauds its own efforts to consolidate this case before the Judicial Panel on Multidistrict Litigation.  Opp'n to Second Sanctions Motion at 21.  But as Canaccord points out, that request—which would have transferred the case back to Texas, notwithstanding Canaccord's successful motion to transfer the case to this District based on the forum selection clause—was made just days after Judge Lehrburger stayed discovery on this case.  *See* Dkt. 343. VBF's request thus almost sounds in bad faith, not good.

In sum, VBF's conduct in this case has put a burden on the Court and Canaccord.  Enough. Although the Court declines to impose sanctions either under Rule 11 or section 1927, it is a close call.  This should serve as a warning to VBF that its scorched-earth tactics are not appropriate.

### IV. Conclusion

For the foregoing reasons, the Court grants Canaccord's motion to dismiss the Fourth Amended Complaint with prejudice, denies Canaccord's motion to dismiss the Third Amended Complaint as moot, and denies Canaccord's motions sanctions.  The Clerk of the Court is respectfully directed to terminate all motions and close this case.

SO ORDERED.

Dated: September 1, 2021
    New York, New York

JOHN P. CRONAN
United States District Judge